**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MENTE CHEVROLET OLDSMOBILE, | : | |
| INC. F/K/A MENTE CHEVROLET, INC. | : | |
| t/a MENTE CHEVROLET | : | CIVIL ACTION |
| and | : | |
| MENTE CHRYSLER DODGE, INC. | : | |
| and | : | NO. 08-cv-2403 |
| DONALD M. MENTE | : | |
| Plaintiffs | : | |
| v. | : | |
| | : | |
| GMAC | : | |
| Defendants. | : | |

## ANSWER WITH AFFIRMATIVE DEFENSES BY DEFENDANT, GMAC TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant, GMAC, by and through its counsel, Lavin, O'Neil, Ricci, Cedrone & DiSipio hereby responds to Plaintiffs' First Amended Complaint as follows:

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Upon information and belief, the allegations contained in paragraph 4 of Plaintiffs' First Amended Complaint are admitted.

5.    Upon information and belief, the allegations contained in paragraph 5 of Plaintiffs' First Amended Complaint are admitted.

6.    Upon information and belief, the allegations contained in paragraph 6 of Plaintiffs' First Amended Complaint are admitted.

7.    Admitted in part, denied in part.  It is admitted that GMAC is an entity organized under the laws of the state of Delaware with a principal place of business in Detroit, Michigan

and registered to conduct business in the Commonwealth of Pennsylvania. It is denied that GMAC now maintains an office at 555 Business Center Drive, Horsham, Pennsylvania 19044.

8.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 8 of Plaintiffs' First Amended Complaint, hence, they are denied.

9.    Denied. It is admitted only that an article dated September 14, 2008 is attached as Exhibit A. The writing speaks for itself and answering defendant makes no admissions with regard to said document. By way of further response, it is admitted that in November 2006, GM sold a 51% controlling interest in GMAC to FIM Holdings, LLC, a consortium of non-GM investors affiliated with Cerberus. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 9 of Plaintiffs' First Amended Complaint, hence, they are denied.

10.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 10 of Plaintiffs' First Amended Complaint, hence, they are denied.

11.    Admitted in part. Denied in part. Upon information and belief, it is admitted that the GM/Cerberus transaction officially closed on November 30, 2006. Further, it is admitted only that an article dated April 23, 2007 is attached as Exhibit B. The writing speaks for itself and answering defendant makes no admissions with regard to said document.

12.    Denied. It is admitted only that an article dated April 9, 2007 is attached as Exhibit C. The writing speaks for itself and answering defendant makes no admissions with regard to said document. By way of further response, answering defendant, after reasonable

investigation, is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 12 of Plaintiffs' First Amended Complaint, hence, they are denied.

13.    Admitted in part.  Denied in part.  It is admitted only that a meeting occurred between representatives of GMAC and Donald Mente in April 2007.  Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 13 of Plaintiffs' First Amended Complaint, hence, they are denied.

14.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 14 of Plaintiffs' First Amended Complaint, hence, they are denied.  By way of further response, GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs.

15.    Denied.

16.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 16 of Plaintiffs' First Amended Complaint, hence, they are denied.

17.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 17 of Plaintiffs' First Amended Complaint, hence, they are denied.

18.    Admitted in part.  Denied in part.  It is admitted only that on July 19, 2007, it was discovered that Mente Chevrolet did not promptly pay the principal amount financed by GMAC

for certain motor vehicles which the dealership had sold. This was considered a default of Mente Chevrolet's financial obligations pursuant to the terms of the Wholesale Security Agreement signed by Mente Chevrolet and GMAC. By way of further response GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs. The remainder of the averments contained in paragraph 18 are generally and specifically denied.

19.     Denied.     Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 19 of Plaintiffs' First Amended Complaint, hence, they are denied.

20.     Denied.     Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 20 of Plaintiffs' First Amended Complaint, hence, they are denied.

21.     Admitted.

22.     Admitted, except to the extent addressed in the Cross-Collateralization Cross-Default Agreement signed by the Mente dealerships.

23.     Denied.     Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 23 of Plaintiffs' First Amended Complaint, hence, they are denied

24.     Denied.     Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 24 of Plaintiffs' First Amended Complaint, hence, they are denied.

25.     Admitted in part. Denied in part. It is admitted only that GMAC was formed in 1919 by Alfred Sloan as a wholly owned subsidiary of GM. Further, it is admitted that an article

Case 5:08-cv-02403-JS    Document 30    Filed 05/05/2009    Page 5 of 55

dated September 22, 2008 is attached as Exhibit D. The writing speaks for itself and answering defendant makes no admissions with regard to said document. By way of further response, answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 25 of Plaintiffs' First Amended Complaint, hence, they are denied.

26.    Admitted in part. Denied in part. It is admitted that most dealers in the nation borrow money to floor-plan vehicles. The remaining averments contained in this paragraph refer to a writing, the terms of which speak for itself and answering defendant makes no admissions with regard to said document.

27.    Denied as stated. It is admitted that GMAC was a wholly owned subsidiary of GM prior to, but not after, November 20, 2006, when GM sold a controlling interest to FIM.

28.    Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 28 of Plaintiffs' First Amended Complaint, hence, they are denied.

29.    Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 29 of Plaintiffs' First Amended Complaint, hence, they are denied. By way of further response, it is specifically denied that GMAC was an agent for GM.

30.    Denied as stated. It is admitted that a meeting occurred between representatives of GMAC and Donald Mente in April 2007. The remaining allegations of this paragraph are denied.

31.    Denied as stated. It is admitted only that on July 19, 2007, representatives of GMAC conducted an audit at the Mente Chevrolet and it was discovered that Mente Chevrolet

did not promptly pay the principal amount financed by GMAC for certain motor vehicles which the dealership had sold. This was considered a default of Mente Chevrolet's financial obligations pursuant to the terms of the Wholesale Security Agreement signed by Mente Chevrolet and GMAC. By way of further response, GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 31 of Plaintiffs' First Amended Complaint, hence, they are denied.

32. Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 32 of Plaintiffs' First Amended Complaint, hence, they are denied.

33. Denied. It is admitted only that an article dated September 22, 2008 is attached as Exhibit E. The writing speaks for itself and answering defendant makes no admissions with regard to said document. By way of further response, answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 33 of Plaintiffs' First Amended Complaint, hence, they are denied. Further, GMAC specifically denies that GMAC acted as an agent for GM.

34. Denied. It is admitted only that an article dated September 22, 2008 is attached as Exhibit F. The writing speaks for itself and answering defendant makes no admissions with regard to said document.

35. Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in

paragraph 35 of Plaintiffs' First Amended Complaint, hence, they are denied. Further, GMAC specifically denies acting as an agent for GM.

36.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 36 of Plaintiffs' First Amended Complaint, hence, they are denied.

37.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 37 of Plaintiffs' First Amended Complaint, hence, they are denied.

38.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 38 of Plaintiffs' First Amended Complaint, hence, they are denied.

39.    Upon information and belief, the allegations contained in paragraph 39 of Plaintiffs' First Amended Complaint are admitted.

40.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 40 of Plaintiffs' First Amended Complaint, hence, they are denied.

41.    Upon information and belief, the allegations contained in paragraph 41 of Plaintiffs' First Amended Complaint are admitted.

42.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 42 of Plaintiffs' First Amended Complaint, hence, they are denied.

43.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 43 of Plaintiffs' First Amended Complaint, hence, they are denied.

44.    Denied. Answering defendant denies generally and specifically each and every allegation contained in paragraph 44 of Plaintiffs' First Amended Complaint and further denies causing Plaintiffs any harm for which Plaintiffs are entitled to relief.

45.    Denied. Answering defendant denies generally and specifically each and every allegation contained in paragraph 45 of Plaintiffs' First Amended Complaint and further denies causing Plaintiffs any harm for which Plaintiffs are entitled to relief.

46.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 46 of Plaintiffs' First Amended Complaint, hence, they are denied.

47.    Admitted, except to the extent addressed in the Cross-Collateralization Cross-Default Agreement signed by the Mente dealerships.

48.    Denied. It is admitted only that GMAC's Wholesale Security Agreement dated June 11, 1982 is attached as Exhibit G and GMAC's Wholesale Security Agreement dated March 7, 2000 is attached as Exhibit H. By way of further response, the allegations set forth in paragraph 48 of Plaintiffs' First Amended Complaint refer to writings, the terms of which speak for themselves and answering defendant makes no admissions with regard to said document.

