IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MENTE CHEVROLET OLDSMOBILE, INC: F/K/A MENTE CHEVROLET, INC. t/a MENTE CHEVROLET<br><br>and<br><br>MENTE CHRYSLER DODGE, INC.<br><br>and<br><br>DONALD M. MENTE,<br>　　　　　　　　*Plaintiffs,*<br>v.<br><br>GMAC,<br>　　　　　　　　*Defendant.* | CIVIL ACTION<br><br>NO. 08-cv-2403 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AND FOR DECLARATORY JUDGMENT**

**SUMMARY OF FACTS RELEVANT TO PLAINTIFFS' MOTION**

On July 19, 2007, without prior notice, and knowing that plaintiffs' controller (who handled all financial matters for the Mente dealerships) was away on vacation, a team of employees from defendant GMAC descended on the Mente dealerships, unilaterally accused plaintiffs of not timely paying for "certain" vehicles sold by the Chevrolet store which were financed by GMAC, seized Mente's property and, drained of assets and working capital, forced Mente to close his dealerships forever. After four decades of uninterrupted business in Berks County, GMAC forced 70 employees of

3

Mente out of work virtually overnight, and the family-owned and operated business was shuttered forever.

But GMAC still was not through. As part of its ongoing efforts to ensure Mente's demise, GMAC waited seven months, and then filed the first of two actions against Mente in Pennsylvania state court (Berks County)—steps that GMAC should have taken *before* seizing Mente's property in July 2007 and thereafter. More particularly, GMAC filed an action in replevin against Mente (Berks Docket No. 08-1760) on February 11, 2008 to retrieve fixtures and equipment that remained at the stores after GMAC had systematically cleaned them out during the preceding months. Two months later, on April 7, 2008, GMAC filed a confession of judgment action against the dealerships and Mr. Mente personally (Berks Docket No. 08-4170) seeking to recover more than $ 1 million allegedly owed by Mr. Mente to GMAC under their credit lines. But GMAC's ongoing deprivation of Mente's property rights and conversion of Mente's assets were not cured even by those belated and untimely court filings. GMAC waited yet another seven months after filing its replevin action before filing a Motion for the Issuance of a Writ of Seizure in that case on September 15, 2008, seeking permission from the Pennsylvania state court to "finish the job" that GMAC had started more than a year earlier on July 19, 2007 when it first entered Mente's stores and seized Mente's property.[1] That action by GMAC was far too little, much too late. GMAC seized Mente's property in clear violation of Pennsylvania state law, and compounded that initial illegality when it invoked the state court system to perpetuate its already unlawful conduct. For that, GMAC is liable to plaintiffs.

---

[1] And despite express representations by GMAC to the state court that it would post the requisite bond even at that late date, GMAC has failed to this day to do so.

## ARGUMENT

### I. THE STANDARDS FOR SUMMARY JUDGMENT

Under Rule 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Rule goes on to provide that summary judgment may be granted on all or any "part" of a claim or cause of action, and that judgment may also be entered on "liability alone, even if there is a genuine issue on the amount of damages." Fed.R.Civ.P. 56(a) and (d)(2). This case is the poster child for entry of summary judgment, for the material facts applicable to Counts II and VIII of plaintiffs' Complaint, after an extensive discovery period (extended by the Court at GMAC's specific request), are not in dispute, and plaintiffs' right to relief under the law is clear and undeniable.

### II. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS UNDER 42 U.S.C. § 1983 (COUNT II)

In order to prevail on their claims under Section 1983, plaintiffs must establish that GMAC: 1) violated a federally protected constitutional or statutory right of the Mente plaintiffs; and 2) acted under color of state law. *See Jordan v. Fox Rothschild O'Brien & Frankel,* 20 F.3d 1250, 1264 (3d Cir. 1994) (holding law firm liable under § 1983 for invoking Pennsylvania procedures for attachment of property). Corporations and other entities, such as the Mente dealerships, have standing to bring Section 1983 claims on their own behalf, *see Addiction Specialists, Inc. v. Twp. Of Hampton,* 411 F.3d 399 (3d Cir. 2005), as does Mr. Mente personally. Section 1983 liability for violations of state

replevin rules and procedures apply in commercial contexts. *See Morrow v. Electric Co. v. Cruse*, 370 F. Supp. 639 (N.D. Ga. 1974). Taking someone's "property" or depriving plaintiff of a property interest "under color of state law" constitutes a violation of Section 1983. *Jordan, supra; Morrow Electrical, supra.*

