## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MENTE CHEVROLET OLDSMOBILE, INC. | : | CIVIL ACTION |
| F/K/A MENTE CHEVROLET, INC. t/a | : | |
| MENTE CHEVROLET | : | |
|     and | : | |
| MENTE CHRYSLER DODGE, INC. | : | NO. 08-CV-2403 |
|     and | : | |
| DONALD M. MENTE | : | |
|         Plaintiffs | : | |
|    v. | : | |
| | : | DOCUMENT ELECTRONICALLY |
| GMAC | : | FILED |
|       Defendant | : | |
| | : | |

## BRIEF IN SUPPORT OF MOTION OF GMAC FOR SUMMARY JUDGMENT

Respectfully submitted,

LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

By:   s/Mary Grace Maley
      Mary Grace Maley, Esquire (PA 37610)
      mmaley@lavin-law.com
      Lorraine M. McGlynn, Esquire (PA 38974)
      lmcglynn@lavin-law.com
      Kim N. Nguyen, Esquire (PA 93568)
      knguyen@lavin-law.com
      190 North Independence Mall West
      Suite 500, 6th & Race Streets
      Philadelphia, PA  19106
      Phone:  (215) 627-0303
      Fax:  (215) 627-2551
      Attorney for Defendant, GMAC

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

I.   Introduction and Procedural Background ............................................................. 1

II.  Standard For Summary Judgment Pursuant To Fed. R. Civ. P. 56(c) ................... 3

III. Argument .......................................................................................................... 4

    A.   The Agreements Are Valid And Preclude Plaintiffs' Claims. .......................... 5

    B.   Plaintiffs have no claim under Section 2(e) of the Robinson-Patman Act, 15
        U.S.C. §13(e) (Count I). ................................................................................. 9

    C.   Plaintiffs have no claim under 42 U.S.C. §1983 (Count II). ......................... 10

    D.   Plaintiffs have no claims under the Automobile Dealer's Day in Court Act, 15
        U.S.C. §1221 *et seq.* or the Pennsylvania Board of Vehicles Act, 63 P.S.
        §818.12 (Counts III and V). .......................................................................... 11

    E.   Plaintiffs have no claim under the Sherman Act, 15 U.S.C. §1 (Count IV).......... 13

    F.   The plaintiffs have no claim for tortious interference with contractual relations
        or breach of contract (Counts VI and VII). ................................................... 15

    G.   Plaintiffs have no claim for conversion (Count VIII). ................................... 17

IV.  Conclusion ....................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

*Cases*

*1600 Penn Corp. v. Computer Sciences Co.,*
 2008 U.S. Dist. LEXIS 76764 (E.D. Pa. Sept. 30, 2008) ......................................................... 7

*Adams v. Adams,*
 848 A.2d 991 (Pa. Super. 2004)................................................................................................ 6

*Adams v. Southern California First Nat. Bank,*
 492 F.2d 324 (9th Cir. 1973) .................................................................................................. 11

*Bata v. Central-Penn National Bank of Phila,*
 423 Pa. 373, 224 A.2d 174 (1966) ....................................................................................... 6, 7

*Beckman v. Vassall-Dillworth Lincoln-Mercury, Inc.,*
 468 A.2d 784 (Pa. Super. 1983)............................................................................................... 7

*Blount Financial Services, Inc. v. Heller & Co.,*
 632 F. Supp. 240 (E.D. Tenn. 1986), *aff'd,* 819 F.2d 151 (6th Cir. 1987) ................................. 9

*Bohm v. Commerce Union Bank of Tennessee,*
 794 F. Supp. 158 (W.D. Pa. 1992)......................................................................................... 15

*Bosse v. Crowell Collier and Macmillan,*
 565 F.2d 602 (9th Cir. 1977) .................................................................................................. 11

*Bouldis v. U.S. Suzuki Motor Corp.,*
 711 F.2d 1319 (6th Cir. 1983)................................................................................................... 9

*Brinich v. Jencka,*
 757 A.2d 388 (Pa. Super. 2000)............................................................................................. 18

*Calderon v. United Furniture Co.,*
 505 F.2d 950 (5th Cir. 1974) .................................................................................................. 11

*Carrier v. Wm. Penn Broadcasting Co.,*
 426 Pa. 427, 233 A.2d 519 (1967).......................................................................................... 5

*Celotex Corp. v. Catrett,*
 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).............................................................. 3

*Chrysler Credit Corp. v. B.J.M.,*
 834 F. Supp. 813 (E.D. Pa. 1993) .............................................................................. 15, 16, 17

*Cole v. Ford Motor Co.*,
  566 F. Supp. 558 (W.D. Pa. 1983).............................................................................................. 9

*Creeger Brick and Building Supply Inc. v. Mid-State Bank & Trust Co.*,
  560 A.2d 151 (Pa. Super. 1989)............................................................................................... 15

*Crivelli v. General Motors Corp.*,
  215 F.3d 386 (3d Cir. 2000) .................................................................................................... 16

*Degenhardt v. Dillon Co.*,
  543 Pa. 146, 669 A.2d 946 (1996)............................................................................................. 5

*DiCesare-Engler Productions, Inc. v. Mainman, Ltd.*,
  81 F.R.D. 703 (W.D. Pa. 1979) .............................................................................................. 17

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
  66 F.3d 604 (3d Cir. 1995) ............................................................................................... 17, 18

*eToll, Inc. v. Elias/Savion Adver., Inc.*,
  811 A.2d 10 (Pa. Super. 2002)......................................................................................... 17, 18

*George A. Davis, Inc. v. Camp Trails Co.*,
  447 F. Supp. 1304 (E.D. Pa. 1978).......................................................................................... 17