49.    Denied. It is admitted only that GMAC's Wholesale Security Agreement dated June 11, 1982 is attached as Exhibit G and GMAC's Wholesale Security Agreement dated March 7, 2000 is attached as Exhibit H. By way of further response, the allegations set forth in

paragraph 49 of Plaintiffs' First Amended Complaint refer to writings, the terms of which speak for themselves and answering defendant makes no admissions with regard to said document.

50.     Admitted in part. Denied in part. It is admitted only that on July 19, 2007, it was discovered that Mente Chevrolet did not promptly pay the principal amount financed by GMAC for certain motor vehicles which the dealership had sold. This was considered a default of Mente Chevrolet's financial obligations pursuant to the terms of the Wholesale Security Agreement signed by Mente Chevrolet and GMAC. By way of further response GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs. The remaining allegations contained in paragraph 50 of Plaintiffs' First Amended Complaint are generally and specifically denied.

51.     Denied as stated. Mente Chrysler Dodge, Inc. was declared in default pursuant to the terms and conditions of the Cross Collateralization and Cross Default Agreement. A copy of this agreement is attached hereto as Exhibit A. By way of further response GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs. The remaining allegations contained in paragraph 51 of Plaintiffs' First Amended Complaint are generally and specifically denied.

52.     Denied. GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs.

53.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 53 of Plaintiffs' First Amended Complaint, hence, they are denied.

54.    Admitted in part. Denied in part. It is admitted "Open Accounts" existed with the manufacturers and that GMAC had previously obtained from the dealerships an assignment of said "Open Accounts" by agreement with Plaintiffs. By way of further response, GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs.

55.    Denied as stated. It is admitted "Open Accounts" existed and that GMAC received an assignment of said "Open Accounts." by agreement with Plaintiffs. By way of further admission, GMAC obtained the "Open Accounts" through an assignment of said accounts. By way of further response, answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph of Plaintiffs' First Amended Complaint, hence, they are denied.

56.    Admitted in part. Denied in part. It is admitted "Open Accounts" existed and that GMAC received an assignment of said "Open Accounts." by agreement with Plaintiffs. By way of further admission, GMAC obtained the "Open Accounts" through an assignment of said accounts. By way of further response, answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph of Plaintiffs' First Amended Complaint, hence, they are denied.

57.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 57 of Plaintiffs' First Amended Complaint, hence, they are denied.

58.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 58 of Plaintiffs' First Amended Complaint, hence, they are denied.

59.    Denied. In response to this paragraph of Plaintiffs' First Amended Complaint, defendant denies generally and specifically each and every allegation contained therein and further denies causing the plaintiffs any harm for which plaintiffs are entitled to relief. By way of further response, GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs.

60.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 60 of Plaintiffs' First Amended Complaint, hence, they are denied.

61.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 61 of Plaintiffs' First Amended Complaint, hence, they are denied.

62.    Denied. In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

63.    Denied. In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

64.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 64 of Plaintiffs' First Amended Complaint, hence, they are denied.

65.    Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 65 of Plaintiffs' First Amended Complaint, hence, they are denied.

66.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 66 of Plaintiffs' First Amended Complaint, hence, they are denied.

67.    Denied. In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

68.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 68 of Plaintiffs' First Amended Complaint, hence, they are denied.

69.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 69 of Plaintiffs' First Amended Complaint, hence, they are denied.

70.    Denied.    This paragraph of Plaintiffs' First Amended Complaint contains conclusions of law to which no response is required.

71.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 71 of Plaintiffs' First Amended Complaint, hence, they are denied.

72.    Denied.    This paragraph contains conclusions of law to which no response is required.    To the extent a response is required, said averments are denied, as answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 72 of Plaintiffs' First Amended Complaint, hence, they are denied.

73.    Denied.    This paragraph contains conclusions of law to which no response is required    To the extent a response is required, answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 73 of Plaintiffs' First Amended Complaint, hence, they are denied.

74.    Denied.    This paragraph contains conclusions of law to which no response is required.    To the extent a response is required, answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 74 of Plaintiffs' First Amended Complaint, hence, they are denied.

75.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 75 of Plaintiffs' First Amended Complaint, hence, they are denied.

76.    Denied.  In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.  By way of further response GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs.

77.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.  To the extent that a responsive pleading is required, answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 77 of Plaintiffs' First Amended Complaint, hence, they are denied.

78.    Denied.  It is admitted only that a letter dated August 17, 2007 is attached as Exhibit I.  The writing speaks for itself and answering defendant makes no admissions with regard to said document.  By way of further response, answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 78 of Plaintiffs' First Amended Complaint, hence, they are denied.

79.    Admitted in part.  Denied in part.  It is admitted only that on or about September 30, 2007, Plaintiffs and GMAC entered into a "Forbearance Agreement."  A true and correct copy of the "Forbearance Agreement" is attached hereto as Exhibit B.  By way of further response, the document speaks for itself. As to the remaining averments contained in paragraph 79 of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs

any harm for which Plaintiffs are entitled to relief. To the contrary, GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs.

80. Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 80 of Plaintiffs' First Amended Complaint, hence, they are denied.

81. Denied. This paragraph of Plaintiffs' First Amended Complaint contains conclusions of law to which no responsive pleading is required. To the extent that a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

82. Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 82 of Plaintiffs' First Amended Complaint, hence, they are denied.

83. Denied. This paragraph contains conclusions of law to which no responsive pleading is required. To the extent that a responsive pleading is required, answering defendant, denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief. By way of further response, GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs.

84.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 84 of Plaintiffs' First Amended Complaint, hence, they are denied.

85.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.  To the extent that a responsive pleading is required, answering defendant, denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.  By way of further response, GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs.

86.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 86 of Plaintiffs' First Amended Complaint, hence, they are denied.

87.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 87 of Plaintiffs' First Amended Complaint, hence, they are denied.

88.    Denied.  In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

89.    Denied.  In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained

therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

90.    Denied.  In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

91.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 91 of Plaintiffs' First Amended Complaint, hence, they are denied.

92.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

93.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.

94.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.

95.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

96.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 96 of Plaintiffs' First Amended Complaint, hence, they are denied.

97.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 97 of Plaintiffs' First Amended Complaint, hence, they are denied.

98.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 98 of Plaintiffs' First Amended Complaint, hence, they are denied.

99.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 99 of Plaintiffs' First Amended Complaint, hence, they are denied.

100.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 100 of Plaintiffs' First Amended Complaint, hence, they are denied.

101.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 101 of Plaintiffs' First Amended Complaint, hence, they are denied.

102.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 102 of Plaintiffs' First Amended Complaint, hence, they are denied.

103.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph

103 of Plaintiffs' First Amended Complaint, hence, they are denied. By way of further response, GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs.

104. Denied. Answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

105. Admitted in part. Denied in part. It is admitted only that answering defendant moved the vehicles, its collateral, to a different location on December 21, 2007. By way of further response, answering defendant acted appropriately pursuant to the terms and conditions of the agreement with Plaintiffs and applicable law. In response to the remaining averments in this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

106. Upon information and belief, the allegations contained in paragraph 106 of Plaintiffs' First Amended Complaint are admitted.

107. Denied. Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 107 of Plaintiffs' First Amended Complaint, hence, they are denied.

108. Denied. Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 108 of Plaintiffs' First Amended Complaint, hence, they are denied.

109.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 109 of Plaintiffs' First Amended Complaint, hence, they are denied.

110.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 110 of Plaintiffs' First Amended Complaint, hence, they are denied.

111.    Denied.  Answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

112.    Denied.  Answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

113.    Denied.  Answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

114.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 114 of Plaintiffs' First Amended Complaint, hence, they are denied.  By way of further response, GMAC has conducted its business in accordance with the laws and regulations of Pennsylvania and in accordance with its rights and obligations pursuant to its contractual agreement with Plaintiffs.

115.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is required, answering defendant denies

generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

116.    Denied.  In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

117.    Upon information and belief, the allegations contained in paragraph 117 of Plaintiffs' First Amended Complaint are admitted.