The Pennsylvania rules governing replevin and confessed judgments were amended in 1975 and 1996, respectively, to address pervasive constitutional due process defects which plagued prior rules and procedures. Under the revised replevin rules in effect for 30 years, a private party may seize another's property (as GMAC did to Mente here) *only* through the filing of a formal state court action accompanied by: 1) the issuance of a formal writ of seizure by the state court with prior notice and a hearing attended by the owner of the property (Pa.R.Civ.P. 1075.1), or 2) the issuance of a writ of seizure on an emergency *ex parte* basis still with prior court approval but followed immediately by a prompt hearing in situations where the value or continued existence of the property is in jeopardy (Pa.R.Civ.P. 1075.2).[2] Under either of these provisions, the party seeking replevin must demonstrate to the state court, at least *prima facie* before a writ of seizure can issue, the "probable validity" of the underlying claim and a right to possession of the property to be seized. In order to protect the owner from errors in the replevin process or from an adverse decision against the seizing party in the underlying claim to possession, any seizure of property under either of these provisions must be accompanied by a court-approved bond "in double the value of property averred in the

---

[2] Although the Rules themselves are clear, their Explanatory Comments provide the constitutional background for the abandonment of unilateral "self-help," since the replevin provisions struck down by the United States Supreme Court **were Pennsylvania's own statute and rules**. *See* 1975 Explanatory Comment to Pennsylvania's replevin rules, Pa.R.Civ.P. 1071 *et seq.*

6

complaint...." Pa.R.Civ.P. 1075.3.[3] Unilateral "self-help" tactics such as those employed by GMAC against the Mente dealerships here have been prohibited in Pennsylvania for decades.[4] *See Ford Motor Credit Co. v. Northern Assoc.,* 2007 U.S. Dist. LEXIS 6819 (M.D. Pa., Jan. 30, 2007) (involving sale of vehicles "out of trust" and addressing requirements for replevin and seizure under Pennsylvania law)[5]; *Hembach v. Quikpak Corp.,* 1998 U.S. Dist. LEXIS 40 (E.D. Pa., Jan. 8, 1998) (while moving party had properly commenced replevin action, movant had failed to seek a writ of seizure, to post a bond or to request a pre- or post-seizure hearing, rendering summary judgment inappropriate). S*ee also Parks v. "Mr. Ford,"* 556 F.2d 132 (3d Cir. 1977) (*en banc*) (private repairman selling customer's vehicle under state statute constitutes "state action" under § 1983 ).

GMAC flat out ignored and violated Pennsylvania replevin Rules until February 11, 2008, when it filed its belated replevin action in Berks County and then waited another seven months before seeking a writ of seizure that it should have obtained *before* unilaterally appropriating Mente's property and assets (including vehicles and cash accounts), put Mente out of business, and destroyed the lives of 70 families and the surrounding community a year earlier. While too little, too late, GMAC's eventual commencement of litigation and invocation of state processes and procedures–continuing

---

[3] As with replevin actions, confession of judgment proceedings have, since 1996, been governed by strict rules which protect obligors such as Mente here from the precise abuse inflicted them on by creditors such as GMAC. *See* Pa.R.Civ.P. 2950-2986 and 1996 Explanatory Comments.

[4] "Self-help" remedies for repossession of consumer automobiles and in other specific contexts are governed by separate and very narrow provisions of Pennsylvania law.