*Gianacopoulos v. MOS Design, Inc.*,
  2008 U.S. Dist. LEXIS 31239 (M.D. Pa. Apr. 16, 2008)......................................................... 16

*Gibbs v. Titelman*,
  502 F.2d 1107 (3d Cir. 1974) ........................................................................................... 10, 11

*Glazer v. Chandler*,
  414 Pa. 304, 200 A.2d 416 (1964)........................................................................................... 17

*Harsco Corp. v. Zlotnicki*,
  779 F.2d 906 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171,
  106 S.Ct. 2895, 90 L.Ed.2d 982 (1986)...................................................................................... 5

*Houser v. Fox Theatres Mgmt Corp.*,
  845 F.2d 1225 (3d Cir. 1988) ................................................................................................. 14

*In re Elkins-Dell Manufacturing Co.*,
  253 F. Supp. 864 (E.D. Pa. 1966)............................................................................................. 8

*In re Ins. Brokerage Antitrust Litig.*,
  2009 U.S. App. LEXIS 20095 (3d Cir. Sept. 8, 2009) ............................................................. 13

*In Re: Estate of Kirk*,
  535 A.2d 669 (Pa. Super. 1988)................................................................................................ 6

*James v. Pinnix,*
   495 F.2d 206 (5th Cir. 1974) ................................................................................ 11

*Krajewski v. American Honda Finance Corp.,*
   557 F. Supp.2d 596 (E.D. Pa. 2008) ...................................................................... 18

*Lovett v. General Motors Corp.,*
   998 F.2d 575 (8th Cir. 1993) ................................................................................ 14

*Luria Bros. & Co., Inc. v. Allen,*
   672 F.2d 347 (3d Cir. 1982) ................................................................................. 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ..................................... 3, 14

*Monsanto Co. v. Spray-Rite Service Corp.,*
   456 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984) .......................................... 14

*Nowlin v. Professional Auto Sales, Inc.,*
   496 F.2d 16 (8th Cir. 1974) ................................................................................. 11

*Peoples Mortgage Co. v. Fed. Nat'l. Mortgage Ass'n,*
   856 F. Supp. 910 (E.D. Pa. 1994) ........................................................ 6, 8, 16, 18

*Rea v. Ford Motor Co.,*
   355 F. Supp. 842 (W.D. Pa. 1973), *aff'd in part, rev'd in part on other grounds,*
   497 F.2d 577 (3d Cir. 1974) ................................................................................. 9

*Reed v. SmithKline Beckman Corp.,*
   569 F. Supp. 672 (E.D. Pa. 1983) .......................................................................... 6

*Salley v. Option One Mortg. Corp.,*
   592 Pa. 323, 925 A.2d 115 (2007) ......................................................................... 7

*Scott v. Purcell,*
   490 Pa. 109, 415 A.2d 1030 (1983) ...................................................................... 12

*Shirley v. State Nat. Bank of Connecticut,*
   493 F.2d 739 (2d Cir. 1974) ................................................................................. 11

*Shonberger v. Oswell,*
   530 A.2d 112 (Pa. Super. 1987) ........................................................................... 17

*Smith v. Lechner,*
   205 A.2d 626 (Pa. Super. 1964) ............................................................................. 5

*Sparler v. Fireman's Ins. Co.,*
   521 A.2d 433 (Pa. Super. 1987) ............................................................................. 6

*Stanley A. Klopp, Inc. v. John Deere Co.,*
   510 F. Supp. 807 (E.D. Pa. 1981) ........................................................................... 7

*Strickland v. University of Scranton,*
   700 A.2d 979 (Pa. Super. 1997) ........................................................................ 6, 16

*Surya Sys. Inc. v. Sunku,*
   2005 U.S. Dist. LEXIS 12544 (E.D. Pa. June 24, 2005) ...................................... 15

*Three Rivers Motors Co. v. Ford Motor Co.,*
   522 F.2d 885 (3d Cir. 1975) ............................................................................. 6, 13

*Turner v. Impala Motors,*
   503 F.2d 607 (6th Cir. 1974) ................................................................................ 11

*U.S. v. Coleman,*
   628 F.2d 961 (6th Cir. 1980) ................................................................................ 11

*U.S. v. Swanson,*
   618 F. Supp. 1231 (E.D. Mich. 1985) .................................................................... 7

*Zimmer v. Coopernneff Advisors, Inc.,*
   523 F.3d 224 (3d Cir. 2008) ................................................................................... 7

**Other Authorities**

13 Pa. C.S.A. §9609 ................................................................................................. 11

15 U.S.C. §1 ............................................................................................................... 3

15 U.S.C. §1221 ................................................................................................... 3, 11

15 U.S.C. §13(e) .................................................................................................... 3, 9

3 Corbin, Contracts §559 ........................................................................................... 8

42 U.S.C. §1983 ........................................................................................... 3, 10, 11

63 P.S. §812.12 ............................................................................................. 3, 11, 12

Fed. R. Civ. P. 56(c) ............................................................................................. 1, 3

*Restatement (Second) of Agency* §1 (1958) ............................................................ 12

Defendant, GMAC, by and through its counsel, Lavin, O'Neil, Ricci, Cedrone & DiSipio, hereby submits this brief in support of its motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

## I.     Introduction and Procedural Background

In the automotive business, dealers often purchase vehicles from manufacturers with funds provided by a lender. The term used for this type of arrangement is known as "floor plan financing." GMAC, like any lender, protects itself by taking a security interest in a dealer's assets so that if vehicles are sold and the sale proceeds are not used to repay the loan, it may recoup its outlay by taking possession of the collateral. As GMAC representatives are typically not present at a dealer location during daily operations, GMAC must trust dealers to repay the loan on an individual vehicle when it is sold. When it is discovered that a dealer has sold vehicles for which payment has not been received, the trust relationship is breached and dealers are considered "out of trust." To ensure repayment of the debt owed in that situation, GMAC must rely on a dealer to correct the breach of trust by immediate repayment of amounts owed on the vehicles. Failing that, GMAC has the right to proceed to liquidate the collateral in the dealers' possession. In this matter, the rights and remedies afforded the parties are concisely set forth in the parties' agreements.