118.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information to form a belief as to the truth of the averments contained in paragraph 118 of Plaintiffs' First Amended Complaint, hence, they are denied.

119.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 119 of Plaintiffs' First Amended Complaint, hence, they are denied.

120.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 120 of Plaintiffs' First Amended Complaint, hence, they are denied.

121.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 121 of Plaintiffs' First Amended Complaint, hence, they are denied.

122.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 122 of Plaintiffs' First Amended Complaint, hence, they are denied.

123. Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 123 of Plaintiffs' First Amended Complaint, hence, they are denied.

124. Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 124 of Plaintiffs' First Amended Complaint, hence, they are denied.

125. Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 125 of Plaintiffs' First Amended Complaint, hence, they are denied.

126. Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 126 of Plaintiffs' First Amended Complaint, hence, they are denied.

127. Denied. In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

128. Denied. In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

129. Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in

paragraph 129 of Plaintiffs' First Amended Complaint, hence, they are denied. By way of further response, GMAC specifically denies that it was an agent for GM or Chrysler.

130.    Denied. This paragraph contains conclusions of law to which no responsive pleading is required. To the extent a responsive pleading is required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

131.    Denied. In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

### Count I
#### Violation of Robinson-Patman Act

132.    Answering defendant incorporates by reference herein its answers to paragraphs 1 through 131 of Plaintiffs' First Amended Complaint as though said answers were fully set forth herein.

133.    Denied. Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 133 of Plaintiffs' First Amended Complaint, hence, they are denied.

134.    Denied. This paragraph contains conclusions of law to which no responsive pleading is required.

135.    Denied. This paragraph contains conclusions of law to which no responsive pleading is required.

136.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 136 of Plaintiffs' First Amended Complaint, hence, they are denied.

137.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.

WHEREFORE, answering defendant, GMAC, demands judgment in its favor dismissing Plaintiffs' First Amended Complaint with prejudice and such other further relief as the Court deems just and proper.

### *Count II*
### *Violation of 42 U.S.C.A. § 1983*

138.    Answering defendant incorporates by reference herein his answers to paragraphs 1 through 137 of Plaintiffs' First Amended Complaint as though said answers were fully set forth herein.

139.    Denied.    In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

140.    Admitted.

141.    Denied.    In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

142.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.    To the extent a responsive pleading is deemed required, answering

defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

143.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.    To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

144.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.

145.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.

146.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.

147.    Admitted in part. Denied in part.    It is admitted that GMAC filed an action in Replevin.    By way of further response, the remaining averments contained in this paragraph contain conclusions of law to which no responsive pleading is required.

148.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.

149.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.

150.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.    To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

151.   Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.   To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

WHEREFORE, answering defendant, GMAC, demands judgment in its favor dismissing Plaintiffs' First Amended Complaint with prejudice and such other further relief as the Court deems just and proper.

### Count III
#### Violation of the Federal Automobile Dealer's Day in Court Act – 15 U.S.C.A. §1221

152.   Answering defendant incorporates by reference herein his answers to paragraphs 1 through 151 of Plaintiffs' First Amended Complaint as though said answers were fully set forth herein.

153.   Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.

154.   Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.

155.   Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.

156.   Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.

157.   Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.   To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

WHEREFORE, answering defendant, GMAC, demands judgment in its favor dismissing Plaintiffs' First Amended Complaint with prejudice and such other further relief as the Court deems just and proper.

### Count IV
### Violation of 15 U.S.C. §1

158.    Answering defendant incorporates by reference herein his answers to paragraphs 1 through 157 of Plaintiffs' First Amended Complaint as though said answers were fully set forth herein.

159.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.

160.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 160 of Plaintiffs' First Amended Complaint, hence, they are denied.

161.    Denied.    Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 161 of Plaintiffs' First Amended Complaint, hence, they are denied.

162.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.    To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

163.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.    To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

164.    Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.   To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

WHEREFORE, answering defendant, GMAC, demands judgment in its favor dismissing Plaintiffs' First Amended Complaint with prejudice and such other further relief as the Court deems just and proper.

### Count V
### Violation of 63 P.S. §818.12

165.    Answering defendant incorporates by reference herein his answers to paragraphs 1 through 164 of Plaintiffs' First Amended Complaint as though said answers were fully set forth herein.

166.    Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.

167.    Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.

168.    Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.

169.    Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.

170.    Denied.   This paragraph contains conclusions of law to which no responsive pleading is required.   To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

WHEREFORE, answering defendant, GMAC, demands judgment in its favor dismissing Plaintiffs' First Amended Complaint with prejudice and such other further relief as the Court deems just and proper.

### Count VI
#### Tortuous Interference With Contractual Relationships

171.     Answering defendant incorporates by reference herein his answers to paragraphs 1 through 170 of Plaintiffs' First Amended Complaint as though said answers were fully set forth herein.

172.     Denied.     Answering defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 172 of Plaintiffs' First Amended Complaint, hence, they are denied.

173.     Denied.  In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

174.     Denied.  In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

175.     Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.   To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

176.    Denied.  In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

WHEREFORE, answering defendant, GMAC, demands judgment in its favor dismissing Plaintiffs' First Amended Complaint with prejudice and such other further relief as the Court deems just and proper.

## Count VII
### Breach of Contract

177.    Answering defendant incorporates by reference herein his answers to paragraphs 1 through 176 of Plaintiffs' First Amended Complaint as though said answers were fully set forth herein.

178.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.

179.    Denied as stated.  It is admitted only that certain of the agreements executed by GMAC and the plaintiffs specifically incorporate the rights and remedies applicable under the UCC.  By way of further response, the remaining averments contained in this paragraph contain conclusions of law to which no responsive pleading is required.

180.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.

181.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.

182.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is deemed required, answering

- 30 -

defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

183.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.    To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

184.    Denied.    In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

WHEREFORE, answering defendant, GMAC, demands judgment in its favor dismissing Plaintiffs' First Amended Complaint with prejudice and such other further relief as the Court deems just and proper.

### Count VII
#### Conversion

185.    Answering defendant incorporates by reference herein his answers to paragraphs 1 through 184 of Plaintiffs' First Amended Complaint as though said answers were fully set forth herein.

186.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.    To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

187.    Denied.    This paragraph contains conclusions of law to which no responsive pleading is required.    To the extent a responsive pleading is deemed required, answering

defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

188.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

189.    Denied.  In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

WHEREFORE, answering defendant, GMAC, demands judgment in its favor dismissing Plaintiffs' First Amended Complaint with prejudice and such other further relief as the Court deems just and proper.

### Count IX
### Declaratory Relief

190.    Answering defendant incorporates by reference herein his answers to paragraphs 1 through 189 of Plaintiffs' First Amended Complaint as though said answers were fully set forth herein.

191.    Denied.  In response to this paragraph of Plaintiffs' First Amended Complaint, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

192.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is deemed required, answering

defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

193.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

194.    Denied.  This paragraph contains conclusions of law to which no responsive pleading is required.  To the extent a responsive pleading is deemed required, answering defendant denies generally and specifically each and every allegation contained therein and further denies causing the Plaintiffs any harm for which Plaintiffs are entitled to relief.

WHEREFORE, answering defendant, GMAC, demands judgment in its favor dismissing Plaintiffs' First Amended Complaint with prejudice and such other further relief as the Court deems just and proper.

### Count X
#### Demand for Jury Trial

195.    Answering defendant incorporates by reference herein his answers to paragraphs 1 through 194 of Plaintiffs' First Amended Complaint as though said answers were fully set forth herein.

196.    This paragraph contains conclusions of law to which no responsive pleading is required.

197.    This paragraph contains conclusions of law to which no responsive pleading is required.

WHEREFORE, answering defendant, GMAC, demands judgment in its favor dismissing Plaintiffs' First Amended Complaint with prejudice and such other further relief as the Court deems just and proper.

## FIRST AFFIRMATIVE DEFENSE

The Amended Complaint herein and each cause of action thereof fails to set forth facts sufficient to state a claim upon which relief may be granted against GMAC and further fails to state facts sufficient to entitle Plaintiffs to the relief sought or to any relief whatsoever from GMAC.

## SECOND AFFIRMATIVE DEFENSE

Defendant at all times relevant conducted its business in accordance with U.C.C. §9-601 et. seq.; 13 Pa.C.S.A. §9601 et. seq.