[5] The *Ford Motor Credit Co.* case is on "all fours" as it lays out what GMAC was required to do *before* it unilaterally seized Mente's assets on July 19, 2007 and thereafter. In *Ford*, the court refused to grant an *ex parte* seizure order under PA Rule 1075.2 (which still required an immediate post-seizure hearing) because there was no evidence that the dealer would "conceal, dispose of, encumber or waste" the vehicles which constituted Ford's collateral. But the court scheduled a hearing on Ford's motion for a writ of seizure as provided in PA Rule 1075.1, as well as the posting of a mandatory bond under the replevin statute. GMAC did none of that here.

7

and compounding the damage to Mente which GMAC already had inflicted—constitutes conduct under "color of law" which subjects GMAC to liability under Section 1983. *See Jordan, supra* (actions of landlord and its attorneys garnishing bank account of tenant constituted state action under color of law subject to liability under § 1983), *citing Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). *See also Wyatt v. Bill Cole*, 504 U.S. 158 (1992) (private defendants invoking state replevin and attachment statutes act under color of state law for § 1983 liability purposes). Quoting with approval from the District Court's decision, our Court of Appeals held in *Jordan*:

> "Consistent with *Lugar*, private attorneys acting on their client's behalf, who invoke the machinery of the state to effect an *ex parte* seizure of property can be found to be state actors under § 1983."

20 F.3d at 1265.[6]

Here, GMAC's conduct was even more egregious than that involved in *Jordan*, because GMAC deliberately waited to "invoke the machinery of the state" to pick what little meat remained on the bones of the Mente dealerships *after* it had already unlawfully destroyed those businesses and the lives of the 70 employees who worked at them. But the fact is that GMAC perpetuated its unlawful conduct through the use of "Pennsylvania's procedure for attachment and seizure," *Jordan* at 1265, when it belatedly filed its replevin action in February 2008 and even more belatedly filed its motion for a writ of seizure in September 2008. For that and what transpired before then, GMAC is liable to Mente under Section 1983. *Jordan, supra.* To hold otherwise would reward GMAC for violating Pennsylvania law when it initiated its assault against Mente in the first place on July 19, 2007 and continued that siege throughout 2007. That would be bad

---

[6] The *Jordan* case is identified by name as the reason for amendments to the Pennsylvania Rules governing confession of judgments. *See* 1996 Explanatory Comment following Pa.R.Civ.P. 2958.1, *superseding* rescinded Pa.R.Civ.P. 2958.

practice and even worse policy, as it would encourage exactly the type of unilateral conduct that the Rules prohibit and condemn but in which GMAC calculatingly engaged.

In fact, GMAC was acting "under color of state law" when it entered the Mente dealerships on July 19, 2007 and, after declaring them "out of trust," unilaterally took possession and control of Mente's assets. According to GMAC, it was merely exercising its "security interests" in the collateral underlying the wholesale floor-plan financing that it had furnished to Mente. That collateral included new vehicles purchased by Mente from General Motors and Chrysler which were financed by GMAC, as well as other property at the dealerships.[7] To "perfect" its security interest in that collateral, GMAC filed numerous Financing Statements with the Secretary of State of the Commonwealth of Pennsylvania under Pennsylvania's version of the Uniform Commercial Code ("UCC"). When GMAC unilaterally purported to "exercise" its "rights" under the UCC and those "perfected" security interests filed with the Commonwealth of Pennsylvania by entering Mente's dealerships and seizing Mente's property, it was clearly action "under color of" those laws and that purported authority. That it did so illegally and in violation of state replevin laws and procedures does nothing to diminish the state-based source of the rights under which GMAC presumed to act. *See Parks, supra.*

Indeed, GMAC itself invoked its "perfected" security interest under the Pennsylvania UCC and these state-filed financing statements when it moved the Berks

---

[7] Among the property at the Mente dealerships in which GMAC asserted a perfected security interest with the Secretary of State's Office of the Commonwealth of Pennsylvania under the UCC was all new and used motor vehicles, parts, supplies, bank accounts, tools, machinery, furniture, fixtures, chattel paper, all proceeds from the sale or other disposition of this property and other items. These were the exact items unlawfully seized by GMAC when it entered Mente's stores on July 19th and stayed until all that property was liquidated in early 2008. In other words, GMAC laid claim to Mente's *entire business*. See Motion of Plaintiff GMAC for Issuance of Writ of Seizure in replevin action, p. 6 (GMAC claims a "security interest in and to *essentially all assets* of Mente Chevrolet." (Emphasis added).