The genesis of this dispute is July 19, 2007. GMAC, who provided financing for Mente Chevrolet and Mente Chrysler ("collectively "the Dealers"), conducted a routine audit at Mente Chevrolet. GMAC discovered that it had not been paid for nineteen vehicles that had been sold. GMAC demanded immediate payment for the vehicles in accordance with the terms of its Wholesale Security Agreement with Mente Chevrolet. The arrearages were not satisfied.

Mente Chevrolet's default constituted a default by Mente Chrysler under the terms of a Cross Collateralization and Cross Default Agreement between the Dealers and GMAC.

1

Consequently, GMAC was contractually allowed to seek satisfaction of the entire debt owed it by both of the Dealers and to take immediate possession of their assets. GMAC invoked the assignment of the Dealers' open accounts with the vehicle manufacturers and demanded immediate repayment of all debts owed GMAC.

Acknowledging the debt they owed and GMAC's right to their assets, plaintiffs, through their attorney, requested an accommodation from GMAC, through its attorney. The result of counsel's negotiation was the parties' execution of a Forbearance Agreement on September 30, 2007. The agreement provides that in exchange for plaintiffs' release of its claims, GMAC would provide plaintiffs with $59,000.00 and refrain from further exercising its rights under the parties' agreements to take immediate possession of the dealers' vehicle inventory for a specified period.

GMAC provided $59,000.00 to plaintiffs and did not take possession of the Dealers' vehicles. At the expiration of the forbearance period, plaintiffs had not repaid their obligation. That obligation currently exceeds $1.5 million dollars and is now the subject of two separate actions initiated by GMAC in the Court of Common Pleas for Berks County, No. 08-4170 (Confession of Judgment) and No. 08-1760 (In Replevin). In response to GMAC's lawsuits, plaintiffs commenced a third action in the Berks County Court of Common Pleas, No. 08-5516. GMAC filed a Notice of Removal to this Court on May 22, 2008.

Count X of plaintiffs' First Amended Complaint seeks a ruling from the Court invalidating two agreements on the grounds of duress and unconscionability: the 2007 Chevrolet Security Agreement[1], a complement to the 1982 Chevrolet Wholesale Security Agreement

---

[1] Although Plaintiffs' First Amended Complaint refers to a document as either the "undated amendment" or the "undated March 2007 'amendment'" to Mente Chevrolet's financing agreement, the document is not attached to the pleading. GMAC assumes from plaintiffs' description that the referenced document is the 2007 Chevrolet Security Agreement attached hereto as Exhibit F.

already in place at the time, by which GMAC was granted a security interest in and collateral assignment of Mente Chevrolet's non-vehicle assets; and the Forbearance Agreement. Plaintiffs' First Amended Complaint Count IX; Exhibit A Forbearance Agreement; Exhibit F 2007 Chevrolet Security Agreement. The remaining counts assert various federal and state claims: Count I, violation of 15 U.S.C. §13(e), the Robinson-Patman Act; Count II, violation of 42 U.S.C. §1983; Count III, violation of the federal Automobile Dealer's Day in Court Act, 15 U.S.C. §1221; Count IV, violation of the Sherman Act, 15 U.S.C. §1; Count V, violation of the Pennsylvania Board of Vehicles Act, 63 P.S. §812.12; Count VI, tortuous [sic] interference with contractual relationships; Count VII, breach of contract; and Count VIII, conversion.

All of plaintiffs' claims have been extinguished by a valid and enforceable release. But the bar of the release is not the only impediment to the stated causes of action. The claims are legally and factually deficient as well. GMAC is therefore entitled to the entry of judgment in its favor as a matter of law.

## II.    Standard For Summary Judgment Pursuant To Fed. R. Civ. P. 56(c)

The entry of summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). While the burden is on the moving party to show that no genuine issue of material fact exists, viewing the facts and inferences therefrom in the light most favorable to the non-moving party, the non-moving party is not entitled to a trial simply on the basis of allegations or denials. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An adverse party must come forward with significant, probative evidence which demonstrates the existence of a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party who fails to make a showing

sufficient to establish the existence of an element essential to a party's cause of action and on which that party will bear the burden of proof at trial cannot proceed to trial. *Id.*

## III.    Argument

Plaintiffs' allegations can be somewhat imprecisely characterized with a maxim sometimes attributed to boxer Jack Dempsey, "The best defense is a good offense." The description is inapt in one respect. A good offense is supported by the law and facts. Plaintiffs' is neither. The claims asserted by plaintiffs represent a transparent attempt to avoid their financial obligations and a valid and enforceable settlement agreement.

Of paramount significance here is what is not disputed by plaintiffs. They do not contest the existence of their debt, the execution of the agreements that govern the parties' relationship or the unequivocal language contained in those agreements. The express provisions of the various security, credit, and guaranty agreements between the parties undeniably grant GMAC the right to be paid the entire debt owed them "upon demand" and to immediately proceed against plaintiffs' assets, selling them publicly or privately to recoup any outstanding amounts, if necessary. The unqualified and explicit language of the Forbearance Agreement releases any claims that plaintiffs could have brought and acknowledges plaintiffs' default of the parties' agreements, the debt owed GMAC, and plaintiffs' complete understanding of the agreement's terms. None of that is challenged by plaintiffs. Instead, plaintiffs dispute the enforceability of the contracts based upon meritless abstractions of duress and groundless theories of conspiracy. There is no evidence to support any of their allegations. Accordingly, there is no genuine issue of material fact and GMAC is entitled to the entry of judgment in its favor on all of plaintiffs' claims as a matter of law.