## THIRD AFFIRMATIVE DEFENSE

GMAC is informed and believes and thereon alleges that any purported damages allegedly suffered by Plaintiffs are the results of acts or omissions of third persons over whom GMAC had neither control nor responsibility.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate their damages.

## FIFTH AFFIRMATIVE DEFENSE

The Amended Complaint and each claim for relief therein is barred by laches.

## SIXTH AFFIRMATIVE DEFENSE

GMAC is informed and believes and thereon alleges that any alleged damages sustained by Plaintiffs were at least in part caused by the actions of Plaintiffs and resulted from the Plaintiffs' own negligence which equaled or exceeded any alleged negligence or wrongdoing by GMAC, which negligence or wrongdoing is specifically denied, by answering defendant.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of release and/or waiver. This defense includes but is not limited to a "Forbearance Agreement" by and between Plaintiffs and GMAC which contains a release of all claims against GMAC. A true and correct copy of "Forbearance Agreement" is attached hereto at Exhibit "B."

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

GMAC is informed and believes and thereon alleges that all of Plaintiffs' claims for relief in the Amended Complaint herein are barred by the applicable Statute of Limitations.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs have not sustained an injury or damage compensable at law.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs by their actions or inactions may have acquiesced in the course of dealing between the parties and may be estopped from asserting the claims raised in the Amended Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

GMAC reserves the right to raise additional defenses upon completion of investigation and discovery.

WHEREFORE, answering defendant, GMAC, demands judgment in its favor dismissing Plaintiffs' First Amended Complaint with prejudice and such other and further relief as the Court deems just and proper.

**LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO**

BY:    /s/ *Stephanie A. Gahagan*_____
Regina Cohen, Esquire
Stephanie A. Gahagan, Esquire
Attorneys for Defendant,
GMAC
190 North Independence Mall West, Suite 500
6th & Race Streets
Philadelphia, PA 19106
(215) 627-0303

## CERTIFICATE OF SERVICE

I, Stephanie A. Gahagan, Esquire, hereby certify that a true and correct copy of Defendant's, GMAC, Answer to Plaintiffs' Amended Complaint was served upon all attorneys of record by ECF transmission on this 5th day of May, 2009.

LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

BY:    /s/ Stephanie A. Gahagan
       Stephanie A. Gahagan, Esquire
       Attorney for Plaintiff, GMAC

# EXHIBIT A

## CROSS COLLATERALIZATION AND CROSS DEFAULT AGREEMENT

This Agreement is entered into this __7__ day of MARCH , 2000 by and among General Motors Acceptance Corporation ("Lender"), Mente Chevrolet-Oldsmobile, Inc. and Mente Chrysler Plymouth Dodge Inc. ("Dealers").

### PREAMBLE

Lender has made floor plan credit facilities available to the Dealer ("floor plan credit facility"). As a condition of making the floor plan credit facility available to Dealer, Lender requires that all loans and wholesale obligations of Dealers to GMAC be cross collateralized and cross defaulted. Dealers agree to cooperate fully in implementing the cross collateralization and cross default requirement of lender.

NOW, THEREFORE, in consideration of the premises herein contained, intending to be legally bound the parties hereto agree as follows:

1. Dealers jointly and severally, hereby agree to be an unconditional surety for all present and future loans, wholesale obligations and liability of Dealers and any corporation or partnership formed or created by any party after the date hereof and owned or controlled directly or indirectly by Dealers to the Lender. Hereafter the loans, wholesale obligations and liabilities of Dealers to Lender shall be collectively referred to herein as the "Obligations".

2. The occurrence of any Event of Default under the terms of any obligation, as herein defined, shall constitute an Event of Default under all other obligations of Dealers to Lender. Any notice or grace period if provided for in the terms of the particular Obligation shall apply.

3. Dealers agree that any and all collateral provided by Dealers as security for any obligation due Lender shall constitute collateral for all Obligations due Lender. All security interest granted by Dealers shall be collateral for all Obligations.

4. Among the parties to this Agreement, it is understood and agreed that all property in which Dealers has granted Lender a security interest to secure a loan shall be deemed to be a security interest granted to collateralize each and every loan made by Lender to or on behalf of Dealers.

5. Dealers agree that after the date hereof they will not mortgage or otherwise encumber their properties or grant any liens or security interest in their assets, whether real or personal property, to any person other than Lender without Lender's prior written consent.

6. Dealers agree that they will discharge or cause to be satisfied, within thirty (30) days after receipt of written notice from Lender, every material judgment, tax lien or obligations, other than that to Lender, which may constitute a lien on the assets of Dealers.

7. Dealers agree to (a) deliver to Lender such information, including recording information and lien searches as Lender may request in writing, and (b) execute and record, where appropriate, such amendments to existing notes, loan agreements, security agreements, mortgages, financing statements and other documents as Lender may reasonably require to effectuate this Agreement.

8. Dealers agree to reimburse lender for all costs reasonably incurred by Lender in connection with the implementation of the Agreement, including search fees, recording fees and reasonable attorneys' fees.

9. Except as provided for below Dealers may not sell its assets, other than in the ordinary course of business, without the prior written consent of Lender. Notwithstanding the foregoing or the provisions of any other Agreement with Lender, Dealers may sell assets without the prior written consent of Lender provided, such sale of assets which were acquired, improved, or refinanced by a loan from Lender and the Lender's loans relating to those assets are paid in full and Dealers give ten (10) days prior written notice of intention to repay the loan(s).


| | Mente Chevrolet-Oldsmobile, Inc. | | Mente Chrysler Plymouth Dodge Inc. |
|---|---|---|---|
| | (Dealership) | | (Dealership) |
| By: | Donald M. Mente | By: | Donald M. Mente |
| | (Print or type name) | | (Print or type name) |
| | (Signature) | | (Signature) |
| Title: | Vice-President | Title: | President |
| Address: | 15032 Kutztown Road | Address: | 15040 Kutztown Road |
| | Kutztown, PA 19530 | | Kutztown, PA 19530 |


General Motors
Acceptance Corporation
(Lender)

By:     K. J. Jahoda
       (Print or type name)

       (Signature)

Title:     Assistant Secretary

Address:     555 Business Center Drive

       Horsham, PA  19044

# EXHIBIT B

1

## Forbearance Agreement

This Forbearance Agreement (this "Agreement") is among Mente Chevrolet Oldsmobile, Inc. f/k/a Mente Chevrolet, Inc. and t/a Mente Chevrolet (collectively, "Chevrolet") whose address is 15032 Kutztown Road, Kutztown, PA 19530, Mente Chrysler Dodge, Inc. ("Chrysler" and together with Chevrolet referred to collectively as "Dealers"), whose address is 15040 Kutztown Road, Kutztown, PA 19530, Donald M. Mente ("Mente"and together with Dealers referred to as "Obligors" and each individually an "Obligor"), Donna M. Johnson ("Johnson") and GMAC, a Delaware entity with a local place of business at 555 Business Center Dr., Horsham, PA 19044 ("GMAC").

## Recitals

The factual circumstances of this Agreement reasonably relied upon by each of the parties as true and correct are as follows:

A.  GMAC and Obligors have entered into agreements, instruments and documents at various times, including but not limited to the following, which together with this Agreement are hereinafter referred to collectively as the "Loan Documents":

Chevrolet:
   Wholesale Security Agreement dated June 11, 1982
   Assignment of DPP Vehicle Proceeds dated May 8, 1993
   Amendment to Wholesale Security Agreement W-178C dated January 7, 2002
   Credit Balance Agreement dated January 24, 2002
   General Security Agreement dated March __, 2007
   GMAC Retail Plan Agreement dated June 11, 1982
   GMAC Lease Plan Dealer Agreement dated February 14, 1989
   Line of Credit Agreement dated October 29, 1999 in the amount of $500,000.00
   Guaranty referenced in C below
   Cross Collateralization and Cross Default Agreement dated March 7, 2000

Chrysler:
   Wholesale Security Agreement dated Marc 7, 2000
   Assignment of DPP Vehicle Proceeds dated March 7, 2000
   Amendment to Wholesale Security Agreement W-178C dated January 7, 2002
   Security Agreement dated March 7, 2000
   GMAC Retail Plan Agreement dated January 3, 1994
   GMAC Lease Plan Dealer Agreement dated January 3, 1994
   Guaranty referenced in C below
   Cross-Collateralization and Cross-Default Agreement dated March 7, 2000

B.  Under these Loan Documents, GMAC has provided credit accommodations to Dealers; and, as of September 19, 2007, the principal amount of $2,949,450.60 was outstanding under those credit accommodations to Chevrolet ("Chevrolet Indebtedness") and the principal amount of $1,554,077.80 was outstanding under those credit accommodations to Chrysler ("Chrysler Indebtedness") (the sum of the

2

Chevrolet Indebtedness and Chrysler Indebtedness referred to as the "Total Amount Outstanding").