County court, albeit untimely, for a writ of seizure in the replevin action. In GMAC's own words in that Motion:

> "GMAC's security interest was duly perfected by the filing of appropriate Uniform Commercial Code Financing Statements, which financing statements were subsequently continued and amended from time to time pursuant to the filing of certain Uniform Commercial Code Continuation and Amendment Statements."

Those "perfected" security interests are creatures and creations of state law. *See, e.g.*, 13 Pa.C.S.A. §§ 9502, 9315. It was on the strength of these state statutory UCC financing statements filed with the Pennsylvania Secretary of State that GMAC sought a writ of seizure in the replevin action in September 2008. And GMAC invoked these same "perfected" security interests under the UCC filed with the Commonwealth of Pennsylvania when it engaged in the unlawful seizure of Mente's property beginning on July 19, 2007 and continuing thereafter.

As described in more detail in the accompanying Statement of Undisputed Material Facts and the Declaration of Kenneth A. Jacobsen (both of which cite to uncontested and admissible evidence), ***and according to GMAC's own accounting***, when GMAC unilaterally entered and took over the Mente dealerships on July 19, 2007, GMAC unlawfully seized at least the following property of Mente on that day and thereafter:

> 1. $ 95,523.25 in Mente's "Open Account" with General Motors, similar to a bank account. *See Giles v. GMAC*, 494 F.3d 865, 870-71 (9th Cir. 2007) (describing "open accounts" of dealer seized by GMAC); *Finberg v. Sullivan*, 634 F.2d 50, 58 (3d Cir. 1980) (*en banc*) (seizure of bank accounts is constitutional deprivation of property);
>
> 2. $ 34,000 in Mente's Open Account with Chrysler;
>
> 3. $ !5,646.39 in funds owed by GMAC to Mente directly, immediately "suspended" by GMAC on July 19th when GMAC declared the dealerships "out

of trust" but never paid by GMAC and instead diverted by GMAC to payment of its own fees and expenses;[8]

4. Keys, titles and Manufacturers' Certificates of Origin to new vehicles on Mente's lots, which property was owned by Mente and was in Mente's exclusive possession until seized by GMAC on July 19th and controlled by GMAC (including appropriation of all sales proceeds) thereafter. *See* 13 Pa.C.S.A. § 1201 (defining "holder" and one in "possession" of a title under the UCC); *Commonwealth v. One 1988 Suzuki Samari*, 589 A.2d 770 (Pa. Cmwlth. 1991) (defining "ownership" of motor vehicle as person with "possessory interest in the property with attendant characteristics of dominion and control"). *See also Stana v. School Dist. of the City of Pittsburgh*, 775 F.2d 122, 125-26 (3d Cir. 1985) (describing "property" and "property interests" broadly for purposes of § 1983 liability);[9]

5. Proceeds from the sales of new and used vehicles from July 19, 2007 until the remaining inventory was liquidated by GMAC at auction in January 2008; and

6. Titles, keys and used vehicles on Mente's lot that were not "floor planned" by GMAC and which were owned outright by Mente.

That same accounting—***GMAC's own reconciliation of funds***—shows that GMAC paid itself hundreds of thousands of dollars in additional fees and expenses throughout 2007 out of the funds and proceeds that it seized from the Mente dealerships purportedly to "protect its security interests" after it seized the dealerships.

Indeed, a compelling argument can be made that GMAC's entire onslaught of the Mente dealerships beginning on July 19, 2007 and continuing unabated thereafter

---

[8] GMAC diverted these Open Account funds, monies owed directly to Mente by GMAC and other seized assets to an astonishing $ 435,337.64 in GMAC's fees, expenses and other charges assessed and collected by GMAC between July 19, 2007 and February 4, 2008.