### A.     The Agreements Are Valid And Preclude Plaintiffs' Claims.

It is plaintiffs' contention that the 2007 Chevrolet Security and the Forbearance Agreement are unenforceable as they were executed by Donald Mente under duress. Specifically, plaintiffs allege that economic pressure compelled Donald Mente to execute both agreements. The fear of criminal prosecution is posited as an additional reason for nullifying the Forbearance Agreement. Offered in support of these assertions is nothing in the way of evidence sufficient to void the agreements.

"[I]n the absence of threats of actual bodily harm there can be no duress where the contracting party is free to consult with counsel . . . " *Carrier v. Wm. Penn Broadcasting Co.*, 426 Pa. 427, 431, 233 A.2d 519, 521 (1967)(quoting *Smith v. Lechner*, 205 A.2d 626 (Pa. Super. 1964)(citations omitted); *accord, Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 911 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). Economic duress is, therefore, simply not a valid defense to the execution of a contract when even the opportunity to consult with a lawyer is presented. *Degenhardt v. Dillon Co.*, 543 Pa. 146, 669 A.2d 946 (1996). Plaintiffs were free to consult counsel before signing the 2007 Chevrolet Security Agreement. They certainly consulted with one before executing the Forbearance Agreement. Plaintiffs' attorney not only reviewed the Forbearance Agreement with the plaintiffs before its execution but negotiated its terms with GMAC's counsel over a period of more than four weeks. Exhibit J Berks-Mente Dep. at 86:22-87:2, 88:9-11, 90:13-20, 91:19-25, 93:14-16, 94:3-5; *see also*, August 17, 2007 Letter of Joseph O'Keefe, Esquire, Exhibit I to Plaintiffs' First Amended Complaint.

Plaintiffs were also free to make other choices to solve their financial predicament. *See* Exhibit N GMAC Counsel Letter. Funds from other lending institutions, third parties, and Mr. Mente could have been pursued to satisfy the outstanding debt. The filing of a bankruptcy

petition was another possibility. If they sincerely believed that GMAC had wrongly demanded repayment of their outstanding obligations, still another option was the immediate commencement of a lawsuit seeking immediate relief via preliminary injunction or other legal remedies. Plaintiffs chose none of them, opting instead to request and execute the agreements they now seek to set aside.

Plaintiffs' spurious concern about criminal prosecution is similarly specious. The only threat of criminal prosecution came from their own lawyer. In an effort to orchestrate a release of some of GMAC's collateral, plaintiffs' counsel contacted the Pennsylvania Attorney General's office suggesting that plaintiffs may face prosecution for payments they had failed to make. *See* August 17, 2007 Letter of Joseph O'Keefe, Esquire, Exhibit I to Plaintiffs' First Amended Complaint. The Attorney General's office never charged any of the plaintiffs with a crime. If there was any pressure brought to bear, it was brought by plaintiffs to manipulate GMAC.

The release provisions of the Forbearance Agreement are governed by the same rules of construction as contracts generally. *In Re: Estate of Kirk*, 535 A.2d 669, 670 (Pa. Super. 1988); *Sparler v. Fireman's Ins. Co.*, 521 A.2d 433, 434 (Pa. Super. 1987). Pennsylvania courts have uniformly upheld the validity of releases against claims of duress when the signatories have had the opportunity to review the agreement with counsel before it is signed. *Bata v. Central-Penn National Bank of Phila*, 423 Pa. 373, 224 A.2d 174 (1966); *Adams v. Adams*, 848 A.2d 991 (Pa. Super. 2004); *Strickland v. University of Scranton*, 700 A.2d 979 (Pa. Super. 1997); *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885 (3d Cir. 1975); *Peoples Mortgage Co. v. Fed. Nat'l. Mortgage Ass'n*, 856 F. Supp. 910 (E.D. Pa. 1994); *Reed v. SmithKline Beckman Corp.*, 569 F. Supp. 672 (E.D. Pa. 1983). Furthermore, Donald Mente acknowledged his full

6

understanding of the agreement within the document itself and signed it in three places. Exhibit A Forbearance Agreement at 14-15, ¶30.

Beyond that, plaintiffs derived an immediate economic benefit from its execution. GMAC did not pursue its rights or remedies to collect the outstanding debt and paid plaintiffs $59,000.00 from its collateral so that plaintiffs' other creditors could be satisfied. GMAC held up its end of the bargain and now plaintiffs wish to welsh on theirs.

"Settlement agreements are designed to forestall not foster litigation, and while like any other contract, there are circumstances under which they may be avoided, these circumstances do not include thinly veiled averments of fraud and duress, whose purpose is to conceal disappointment with the settlement." *Bata v. Central-Penn National Bank of Phila.*, 423 Pa. at 386, 224 A.2d at 183 (citations omitted). Plaintiffs' averments of duress are clearly of this baseless sort, intended to thwart a genuine settlement of claims and the satisfaction of GMAC's legitimate debts.