C. Obligor Donald M. Mente executed a Guaranty dated May 14, 2007 with respect to all obligations of the Dealers to GMAC (the "Guaranty").

D. To secure payment of all indebtedness owing to GMAC and performance of all obligations under the Loan Documents, Dealers have granted GMAC a security interest in the following: Inventory, equipment, fixtures, accounts receivable, contract rights, securities, cash, general intangibles, documents, instruments, chattel paper, investment property and commercial tort claims.

E. As further security for the payment of all indebtedness owing to GMAC, Dealers entered into the Cross Collateralization and Cross Default Agreement with GMAC providing inter alia a default under any Loan Document would cause a default under all Loan Documents and that any collateral provided by Dealers to GMAC would be collateral for all indebtedness owed to GMAC by such Dealers.

F. Obligors have failed to conform to certain of the terms and conditions of the Loan Documents and are presently in material default of obligations under the Loan Documents as a result of Chevrolet not tendering payment to GMAC for vehicles which were sold or otherwise transferred, in the current amount of $224,323.41 (the "Out of Trust Amount") which was reduced from the amount of $317,841.20 at the time that the date the Out of Trust was discovered on 7/19/07 and not paying wholesale charges due on a timely basis under the Wholesale Security Agreement; and Chrysler not paying wholesale charges due on a timely basis under the Wholesale Security Agreement.

G. Johnson is a 25% owner of Chrysler and is an officer of Dealers and is executing this Agreement to be bound by its terms but not to assume personally any of the Total Indebtedness due GMAC by the Obligors.

H. Chevrolet entered into an agreement ("Chevrolet Sale Agreement") for the sale of its assets to CSC Auto, Inc. ("CSC") dated 7/31/07. The owner of CSC has applied to General Motors Corporation ("GM") for approval of such sale. Obligors have requested that GMAC forbear from enforcing its rights to be paid all amounts outstanding under the Loan Documents and to foreclose on its security interest, to allow Chevrolet to sell its assets under the Chevrolet Sale Agreement and to allow Chrysler to sell its assets pursuant to a contemplated agreement of sale ("Chrysler Sale Agreement") so that Obligors can fully pay off the Total Amount Outstanding as provided pursuant to the terms of this Agreement, plus any amounts which may become due to GMAC under the Loan Documents and this Agreement.

I. Obligors and Johnson have requested that GMAC provide to Chevrolet $59,000.00 from GMAC's collateral pursuant to the terms of this Agreement so that Dealers are able to fulfill their obligations to provide payments (a) to all customers of Dealers that are due refunds by Dealers for deposits or cancelled service contracts and to service contract providers for amounts due such providers for service contracts purchased by customers of Dealers (collectively, "Customers Payments"), and (b) to

3

all suppliers of services and/or equipment identified on the "must pay" list submitted by Dealers to GMAC attached hereto as Exhibit "A" (collectively, the "Must Pay Payments") so that the Dealers can continue their activities and sell their assets under the Chevrolet Sale Agreement and Chrysler Sale Agreement.

J.   Obligors and Johnson acknowledge that GMAC is under no obligation to provide funding for the Customer Payments and Must Pay Payments but are willing to execute this Agreement and comply with the terms of this Agreement in consideration of GMAC's willingness to accommodate their request on the terms and conditions set forth in this Agreement.

## Agreement

In consideration of and reliance on the premises, which the parties agree are true and correct, subject to the terms and conditions hereinafter set forth, Obligors and GMAC acknowledge, understand and agree as follows:

1.   The Total Amount Outstanding due to GMAC as of September 19, 2007 is $4,503,528.40, consisting of the following principal amounts plus accrued interest:

Chevrolet:

| Type of Obligation | Present Amount Due |
|---|---|
| Wholesale Line of Credit (including Out of Trust of $224,323.41) | $2,499,450.60 |
| Line of Credit Loan | $500,000.00 |

Chrysler:

| Type of Obligation | Present Amount Due |
|---|---|
| Wholesale Line of Credit | $1,554,077.80 |

2.   GMAC demanded payment of the Out of Trust Amount, but Obligors failed to pay the Out of Trust Amount.  Obligors waive the right to any and all further demands for payment or notices of nonpayment.

3.   In consideration of the transactions contemplated by and the agreements made under this Agreement, GMAC hereby agrees to forbear from enforcement of its rights and remedies under the Loan Documents until termination of the "Forbearance Period" as defined in section 10 of this Agreement and to advance the Dealers $59,000.00 from the Collateral upon delivery to GMAC of the documents referenced in Subsection (g) and (l) below.  As a condition of such forbearance, Obligors and Johnson agree to each of the following terms and conditions, and acknowledge that this Agreement and GMAC's forbearance are expressly conditioned upon such terms and conditions:

1062260..?

4

(a) On or before the termination of the Forbearance Period, Obligors will pay GMAC the Total Amount Outstanding, which includes the Out of Trust Amount, plus interest, the fees provided in Section 3(d) below, and any other expenses incurred by GMAC as a result of Chevrolet's Out of Trust (collectively, the "Total Indebtedness").

(b) Dealers will not use or permit to be used any new or used vehicles as demonstrator vehicles.

(c) GMAC shall continue, and Obligors will permit GMAC, to continue to place one or more representatives (individually and collectively, the "Representative") at both Dealers with access to all of Dealers' books, records, transactions and data, however stored (including but not limited to sales tax returns and remittances, trade payables ledgers, including aging, tax receipts ledger, tax disbursements ledger, and bank-provided daily activity reports reflecting all deposit and withdrawal transactions and daily account balances), during all hours that GMAC may deem necessary, in its sole discretion. The Representative will be permitted to require that no Dealer mail be opened other than in the presence of Representative and to take whatever steps are necessary to insure proper remittances by Dealers to GMAC of all moneys due under the Loan Documents until the Total Indebtedness is paid in full to GMAC.

(d) The Dealers each agree to pay to GMAC, as an addition to amounts due to GMAC under the Loan Documents, a forbearance fee of $500.00 per day for each day during the Forbearance Period.

(e) Each Dealer has delivered to GMAC, and GMAC may retain, the manufacturer's certificates or statements of origin and keys and warranty books for new vehicles of the Dealers, and all title certificates and keys for used vehicles of the Dealers to the Representative or such other person as GMAC may designate in its sole discretion, until such vehicles are either sold or leased in the ordinary course of business or surrendered to GMAC as provided in Section 5 below.

(f) Dealers will each advise GMAC of vehicles that each Dealer sells or leases (whether consumer sales/leases, dealer trades, or wholesaled vehicles) and to submit wholesale payoffs for such vehicles sold in certified funds to GMAC, unless otherwise agreed to by GMAC or as otherwise provided in this Agreement, promptly and faithfully in accordance with the terms of this Agreement and the Loan Documents.

(g) Concurrently with the execution of this Agreement, Chevrolet and Mente will execute an Assignment of Money Due and/or to Become Due with respect to the Chevrolet Sale Agreement in the form attached hereto as Exhibit "B" (the "Assignment of Sale Proceeds") and Chevrolet shall deliver to GMAC a fully executed Amendment to the Chevrolet Sale Agreement in form satisfactory to GMAC (the "Chevrolet Sales Agreement Amendment") providing that the sales price of $1,250,000.00 shall be allocated to "blue sky" and intangible assets of Chevrolet (other than those specifically excluded from the sale under said Agreement). At such time as Chrysler and/or Mente enter into the Chrysler Sale Agreement with a buyer, Chrysler and Mente shall execute an Assignment of Sale Proceeds in the form of Exhibit "B" attached hereto.