[9] In *Stana*, our Court of Appeals observed that Fourteenth Amendment "property interests" for purposes of § 1983 liability often are created "by state statues and regulations" but also are "varied and, as often as not, intangible, relating to the whole domain of social and economic fact." 775 F.2d at 125-26 (citations omitted). Certainly, at a minimum, Pennsylvania's strict rules and procedures on replevin conferred on the Mente plaintiffs a property interest that those rules and procedures would be scrupulously followed before their property was seized by GMAC.

11

constituted an unlawful seizure of that *entire* business, as GMAC exercised complete dominion and control over those dealerships.[10]

In this connection, the *Giles* decision by the Ninth Circuit is particularly instructive, as it involves ***identical*** claims by GMAC of an "out of trust" situation at an automobile dealer (caused by an unknown embezzlement at the dealership) similar to the "out of trust" declaration used by GMAC to shut down Mente and other dealers across the country in recent years. The *Giles* case also exposes the shameful and outright fraudulent practices employed by GMAC to put these dealers out of business.

Equally instructive is the Third Circuit's *en banc* decision in *Parks*, which involved purely private conduct by a repair shop in selling a customer's vehicle for non-payment of a repair bill. "State action" was found when a private business sold a repaired vehicle pursuant to the procedures mandated by state law, identical to GMAC's assertion here of its "right" to "exercise" its "perfected" security interest under the UCC though the filing of financing statements with the Office of the Pennsylvania Secretary of State.

And, of course, Judge Caputo's recent decision in *Ford Motor Credit Co.* from the Middle District of Pennsylvania could not be more on point, since it lays out what GMAC was ***required*** to do under Pennsylvania law but what GMAC refused to do, unilaterally employing prohibited "self-help" tactics instead.

Mente has steadfastly denied that he was "out of trust" on July 19th, and the evidence obtained during discovery, recounted in detail in the reports of plaintiffs' experts, overwhelmingly confirms that fact. That same evidence also confirms that Mente

---

[10] *See* n. 7 *supra*. In an ultimate insult and slap in Mente's face, GMAC also charged Mente for a security service that it hired to watch the stores after they were closed and fees for a "keeper" that GMAC placed physically on site at the dealerships on July 19th to oversee all of their operations and to ensure that GMAC received every penny that came into those stores.

would have been able to pay GMAC every penny of those alleged "out of trust" funds had GMAC simply waited one day for its Controller to return early from vacation to issue those checks. But the fact is that this Court need not decide whether Mente was "out of trust" on July 19th before granting Mente's present motion for partial summary judgment. The whole point of Pennsylvania's replevin Rules and procedure is that a court must make a determination of the *"probable validity"* of a secured party's claim and right to possession of property owned by another (like the property owned by Mente and seized by GMAC here) ***before*** issuing a writ of seizure authorizing detention of those assets. Someone's mere security interest in property (which GMAC may have had) does not negate the property owner's right of ownership or lawful possession of that same property, and certainly confers no right to unilateral "self-help." That is why the replevin rules were revised in 1975 in the first place, with the added protections of the posting of a bond and other prophylactic measures to protect a party like Mente from such devastating actions by a creditor. GMAC cannot benefit from any argument that it "guessed right" in seizing Mente's property, putting the Mente dealerships out of business, and forcing its 70 employees out on the streets. GMAC had to follow the same rules and procedures as every other creditor ***before*** undertaking such actions. *See Ford Motor Credit Co., supra.*

    The material facts are not in dispute. GMAC seaized Mente's property "under color of state law" in flagrant violation of the Pennsylvania state replevin laws, then belatedly invoked the processes of the Pennsylvania state courts to provide "cover" for its actions. For this, GMAC is liable to the plaintiffs under Section 1983. The specific amount of damages resulting from these violations can and should await trial on Mente's other claims. *See* Fed.R.Civ.P. 56(d)(2).

### III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIM FOR CONVERSION (COUNT VIII)

An unlawful conversion occurs when the defendant "deprives the plaintiff of his or her right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent *and without lawful justification*." *Chrysler Credit Corp. v. Smith*, 643 A.2d 1098, 1100 (Pa. Super. 1994) (emphasis added). Of course, since GMAC acted in direct violation of Pennsylvania law on replevin and seizure of property, it cannot possibly have acted with "lawful justification."