Analytically similar to duress is the concept of unconscionability. Whether a contract is unconscionable is a question of law for the court. *Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 925 A.2d 115 (2007); *Beckman v. Vassall-Dillworth Lincoln-Mercury, In*c., 468 A.2d 784 (Pa. Super. 1983); *1600 Penn Corp. v. Computer Sciences Co.*, 2008 U.S. Dist. LEXIS 76764 (E.D. Pa. Sept. 30, 2008); *U.S. v. Swanson*, 618 F. Supp. 1231 (E.D. Mich. 1985); *Stanley A. Klopp, Inc. v. John Deere Co.*, 510 F. Supp. 807 (E.D. Pa. 1981). A contract is unconscionable only where there was a lack of meaningful choice in the acceptance of a challenged provision and the provision unreasonably favors the party asserting it. *Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 925 A.2d 115 (2007); *Zimmer v. Cooperneff Advisors, Inc.*, 523 F.3d 224 (3d Cir. 2008). The lack of meaningful choice in accepting an agreement has been described as

7

procedural unconscionability. *Id.* The question of whether the contract is unreasonably favorable to the drafter has been termed substantive unconscionability. *Id.* Plaintiffs have the burden of proving both of those elements. *Id.*

In *Peoples Mortgage Co. v. Fed. Nat'l. Mortgage Ass'n*, 856 F. Supp. 910, 927 (E.D. Pa. 1994), Judge Giles explained the two circumstances in which a plaintiff may be found to have had "an absence of meaningful choice," by quoting from *In re Elkins-Dell Manufacturing Co.*, 253 F. Supp. 864, 871 (E.D. Pa. 1966)(citing 3 Corbin, Contracts §559, at 270-71 (1960)):

> One variety of unconscionable contract is very much like contracts of adhesion . . . It usually involves a party whose circumstances, perhaps his unworldliness or ignorance, when compared with the circumstances of the other party, make his knowing assent to the fine-print terms fictional. . . . Another species concerns what is basically economic duress. In the absence of a general mandate to review the adequacy of consideration, there has sometimes been a review of the economic positions of the parties and a finding that the position of one was so vulnerable as to make him the victim of a grossly unequal bargain.

Neither category applies to Donald Mente who has served as president of both dealers for many years. Mr. Mente is a sophisticated business man who "grew up in the car business." Exhibit J Berks-Mente Dep. 22:2-6. He has more than 45 years of experience working at the Dealers and has seen hundreds of deals involving financing. Exhibit J Berks-Mente Dep. 29:22-30:19. He is, and was at the time of the signing of the 2007 Chevrolet Security Agreement and the Forbearance Agreement, decidedly well-educated in the ways of automotive financing.

Neither were the agreements pre-printed forms with fine print terms. The 2007 Chevrolet Security Agreement is a simple document with clearly articulated terms – terms substantially similar to the terms of the 1982 Chevrolet Wholesale Agreement under which Mente Chevrolet had operated for years. The Forbearance Agreement was a negotiated instrument prepared by lawyers, including plaintiffs,' after a full discussion of feasible alternatives. Those alternatives negate plaintiffs' claim of economic distress. The consideration received by plaintiffs for the

documents' execution, likewise, invalidates any argument that the agreements unreasonably favored GMAC.

Plaintiffs' allegations of unconscionability are as unsubstantiated as their claims of duress. Having already gained the advantages of the contracts, plaintiffs cannot now renege on the bargain made and in the process defeat the benefit promised to GMAC. The Forbearance Agreement bars all of plaintiffs' claims. As no genuine issue of material fact exists, GMAC is entitled to the entry of judgment in its favor as a matter of law on all of plaintiffs' claims.

### B.    Plaintiffs have no claim under Section 2(e) of the Robinson-Patman Act, 15 U.S.C. §13(e) (Count I).

The release provisions of the Forbearance Agreement apply to extinguish all of the causes of action stated by plaintiffs, including those asserted under the Robinson-Patman Act. The provisions of the Act itself also defeat plaintiffs' claims. Proscribed by §2(e) of the Robinson-Patman Act is discrimination by a seller of a commodity:

> It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale or such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

GMAC is a financing company that provides credit services. Credit services and financing are not commodities within the purview of section 2(e). *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983); *Blount Financial Services, Inc. v. Heller & Co.*, 632 F. Supp. 240 (E.D. Tenn. 1986), *aff'd,* 819 F.2d 151 (6th Cir. 1987); *Cole v. Ford Motor Co.*, 566 F. Supp. 558, 567 (W.D. Pa. 1983); *Rea v. Ford Motor Co.*, 355 F. Supp. 842, 851 (W.D. Pa. 1973), *aff'd in part, rev'd in part on other grounds,* 497 F.2d 577 (3d Cir. 1974). Thus, plaintiffs have no cause of action against GMAC on that basis.

The paucity of evidence of discrimination by GMAC is another reason. Plaintiffs have adduced no evidence, and none exists, that GMAC was discriminatory in its lending. The evidence establishes only that GMAC did what it was contractually permitted to do in seeking to recover for a debt that it was owed.

Neither have plaintiffs provided an explanation, or evidence in support, for their theory of an alleged conspiracy with General Motors and Chrysler that would trigger §2(e). Content to cast innuendo as fact, plaintiffs rely on insinuations of conspiracies. Idle speculation does not create a genuine issue of material fact necessitating a jury's determination.

### C.    Plaintiffs have no claim under 42 U.S.C. §1983 (Count II).

It is also plaintiffs' contention that GMAC violated 42 U.S.C. §1983 by entering the Dealers' showrooms to seize assets under the "pretext" that the Dealers were "out of trust." Plaintiffs' First Amended Complaint ¶¶ 139-140. It is an interesting argument given plaintiffs' contrary admissions in the Forbearance Agreement that they were "out of trust" and in default of the parties' agreements and in light of Donald Mente's concession that GMAC was not paid in full for the "out of trust" vehicles. Exhibit A Forbearance Agreement at 2¶¶F; Berks Mente Dep. 41:6-9. Nonetheless, prerequisites for recovery under 42 U.S.C. §1983 are proof of action fairly attributable to the state and that the challenged action deprived the plaintiff of his civil rights. *Gibbs v. Titelman*, 502 F.2d 1107 (3d Cir. 1974). Plaintiffs have proof of neither.