5

(h) Dealers and/or Mente will immediately provide GMAC with copies of documents related to the Chevrolet Sale Agreement and Chrysler Sale Agreement (i.e. letters of intent, commitment letters, purchase agreements) currently in existence and will provide GMAC with any additional such documents related to such sales as soon as practicable after they have been executed.

(i) Dealers acknowledge that GMAC has invoked its rights under the assignment of the Dealers' open account with GM and Chrysler, respectively, and all funds received by GMAC under such accounts may be applied to the Out of Trust Amount until paid off completely and then to the amount of Total Indebtedness owed to GMAC, or made available to Dealers, as GMAC in its sole discretion may determine.

(j) Dealers (1) may each open a segregated bank account for deposit of all proceeds of motor vehicle sales (including but not limited to all payoffs and proceeds from retail contracts, whether or not they are sold to GMAC, and whether or not they are in the form of cash, check or wire transfer) with a bank with which each Dealer does not currently have any banking or lending relationship (the "Segregated Account"), (2) if such accounts are opened, immediately upon the request of GMAC, execute any and all documents GMAC reasonably deems necessary in connection with the assignment of the proceeds of retail installment sales contracts and leases the Dealers enter into with retail customers to ensure that such proceeds are deposited directly into each such Segregated Account, (3) if requested by GMAC, as soon as practicable after GMAC's request, cause the bank maintaining each such Segregated Account to enter into a Deposit Account Control Agreement in a form acceptable to GMAC.

(k) Effective August 1, 2007, the rate of interest payable under the Wholesale Agreement for each Dealer has been increased to fifty (50) basis points in excess of the US Bank Prime Rate; provided, however, that such interest rate shall be subject to GMAC's right to modify in its discretion as part of the terms and provisions of GMAC's floor plan with each Dealer.

(l) Concurrently with the execution of this Agreement, Mente shall, or cause any entity in which Mente has a controlling ownership interest ("Mente Entity") including Don's Limited Partnership and Don's Second Limited Partnership, to , and Chevrolet shall execute and deliver to GMAC the Collateral Mortgages in the form of the three mortgages attached hereto as Exhibit "C" each in the amount of $1,500,000.00 on the properties (including the legal descriptions thereof) owned by Chevrolet and such Mente Entity, as are indicated therein (collectively, the "Collateral Mortgages").

(m) Following GMAC's advance of $59,000.00 which GMAC shall transfer to Chevrolet via SmartCash or by wire transfer to Chevrolet's account at Sovereign Bank Account #0271110201, Johnson shall have Dealers provide payment for all Customers Payments and Must Pay Payments and provide GMAC with copies of all such payments. Obligors and Johnson agree that only Johnson shall have access to such funds and that such funds are only to be used to make payments of Customer Payments and/or Must Pay Payments. No other payments are to be made from such funds advanced by GMAC without its prior written approval.

6

4.  Upon the expiration of the Forbearance Period, Obligors will pay all amounts owed to GMAC by Dealers which shall include, without limitation, the balance of the Total Indebtedness together with accrued interest and such fees and costs due GMAC hereunder (the foregoing to be included in all references to "Total Indebtedness" under this Agreement).

5.  If GMAC demands payment in full of the Total Indebtedness, or termination of or default occurs under, this Agreement, and Dealers fail to make immediate payment, Dealers hereby agree that GMAC may take immediate possession of all inventory in which GMAC has a security interest, together with all the other assets pledged as security for the Total Indebtedness under the Loan Documents (collectively, the "Collateral").

   (a)  For the purpose of effectuating the return of possession of all such Collateral to GMAC, the Dealers agree to voluntarily surrender possession of such Collateral to GMAC. In this connection, the undersigned hereby authorize GMAC and grant GMAC the privilege to immediately and hereafter enter upon all business premises of the Dealers to take and retain possession of, and, when deemed necessary and desirable by GMAC, to remove from said premises, any and all Collateral in which GMAC holds or claims a security interest. The undersigned further agrees that GMAC may thereafter sell, lease or otherwise dispose of such Collateral in any manner permitted by any of the Loan Documents between the undersigned and GMAC, or as permitted by applicable law. GMAC shall apply the proceeds of the disposition and sale of such Collateral to the payment of the Total Indebtedness, and any other sums due or to become due under the Loan Documents, including attorneys' fees and expenses incurred in retaking possession of, transporting, storing, preparing for sale and disposing of and selling such Collateral, and that the application of proceeds shall be in such order and manner as determined by GMAC at its sole discretion.

   (b)  The voluntary surrender of such Collateral to GMAC and GMAC's disposition and sale thereof shall not constitute a satisfaction or payment in full of the Total Indebtedness due or to become due under the Loan Documents, and further shall not constitute a waiver or relinquishment of any other rights, remedies, or benefits conferred upon GMAC pursuant to the Loan Documents, or applicable law, including without limitation the right to payment of any deficiency balance remaining due after the disposition and sale of the Collateral. If available, the sale or return of the Collateral to the manufacturer pursuant to a repurchase or similar type agreement is commercially reasonable, even if it results in a deficiency.

6.  This Agreement supersedes all agreements previously made between the parties, if any, relating to the specific subject matter of this Agreement. Otherwise, this Agreement is not intended, nor is it to be deemed, a substitution, novation or rescission of any of the Loan Documents. Except as modified hereby, the Loan Documents remain in all respects in full force and effect and are ratified, approved and confirmed.

1062368v3

7

7. This Agreement is not to be considered a waiver or estoppel of any of the debt owed to GMAC, GMAC's rights or any defaults under the Loan Documents, applicable law or otherwise, other than the defaults resulting solely from the failure to make the payments which have been extended under this Agreement. GMAC may at any time exercise any remedies available to it as a result of other defaults by Dealer under any of the obligations to GMAC or defaults under this Agreement.

8. Each Obligor and Johnson confirms that the liabilities, duties and obligations arising out of the Loan Documents and this Agreement are valid and legally enforceable; and as of the date of this Agreement, there are no claims, setoffs, or defenses to the payment by them to GMAC, and, in the absence of this Agreement, GMAC could properly enforce the payment in full of the Total Indebtedness and exercise any and all of its other remedies upon default, as set forth in the Loan Documents. Except as otherwise set forth in this Agreement, GMAC will continue to hold and enforce its rights under all Loan Documents, and Obligors shall continue to be obligated to GMAC for the payment of the Total Indebtedness and any and all other amounts owed to GMAC.

9. The Loan Documents or Guaranty do not impose any obligation upon GMAC for making loans, advancing funds, extending credit, or providing financial accommodations to the Dealers and GMAC is under no obligation to provide the Dealers with any funding whatsoever pursuant to the Loan Documents or Guaranty.

10. The "Forbearance Period" means that period of time commencing when this Agreement is fully executed and terminating on the earliest of (a) the later of the closing under the Chevrolet Sale Agreement or Chrysler Sale Agreement; (b) the payment to GMAC of the Total Indebtedness; (c) the termination of the Chevrolet Sales and Service Agreement by GM or the termination of the comparable Chrysler franchise documents by Chrysler Corporation; (d) the termination of this Agreement by GMAC at any time after ninety (90) days following its execution if the closing under the Chevrolet Sale Agreement has not occurred; or (e) the date of the occurrence of any of the following events of default ("Events of Default"):

(i) The entry of a decree or order by a court of competent jurisdiction for relief with respect to any Obligor under Title 11 of the United States Code as now constituted or hereafter amended, or any other applicable federal, state, or foreign bankruptcy law or similar law appointing of a receiver, liquidator, assignee, trustee, custodian, sequestrator, conservator, or similar official of any Obligor, or of any part of any Obligor's property, ordering the winding-up of or liquidation of the affairs of any Obligor.

(ii) The filing by any Obligor of a petition or answer or consent seeking relief under Title 11 of the United States Code, as now constituted or hereafter amended, or any other applicable federal, state, or foreign bankruptcy law or other similar law, or the consent by any Obligor, to the institution of proceedings thereunder or to the filing of any such petition or the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian,

8

sequestrator, conservator (or other similar official) of any Obligor, or of any portion of the property of such Obligor.