Pennsylvania law goes on to state that a "plaintiff has a cause of action in conversion if he or she had actual or constructive possession of a chattel or an immediate right to possession of a chattel at the time of the alleged conversion." *Chrysler, supra*. There is no dispute that Mente had not only actual possession but also an ownership interest in the Open Accounts, new vehicles, used vehicles and proceeds from the sales of those cars which were converted by GMAC when it took control of the Mente dealerships on July 19, 2007 and ran the businesses thereafter. GMAC is thus liable for converting that property of plaintiffs. *Cf. GMAC LLC v. Einer Hillquist*, 2009 U.S. Dist. LEXIS 73868, at *29-31 (N.D. Ill., Aug. 19, 2009) (converted property not identified).

### IV. PLAINTIFFS ARE ENTITLED TO A DECLARATORY JUDGMENT THAT GMAC HAS VIOLATED 42 U.S.C. § 1983 AND CONVERTED PLAINTIFFS' PROPERTY

The federal Declaratory Judgment Act expressly authorizes the courts to "declare the rights and other legal relations" of the parties, whether or not damages or other relief is sought. 28 U.S.C. § 2201.[11] Section 2202 goes on to state that "[f]urther necessary or proper relief based on a declaratory judgment or relief may be granted…against any

---

[11] *See also* Fed.R.Civ.P. 57, "Declaratory Judgment: The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."

adverse party whose rights have been determined by such judgment." Like summary judgment, a declaratory judgment is appropriate when it will decide a case based on "undisputed or relatively undisputed facts."[12] This is such a case.

For the same reasons that the Mente plaintiffs are entitled to partial summary judgment on their Section 1983 and conversion claims, Mente also is entitled to a declaratory judgment that: 1) GMAC's actions in seizing, retaining and liquidating plaintiffs' property on July 19, 2007 and thereafter violated Pennsylvania's state replevin rules; 2) GMAC violated Section 1983 by unilaterally asserting its purported "perfected" security interests to seize, control and dispose of Mente's property, including appropriating that property for itself; 3) GMAC's belated filing of a replevin action in February 2008 and a motion for a writ of seizure in September 2008 were part of its ongoing efforts to confiscate what few assets remained behind, all of which continuous and ongoing conduct constituted a violation of Section 1983; and 4) GMAC converted plaintiffs' property as demonstrated above.

WHEREFORE, plaintiffs respectfully request that the Court enter an Order in the form attached hereto granting plaintiffs' motion for partial summary judgment and for a declaratory judgment.

Dated: September 28, 2009

Respectfully submitted,

/s/ Kenneth A. Jacobsen
Kenneth A Jacobsen
**JACOBSEN LAW OFFICES**
PA Attorney I.D. No. 31208
12 Orchard Lane
Wallingford, PA 19086
(610) 566-7930

---

[12] *Id.* 1937 Advisory Committee Note.

15

Joseph A. O'Keefe
**O'KEEFE & SHER, P.C.**
PA Attorney I.D. No. 77068
15019 Kutztown Road
Kutztown, PA 19530
(610) 683-0771

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused copies of the foregoing Plaintiffs' Motion for Partial Summary Judgment and for a Declaratory Judgment, Plaintiffs' statement of Undisputed Facts in Support of their Motion for Summary Judgment and Declaratory Judgment, the declaration of Kenneth A. Jacobsen, the declaration of Joseph Galvin, and the expert reports of Joseph F. Roesner, MBA, CMA and Carl Woodward, CPA to be served on counsel for defendant GMAC electronically through the Court's electronic filing and service system as well as via FedEX addressed as follows:

Mary Grace Maley, Esquire
Regina Cohen, Esquire
LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO
190 North Independence Mall West
Suite 500
Philadelphia, PA 19106

Dated: September 28, 2009

/s/ Joseph A. O'Keefe
Joseph A. O'Keefe