GMAC employed self-help in gaining control of its collateral from the Dealers without state action. It invoked assignment of the Dealers' open accounts and took control of the vehicles' keys and certificates of origin, as was its right under the parties' agreements, without breaching the peace and without the assistance of state officials. It did not shut down the dealerships or lock the doors to the showrooms. Exhibit J Berks-Mente Dep. at 52:3-1. Its actions are sanctioned under Pennsylvania law. The rights of a secured creditor upon default of

an obligor are addressed in 13 Pa. C.S.A. §9609. A secured party may take possession of the

collateral "without judicial process if it proceeds without breach of the peace." 13 Pa. C.S.A.

§9609(b)(2). GMAC followed that mandate in enforcing its contractual rights. There was no

state action then or later when GMAC repossessed the vehicles without objection from Donald

Mente and with his assistance. Exhibit J Berks-Mente Dep. at 140:21-24, 141:12-142:16.

Self help repossession of an automobile by a secured creditor upon default of the debtor,

without the involvement of state officials, is not 'state action' for purposes of 42 U.S.C. §1983.

*Luria Bros. & Co., Inc. v. Allen*, 672 F.2d 347 (3d Cir. 1982); *Gibbs v. Titelman*, 502 F.2d 1107

(3d Cir. 1974); *U.S. v. Coleman*, 628 F.2d 961 (6th Cir. 1980); *Bosse v. Crowell Collier and*

*Macmillan*, 565 F.2d 602 (9th Cir. 1977); *Calderon v. United Furniture Co.*, 505 F.2d 950 (5th

Cir. 1974); *Turner v. Impala Motors*, 503 F.2d 607 (6th Cir. 1974); *Nowlin v. Professional Auto*

*Sales, Inc.*, 496 F.2d 16 (8th Cir. 1974); *James v. Pinnix*, 495 F.2d 206 (5th Cir. 1974); *Shirley v.*

*State Nat. Bank of Connecticut*, 493 F.2d 739 (2d Cir. 1974); *Adams v. Southern California First*

*Nat. Bank*, 492 F.2d 324 (9th Cir. 1973). That is what occurred in this case. Consequently,

plaintiffs' §1983 claim is precluded not only by the Forbearance Agreement, but also by

plaintiffs' failure to meet their burden of proof.

**D.    Plaintiffs have no claims under the Automobile Dealer's Day in Court Act, 15 U.S.C. §1221 *et seq.* or the Pennsylvania Board of Vehicles Act, 63 P.S. §818.12 (Counts III and V).**

A cause of action under the federal Automobile Dealer's Day in Court Act, set forth at 15

U.S.C. §1221 *et seq.*, and pursuant to the Pennsylvania Board of Vehicles Act, 63 P.S. §818.12,

may be stated by a Pennsylvania vehicle dealer against a vehicle manufacturer with whom it has

a franchise agreement. A vehicle financing company, such as GMAC, is not a party to a

franchise agreement with a dealer and does not fall within either act's definition of

"manufacturer." 15 U.S.C. §1221(a); 63 P.S. §818.12.2. In fact, the Board of Vehicles Act

11

reinforces that idea in the very section that plaintiffs claim GMAC has violated, §818.12(b)(14). It states, "This paragraph shall not limit the right of a financing entity to engage in business practices in accordance with the trade of retail or wholesale vehicle financing." In apparent recognition of the inapplicability of the statutes to GMAC, plaintiffs accuse GMAC of acting as agents of General Motors and Chrysler and of conspiring with them to close the Dealers by terminating their financing. The problem with that approach is that there is no evidence to support it.

To establish agency in Pennsylvania, proof of three elements is essential: (1) a manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking. *Scott v. Purcell*, 490 Pa. 109, 117, 415 A.2d 1030, 1033 (1983) (quoting the *Restatement (Second) of Agency* §1, Comment b (1958). There is no evidence to satisfy even one of the three elements. Plaintiffs' allegations are long on hypotheses, but short on facts.

Cerberus has owned 51% of GMAC, a fact acknowledged in plaintiffs' complaint, since November 20, 2006. Plaintiffs' First Amended Complaint ¶27; GMAC's Answer ¶27. There is no evidence that GMAC, acting on General Motors' or Chrysler's behalf, took any steps to foreclose on dealers, much less Mente Chevrolet and Mente Chrysler, in an effort to drive them out of business. The only evidence of record is that plaintiffs owed GMAC a massive debt in excess of $7 million and that GMAC exercised its rights to recover the debt utilizing the remedies afforded by the parties' contracts. Consequently, plaintiffs' inability to factually support their claims along with plaintiffs' release of them in the Forbearance Agreement requires the entry of judgment in GMAC's favor as a matter of law.

12

**E.    Plaintiffs have no claim under the Sherman Act, 15 U.S.C. §1 (Count IV).**

Undaunted by their release of all of their claims or by the lack of corroboration for their allegations of conspiracy, plaintiffs have asserted a claim under the Sherman Act. *Three Rivers Motor Co. v. Ford Motor Co., supra.* (holding that release bars antitrust claims). They cannot prevail.    To establish a violation of §1 of the Sherman Act, plaintiffs must prove: (1) a conspiracy among GMAC, Chrysler, and General Motors Corporation; (2) that caused anti-competitive effects constituting an unreasonable restraint on trade; (3) within the relevant product and geographic markets. *In re Ins. Brokerage Antitrust Litig.*, 2009 U.S. App. LEXIS 20095 (3d Cir. Sept. 8, 2009). To accomplish that, there must be evidence. There is none.