(iii)    The failure of any Obligor to pay when due any sum that such Obligor is required to pay to GMAC under the Loan Documents or hereunder, or to perform when required any obligation that any Obligor is required to perform under any of the Loan Documents or Guaranty, or the failure of any Obligor to observe any obligation required to be observed by such Obligor under any of the Loan Documents or Guaranty.

(iv)    Any breach of any of the terms or conditions of this Agreement, the Loan Documents or Guaranty other than the pre-existing default resulting in the Out of Trust Amount.

(v)    Any representation or warranty by any Obligor in this Agreement shall be false, misleading or incorrect in any material respect.

(vi)    The sale, transfer or conveyance of (A) any assets of the Dealers, other than sales or leases of vehicles in the ordinary course of business, or sale of parts and/or accessories as approved by GMAC, or pursuant to the Chevrolet Sale Agreement or the Chrysler Sale Agreement, or (B) the real estate which is the subject of the Collateral Mortgage.

(vii)    The occurrence of any default under the Assignment of Sale Proceeds.

(viii)    The occurrence of any default under any of the Collateral Mortgages.

11.    Representations and Warranties.  Obligors represent and warrant to GMAC as follows:

(a)    Recitals.  The recitals in this Agreement are true and correct in all respects.

(b)    Enforceability.  This Agreement, the Collateral Mortgages, Chevrolet Sale Agreement, Chrysler Sale Agreement (when executed by Chrysler), the Assignment of Sale Proceeds and the Chevrolet Sales Agreement Amendment (each and all of the foregoing referred to as the "Additional Agreements") are the legal, valid and binding obligations of Obligors and such other parties that execute such Additional Agreements ("Additional Parties") enforceable against Obligors and the Additional Parties in accordance with their respective terms and all necessary corporate action of Dealers and entity action of the Additional Parties have been taken by the shareholders and directors of Dealers and appropriate persons for such Additional Parties to authorize its actions in entering into and fulfilling its obligations under the aforesaid Agreements.

(c)    No Violation.  Neither this Agreement nor the consummation of the transactions contemplated herein or the performance by Obligors and the Additional Parties of their obligations hereunder or under any of Additional Agreements will:

(i)    violate any law, rule, regulation or court order to which Obligors are subject; or

(ii)    conflict with, constitute a breach of or result in a default under, or accelerate or permit acceleration of performance required by any agreement to which any Obligor is a party or by which any of their respective properties may be bound or affected; or

(iii) result in the creation of any lien, charge or encumbrance upon any Obligor's assets under any such agreement or instrument, except those liens created under or permitted by this Agreement and the Loan Documents; or

9

(iv) terminate or give any party thereto the right to terminate any such agreement or instrument; or

(v) conflict with any provision of Dealers' certificates of incorporation or by-laws.

(d) Properties and Contracts. Other than the Additional Agreements, Obligors are not a party to, or bound by, any contract or agreement or subject to any restriction which materially and adversely affects any of their assets or their ability to carry out the transactions contemplated by this Agreement or any other Loan Documents.

(e) Litigation. Obligors are not a party to or, to the best of their knowledge, threatened with, any litigation, suit, action, investigation, proceedings or controversy before any Court, administrative agency or other governmental authority which might result in any material adverse change in Dealers' business operations, properties or assets or in its condition, financial or otherwise, or in any way involving this Agreement, the Additional Agreements or the Loan Documents, and that Obligors are not in violation of or in default with respect to any judgment, order, writ, injunction, decree or rule of any court, administrative agency or governmental instrumentality or in any material respect under any regulation of any administrative agency or governmental instrumentality.

(f) Taxes. All tax returns of Dealers required to be filed have been timely filed or proper extensions have been obtained, and all taxes, assessments, fees or other amounts required to be held and paid to a governmental agency or regulatory authority, and other governmental charges upon Dealers and upon their respective properties, assets, income and franchises which are due and payable, have been paid when due and payable. Dealers do not know of any proposed, asserted or assessed tax deficiency against it.

(g) No Other Defaults. Except for the Out of Trust Amount, no other events of default have occurred under the Loan Documents.

12.   Remedies. Upon the expiration or termination of the Forbearance Period, and in any case, upon the occurrence of any Event of Default hereunder:

(a) GMAC may proceed to enforce payment under any and all of the Loan Documents and exercise any and all other rights and remedies possessed by GMAC thereunder in the same manner as if an event of default had occurred thereunder; and

(b) EACH OBLIGOR DOES HEREBY IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD TO APPEAR FOR AND CONFESS JUDGMENT AGAINST SUCH OBLIGOR (A) FOR SUCH SUMS AS ARE DUE AND OR MAY BECOME DUE ON THE OBLIGATIONS DUE GMAC UNDER THE LOAN DOCUMENTS, INCLUDING THE BALANCE OF THE TOTAL INDEBTEDNESS, AND/OR (B) IN ANY ACTION OF REPLEVIN INSTITUTED BY GMAC TO OBTAIN POSSESSION ON ANY COLLATERAL, IN EITHER CASE WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH AN AMOUNT ADDED FOR REASONABLE ATTORNEY'S FEES. EACH OBLIGOR (I) VOLUNTARILY CONDEMNS ANY REAL ESTATE LEVIED ON, AUTHORIZES THE PROTHONOTARY OR

10

CLERK TO ENTER UPON THE WRIT OF EXECUTION SAID VOLUNTARY
CONDEMNATION AND AGREES THAT SAID REAL ESTATE MAY BE
SOLD ON A WRIT OF EXECUTION; (II) TO THE EXTENT PERMITTED BY
LAW, WAIVES AND RELEASES ALL RELIEF FROM ALL REDEMPTION,
APPRAISEMENT, STAY, EXEMPTION OR APPEAL LAWS OF ANY STATE
NOW IN FORCE OR HEREAFTER ENACTED; AND (III) RELEASES ALL
ERRORS IN SUCH PROCEEDINGS. IF A COPY OF THIS AGREEMENT,
VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF GMAC SHALL HAVE
BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE
THE ORIGINAL AGREEMENT AS A WARRANT OF ATTORNEY. THE
AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT
AGAINST EACH OBLIGOR SHALL NOT BE EXHAUSTED BY THE INITIAL
EXERCISE THEREOF, AND THE SAME MAY BE EXERCISED, FROM TIME
TO TIME AS OFTEN AS GMAC SHALL DEEM NECESSARY AND
DESIRABLE, AND THIS AGREEMENT SHALL BE A SUFFICIENT
WARRANT THEREFOR. GMAC MAY ENTER ONE OR MORE JUDGMENTS
IN THE SAME OR DIFFERENT COUNTIES FOR ALL OR PART OF THE
OBLIGATIONS, WITHOUT REGARD TO WHETHER JUDGMENT HAS
BEEN ENTERED ON MORE THAN ONE OCCASION FOR THE SAME
OBLIGATIONS. IN THE EVENT ANY JUDGMENT ENTERED AGAINST
ANY OBLIGOR HEREUNDER IS STRICKEN OR OPENED UPON
APPLICATION BY OR ON ANY OBLIGOR'S BEHALF FOR ANY REASON
WHATSOEVER, GMAC IS HEREBY AUTHORIZED AND EMPOWERED TO
AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST ANY
OBLIGOR; SUBJECT, HOWEVER, TO THE LIMITATION THAT SUCH
SUBSEQUENT ENTRY OR ENTRIES OF JUDGMENT BY GMAC MAY ONLY
BE DONE TO CURE ANY ERRORS IN PRIOR PROCEEDINGS, ONLY AND
TO THE EXTENT THAT SUCH ERRORS ARE SUBJECT TO CURE IN THE
LATER PROCEEDINGS.

13. Obligors and Johnson confirm that, notwithstanding the execution and
implementation of this Agreement, (i) GMAC reserves the right to strictly enforce
the Loan Documents and Guaranty (subject only to the limitations imposed by this
Agreement) and this Agreement; (ii) GMAC is under no duty or obligation of any
kind or nature whatsoever to grant Dealers any additional period of forbearance,
(iii) no course of performance, course of dealing or trade usage is intended by, nor
will be deemed to have occurred, as a result of this Agreement, and (iv) GMAC's
actions in entering into this Agreement are not intended nor must they be
construed as a waiver or estoppel of any of GMAC's rights or remedies under the
Loan Documents, Guaranty or applicable law.