Only speculation supports plaintiffs' multi-faceted theory of a conspiracy alleged to involve (1) concerted action between General Motors, Chrysler, and GMAC; (2) aimed at the illegitimate reduction of dealers; (3) to deprive them of "financial assistance;" (4) due them from General Motors and Chrysler. In their story, there is no room for the facts as they really exist. The fact that GMAC had extended more than $7 million dollars in credit to finance plaintiffs' operations, including a $500,000.00 revolving line of credit to support their cash flow needs. The fact that plaintiffs, when asked, could not pay even a small fraction of that for vehicles that had already been sold and had drawn on all of the funding available under the revolving line of credit without any sort of repayment. The fact that plaintiffs did not pay their debt despite GMAC's cooperation in implementing an agreement granting them an additional ninety days for repayment and $59,000.00 with which to pay other creditors.    The fact that the parties' agreements granted GMAC a security interest in all of their assets and the right to liquidate those assets to satisfy the debt owed. The fact that GMAC is still owed more than $1.5 million.

An antitrust conspiracy cannot be inferred from supposition, innuendo, or highly ambiguous evidence that does not tend to prove the existence of an antitrust conspiracy or an

13

unreasonable restraint on trade. *Monsanto Co. v. Spray-Rite Service Corp.*, 456 U.S. 752, 104

S.Ct. 1464, 79 L.Ed.2d 775 (1984); *Houser v. Fox Theatres Mgmt Corp.*, 845 F.2d 1225 (3d Cir.

1988).    That is because "[c]onduct that is as consistent with permissible as with illegal

conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Lovett v.*

*General Motors Corp.*, 998 F.2d 575 (8th Cir. 1993)(citing *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 588 (1986).    A plaintiff must present evidence excluding the

possibility that the alleged co-conspirator took the challenged action independently. *Lovett*, 998

F2d at 578-79.    Evidence that does not negate the possibility of independent action does not

reasonably tend to prove a conscious commitment to a common scheme designed to achieve an

illegal objective. *Id.*

In *Lovett*, a dealer sued General Motors Corporation alleging that it had participated in an

illegal scheme with other dealers in violation of the Sherman Act.    Following trial, a jury found

that General Motors had participated in a conspiracy against the dealer and awarded damages.

The district court then denied General Motors' motion for judgment as a matter of law.    The

Eighth Circuit reversed holding that the evidence was as consistent with independent action as it

was with conspiracy and, therefore, did not support the jury's verdict.    The Court warned against

allowing dubious claims of conspiracy to go forward stating, "We believe the jury's finding of a

conspiracy in this case shows why cases arising under section 1 of the Sherman Act and based on

highly ambiguous evidence should not be submitted to a jury." *Lovett*, 998 F.2d at 581.

It is the same with this case.    Having proffered only uncorroborated conjecture in support

of their claim, plaintiffs cannot proceed to trial.

14

**F.    The plaintiffs have no claim for tortious interference with contractual relations or breach of contract (Counts VI and VII).**

As with the other causes of action alleged in plaintiffs' complaint, plaintiffs have no substantive basis for their claims of tortious interference with contractual relations or breach of contract. Plaintiffs articulate their breach of contract claim with cryptic, generic assertions about an alleged failure to act in good faith and no reference to any particular contract or term. The evidence establishes that the various breaches of the contracts at issue in this case are attributable to plaintiffs alone. GMAC not only abided by the terms of the agreements but sought to assist plaintiffs at its own financial peril, by providing funds from its collateral and agreeing to delay enforcement of its contractual rights.

Under Pennsylvania law, there is no implied contractual duty of good faith in the relationship between debtor and creditor which modifies or defeats the legal rights of a creditor. *Creeger Brick and Building Supply Inc. v. Mid-State Bank & Trust Co.*, 560 A.2d 151 (Pa. Super. 1989). "[A] lending institution does not violate a separate duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights as a creditor." *Chrysler Credit Corp. v. B.J.M.*, 834 F. Supp. 813, 842 (E.D. Pa. 1993)(quoting *Bohm v. Commerce Union Bank of Tennessee*, 794 F. Supp. 158, 163 (W.D. Pa. 1992). Nor can adherence to a contract ever be considered a breach of contract.

To prevail on a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Surya Sys. Inc. v. Sunku*, 2005 U.S. Dist. LEXIS 12544 (E.D. Pa. June 24, 2005). There has been no showing of a breach by GMAC or damages caused as a result. On the contrary, all of the evidence demonstrates that the opposite is true. Plaintiffs were "out of trust." They did not pay for the cars they sold upon demand. GMAC properly enforced its rights to

15

secure its collateral and repayment of the entire debt owed. There was no breach, no damages, and, consequently, plaintiffs have no claim.

A claim for intentional interference with a contract requires proof of an intent on the part of the defendant to harm the plaintiff by interfering with a contractual relationship, the absence of privilege or justification for the interference, and damages. *Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000)(citing *Strickland v. University of Scranton, supra.*); *Gianacopoulos v. MOS Design, Inc.*, 2008 U.S. Dist. LEXIS 31239 (M.D. Pa. Apr. 16, 2008); *Chrysler Credit Corp. v. B.J.M.*, 834 F. Supp. at 843; *Peoples Mortgage Co. v. Fed. Nat'l. Mortgage Ass'n*, 856 F. Supp. 910, 930 (E.D. Pa. 1994). Plaintiffs cannot satisfy any of those elements.

Even accepting plaintiffs' argument that GMAC interfered with its contracts with General Motors and Chrysler, and GMAC does not, lacking is any evidence that GMAC intended to harm plaintiffs. GMAC's only motivation in exercising its rights was to get paid. Similarly absent is factual support for the proposition that GMAC was without justification in its attempts to collect funds owed by plaintiffs. The contracts unqualifiedly permit GMAC to act as it did in taking possession of its collateral and liquidating it to offset the amount of plaintiffs' debt. Plaintiffs have failed as well in evincing evidence that plaintiffs' have suffered damages caused by GMAC. The converse is true. GMAC is owed a debt that plaintiffs have yet to pay.