14. Obligors and Johnson hereby forever waive, relinquish and release all defenses
and claims of every kind or nature, whether existing by virtue of state, federal,
bankruptcy or nonbankruptcy federal law, by agreement or otherwise, (collectively
"Claims") against GMAC, its affiliates, and its respective board of directors,
consultants, successors, assigns, directors, officers, agents, employees and
attorneys, (individually and collectively "GMAC Parties") whether known or
unknown, whether in dispute or not, whether liquidated or contingent, foreseen or
unforeseen, whether in contract, tort, equity or otherwise, whether heretofore or

11

now existing, arising out of or related to any transactions or dealings between any of the GMAC Parties on the one hand and Obligors and Johnson on the other, or otherwise, including without limitation, any affirmative defenses, counterclaims, setoffs, deductions or recoupments ("Release"). The foregoing Release includes, without limitation, the right to contest, in the event GMAC enforces its rights under the Loan Documents, Guaranty, and/or this Agreement:

(a) any events of default under the Loan Documents, whether or not declared by GMAC;

(b) any provisions of the Loan Documents, Guaranty or this Agreement;

(c) the security interest or liens of GMAC in any property (whether tangible or intangible), right, or other interest, now or hereafter arising;

(d) the conduct of GMAC in administering credit lines, financing accommodations and loans to Dealers, in exercising any and all rights under the Loan Documents, or otherwise; or

(e) the amount of the Total Indebtedness.

15. Obligors agree to execute from time to time such instruments, documents, or agreements as reasonably requested by GMAC (e.g., Security Agreement or additional Voluntary Surrender Agreements) to create, perfect, or protect GMAC's liens and security interests referred to herein and any other liens and security interests of GMAC or in order to carry out the transactions contemplated by this Agreement or any other agreement between Obligors and GMAC.

16. Dealers waive and renounce all rights which are waivable under Article 9 of the Uniform Commercial Code, as adopted by the Commonwealth of Pennsylvania, whether such rights are waivable before or after default, including, without limitation, those rights with respect to the compulsory disposition of collateral (Sections 9-620, 9-621 and 9-624), the Dealers' right of redemption under UCC 9-623 and 9-624, and the Dealers' right to notice of any disposition of collateral under UCC 9-611 and 9-624. The Dealers agree that the sale or return of collateral (1) to the original seller of the collateral, pursuant to a repurchase agreement; (2) at a private auction attended only by dealers holding GM franchises; or (3) to the highest of three solicited cash bids shall constitute a commercially reasonable disposition even if such sale or disposition results in a deficiency; provided, however, that the failure of GMAC to utilize one of the above described methods will not be regarded as a commercially unreasonable sale.

17. If any Obligor (1) files with any bankruptcy court of competent jurisdiction or is the subject of any petition under Title 11 of the United States Bankruptcy Code as amended ("Bankruptcy Code"); (2) is the subject of any order for relief issued under Title 11 of the Bankruptcy Code; (3) files or is the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal state or act or law relating to bankruptcy, insolvency, or other relief for debtors; (4) has sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator; or (5) is subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or

12

state act or law relating to bankruptcy, insolvency, or relief for debtors; then GMAC will thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the Bankruptcy Code, or by any other federal or state act or law, on or against the exercise of the rights and remedies otherwise provided by law, and any action taken by GMAC in this regard will not be defended or contested by any Obligor.

18.   Obligors agree to indemnify, save, defend and hold GMAC harmless from any and all claims, liabilities, obligations, damages and actions resulting from Dealers' management of its business, the failure of Dealers to provide for any payoff of financing institutions on trade-in vehicles, or for any other claims that may be made against GMAC with respect to the operation of Dealers' business including, without limitation, any creditors' claims and tax obligations, and any breach or non-fulfillment of any term, condition, representation, warranty or covenant under this Agreement, and such indemnification shall include all of GMAC's reasonable attorney's fees, costs and any other damages incurred by GMAC with respect to any of the foregoing.

19.   Except for the payment of reasonable operating expenses, Dealers agree with GMAC that all of the present and future indebtedness, if any, of Dealers to or from any individual Obligor or Johnson and any and all security therefor now or hereafter held shall be and is hereby subordinated to, pledged and made security for the payments due GMAC under this Agreement. Except as set forth above and for the payment of reasonable operating expenses, Dealers will and do hereby transfer, set over and deliver to GMAC all existing and future indebtedness, if any, of Dealers to or from any individual Obligor or Johnson and all security therefor, including the execution and delivery to GMAC of all instruments and documents reasonably requested by GMAC indicating all the indebtedness of Dealers to or from any individual Obligor or Johnson now or hereafter coming into existence and all security therefor. Except as set forth above, Dealers shall not accept or receive from or pay to any individual Obligor or Johnson any payment of principal or interest on account of, or any security for, any indebtedness of Dealers to or from any individual Obligor or Johnson and shall not transfer any of its assets to any individual Obligor or Johnson by loan or otherwise, without written consent of GMAC. GMAC shall have the sole right to accept and receive from Dealers all payments of every nature that are or hereafter become payable or receivable by the Dealers to or from any individual Obligor or Johnson.

20.   Chevrolet acknowledges that the Loan Documents entered into by Chevrolet with GMAC are amended by inserting the name "Mente Chevrolet Oldsmobile, Inc." in place of "Mente Chevrolet, Inc." as a result of Chevrolet's change of name that occurred 5/18/07.

21.   Notwithstanding Johnson's execution of this Agreement and her agreement to be bound by the terms contained herein, Johnson shall have no personal liability to GMAC for the payment of the Total Indebtedness.

22.   The Loan Documents and Guaranty continue to govern and control the relationship between the parties except to the extent inconsistent with this

13

Agreement. To the extent of any inconsistency, this Agreement governs and controls.

23.    All of Obligors' and Johnson's representations, warranties, covenants, agreements and certificates under or pursuant to the Loan Documents, the Guaranty and this Agreement survive and continue after the consummation of the transactions reflected herein.

24.    All notices or demands to parties are sufficient if made in writing upon deposit in the mail, postage prepaid, and addressed to the parties at the addresses as set forth above.

25.    This Agreement is binding upon and inures to the benefit of Obligors and GMAC and their respective successors, and assigns. ⁻ ... ....

26.    GMAC's delay or failure to exercise any right, power or privilege under this Agreement does not affect such right, power or privilege nor does any single or partial exercise thereof preclude any further exercise thereof, nor the exercise of any other right, power or privilege. The rights of GMAC under this Agreement are cumulative and are not exclusive of any rights or remedies which GMAC would otherwise have except as modified herein.

27.    This Agreement will be interpreted and construed and the rights of the parties will be determined under the laws of the Commonwealth of Pennsylvania, without regard to its laws on conflicts of laws, and under applicable federal law.

28.    This Agreement, and any agreements, documents and instruments executed and delivered pursuant to it or in connection with it, or referenced in it, contains the entire agreement of the parties regarding the respective subject matter thereof, and no party is bound by anything not expressed in writing.

29.    This Agreement can only be amended or modified in a writing executed by Obligors and GMAC.

30.    Obligors and Johnson have completely read, fully understand and have freely and voluntarily executed this Agreement after having discussed this Agreement with their legal counsel or advisor, or after having been given reasonable opportunity to do so.

31.    Should any part, term or provision of this Agreement be decided by a court of competent jurisdiction to be illegal or in conflict with any law of the Commonwealth of Pennsylvania, federal law, or any other applicable law, the validity of the remaining portions or provisions of this Agreement will not be affected thereby.

14

32. Time is of the essence of this Agreement and the performance of all obligations hereunder and all of the parties acknowledge and agree that each and every one of the terms and conditions will be strictly enforced, with no application of the standard of substantial compliance as a defense to noncompliance.

Signed September 30 2007

Mente Chevrolet Oldsmobile, Inc. f/k/a        GMAC
Mente Chevrolet, Inc.

By: _____              By: _____
Name:    Donald M. Mente                    Name:    Jeffrey J. Lovell
Title:      President                         Title:    Assistant Secretary

Mente Chrysler Dodge, Inc.

By: _____
Name:    Donald M. Mente
Title:      President

Guarantor:

_____
Donald M. Mente

_____
Donna M. Johnson