Plaintiffs cannot prevail on their claim for another reason. It is barred by the "gist of the action" and "economic loss" doctrine. Intentional interference with a contractual relation is a tort. Tort claims that arise solely from a contract between the parties or when the breach alleged is grounded in the contract itself are duplicative of claims for breach of contract and are precluded by the "gist of the action" doctrine. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d

16

10 (Pa. Super. 2002); *Chrysler Credit Corp. v. B.J.M.*, 834 F. Supp. at 843. When an alleged breach of contract has an incidental affect on a party's business relationship with another business entity, an action for breach of contract may lie, but not one in tort. *Chrysler Credit Corp. v. B.J.M.*, 834 F. Supp. at 843; *DiCesare-Engler Productions, Inc. v. Mainman, Ltd.*, 81 F.R.D. 703, 710 (W.D. Pa. 1979) citing *George A. Davis, Inc. v. Camp Trails Co.*, 447 F. Supp. 1304, 1310 (E.D. Pa. 1978); *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416, 418 (1964). This action arises from the contracts between the parties. Any recoverable consequential damages would stem from an interpretation of those agreements, foreclosing the possibility of action in tort.

Under Pennsylvania's economic loss doctrine, a plaintiff cannot recover in tort for economic losses that flow from a contract. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). Plaintiffs' allege that their unsubstantiated damages emanate from the contracts at issue. Any recovery must be considered strictly as part of a breach of contract claim.

There is no genuine issue of material fact with respect to plaintiffs' claims for tortious interference with contractual relations or breach of contract. GMAC is therefore entitled to the entry of judgment in its favor as a matter of law.

### G.    Plaintiffs have no claim for conversion (Count VIII).

Plaintiffs' final claim is also illusory. It is they who are guilty of conversion, not GMAC. "Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. 1987). The property GMAC took possession of was its own collateral, its interest in it established by the parties' agreements. The agreements also gave GMAC lawful justification for obtaining the collateral, a fact which additionally precludes a claim for

conversion. *Brinich v. Jencka*, 757 A.2d 388 (Pa. Super. 2000). A debtor cannot maintain an action for conversion against a secured creditor who has properly repossessed collateral to recoup a debt owed. A secured creditor, on the other hand, may proceed against a debtor for conversion of collateral if the collateral is sold without repayment of the creditor's loan. This dispute began with Mente Chevrolet's conversion of GMAC's collateral. Plaintiffs' vain attempt to turn the tables is without merit.

Plaintiffs' conversion claim is also barred by the "gist of the action" and "economic loss" doctrines. As discussed above, the "gist of the action" doctrine precludes tort claims, such as conversion, for damages arising out of an alleged breach of contract. *eToll, Inc. v. Elias/Savion Adver., Inc., supra*; *Krajewski v. American Honda Finance Corp.*, 557 F. Supp.2d 596, 607 (E.D. Pa. 2008); *Peoples Mortgage Co. v. Fed. Nat'l. Mortgage Ass'n*, 856 F. Supp. at 929. It is plaintiffs' postulation that GMAC is liable for conversion because it was not entitled to the collateral it obtained from the Dealers under the terms of the parties' agreements. The right to the collateral is dictated by the contracts. Thus, plaintiffs' claim for conversion depends upon construction of the contract terms and is barred by the gist of the action doctrine.

Additionally, plaintiffs' alleged losses are strictly economic in nature. Plaintiffs also allege that their damages flow from the parties' contracts, though there is no evidence to support such an assertion. As a consequence, the "economic loss" doctrine prohibits consideration of them in a tort action. *Duquesne Light Co. v. Westinghouse Elec. Corp., supra.*

There is no genuine issue of material fact as to plaintiffs' cause of action for conversion. GMAC is entitled to the entry of judgment in its favor as a matter of law.

## IV.    Conclusion

Plaintiffs' claims have been extinguished by the release provisions of the Forbearance Agreement and are otherwise legally insufficient.    There is, therefore, no genuine issue of material fact as to any of plaintiffs' causes of action.  GMAC is entitled to the entry of judgment in its favor as a matter of law.

Respectfully submitted,

LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

By:___s/Mary Grace Maley_____
Mary Grace Maley, Esquire (PA 37610)
mmaley@lavin-law.com
Lorraine M. McGlynn, Esquire (PA 38974)
lmcglynn@lavin-law.com
Kim N. Nguyen, Esquire (PA 93568)
knguyen@lavin-law.com
190 North Independence Mall West
Suite 500, 6th & Race Streets
Philadelphia, PA   19106
Phone:  (215) 627-0303
Fax:  (215) 627-2551
Attorney for Defendant, GMAC

19

## CERTIFICATE OF SERVICE

I, Mary Grace Maley, Esquire, hereby certify that on September 28, 2009 the Motion for

Summary Judgment of GMAC and Brief in Support were filed electronically and are available

for viewing and downloading from the ECF system. A true and correct copy of the Motion and

Brief were forwarded to counsel identified below in the manner indicated.

**Via ECF**
Joseph A. O'Keefe, Esquire
O'Keefe & Sher, P.C.
15019 Kutztown Road
Kutztown, PA  19530
jokade@aol.com

**Via E-Mail**
Kenneth A. Jacobsen, Esquire
Jacobsen Law Offices LLC
12 Orchard Lane
Wallingford, PA  19086
jacobsenlaw@aol.com

LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

By:___s/Mary Grace Maley_____
Mary Grace Maley, Esquire (PA 37610)
mmaley@lavin-law.com
190 North Independence Mall West
Suite 500, 6th & Race Streets
Philadelphia, PA  19106
Phone:  (215) 627-0303
Fax:  (215) 627-2551
Attorneys for Defendant, GMAC