IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MENTE CHEVROLET OLDSMOBILE, INC<br>F/K/A MENTE CHEVROLET, INC. t/a<br>MENTE CHEVROLET | : <br> : <br> : <br> : | **CIVIL ACTION** |
| **and** | : <br> : | **NO. 08-cv-2403** |
| MENTE CHRYSLER DODGE, INC. | : <br> : | |
| **and** | : <br> : | |
| DONALD M. MENTE,<br>         *Plaintiffs,*<br>v. | : <br> : <br> : <br> : | |
| GMAC,<br>         *Defendant* | : <br> : <br> : <br> : <br> : | |

## PLAINTIFFS' PRETRIAL MEMORANDUM

### 1)    NATURE OF THE ACTION

Plaintiffs filed suit against GMAC initially in the Berks County Court of Common Pleas. On May 22, 2008, GMAC removed this matter to this Court. On January 23, 2009, Plaintiffs filed a First Amended Complaint (the "Complaint") with the Court seeking relief under the Robinson-Patman Act, 15 U.S.C. § 13(e); 42 U.S.C. § 1983; violation of the Federal Automobile Dealer's Day in Court Act ("FDDCA") 15 U.S.C.A. § 1221; , the Sherman Act, 15 U.S.C. § 1; Pennsylvania's Automobile Dealer's Day in Court Act ("PDDCA") 63 P.S. §818.12; tortious interference with contractual relationships; breach of contract and conversion.[1] In an Order dated April 15, 2009,[2] this Court upheld plaintiffs' Complaint in its entirety, denying defendant GMAC's motion to

---

[1] Plaintiffs are not proceeding to trial with their claims under the Robinson-Patman Act or the Sherman Act.

[2] Document # 29.

dismiss under Rule 12(b)(6). There have been two scheduling Orders, the first on June 15, 2009[3] and the second on August 21, 2009[4] On October 22, 2009, GMAC again sought to modify the Court's Scheduling Order.[5] On October 23, 2009, the Court denied GMAC's request.[6] Also on October 23, 2009, the Court Denied Plaintiffs' Motion for Partial Summary Judgment and Declaratory Judgment and Defendant GMAC's Motion for Summary Judgment.[7]

This Court possesses primary jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this Court has original jurisdiction of all civil actions arising under the laws of the United States (e.g., 42 U.S.C. § 1983) and this Court has supplemental jurisdiction over plaintiffs' pendent state law claims herein pursuant to 28 U.S.C. § 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because plaintiffs' and GMAC's places of business are located in this District and a substantial part of the events giving rise to plaintiffs' claims occurred in this District.

## 2)    STATEMENT OF FACTS[8]

### Core Issues Before The Court

Plaintiffs allege that on July 19, 2007, without prior notice, and knowing that plaintiffs' controller (who handled all financial matters for the plaintiff Mente automobile dealerships) was away on vacation, a team of auditors from defendant GMAC descended on the Mente dealerships, fabricated allegations of violations of financing arrangements with GMAC, seized Mente's assets, and shut Mente down, rendering 70 employees unemployed and shuttering the decades old family-owned and operated business forever. (See Complaint ¶¶ 18, 21, 23, 30, 31, 50-67, 81, 87, 91, 94 and 99).

---

[3] Document # 33.

[4] Document # 44

[5] Document # 87

[6] Document # 89

[7] Document ## 59 and 60.

[8] Plaintiffs incorporate herein Plaintiffs' Statement of Uncontested Facts which is Exhibit No. 2 to the Declaration of Kenneth A. Jacobsen and all exhibits thereto, the Expert Reports of Carl Woodward CPA, and Joseph Roesner, MBA, CMA, and the Supplemental Declaration of Kenneth A. Jacobsen and all exhibits thereto. See Document ## 59 and 71.

GMAC's entire justification for its actions on July 19th is constructed on the foundation of *the* core disputed factual issue in this case: whether Mente was "out of trust" when GMAC descended upon the Mente dealerships on that day and seized all of Mente's vehicles, keys, titles, accounts and other property, thereby undermining Mente's franchise agreements with General Motors Corporation ("GM") and DaimlerChrysler Motors Company ("Chrysler").

The record is clear that the only "default" ever declared by GMAC on July 19, 2007 or at any time thereafter was Mente's alleged failure to "promptly" pay GMAC for "certain" motor vehicles sold by Mente which were financed by GMAC. GMAC has repeatedly stated that it "discovered" this alleged "out of trust" situation during its July 19, 2007 audit. Mente has consistently and vigorously denied any alleged "out of trust" situation on July 19, 2007, and intends to present compelling evidence which overwhelmingly rebuts GMAC's contention and further demonstrates that GMAC's unannounced siege of the dealerships was a premeditated subterfuge to close those businesses down. That evidence includes not only Mr. Mente's own sworn testimony and that of his controller Johnson, and written communications sent by Mente (through his attorney) to GMAC after GMAC's occupation of the dealerships in July 2007, but also testimony of GMAC employees at the relevant time and the expert reports of Carl Woodward, CPA, who reviewed Mente's records and concludes unequivocally that Mente Chevrolet was not "out of trust" on July 19, 2007. Plaintiffs' expert Joseph Roesner, MBA, CMA ("Roesner") similarly reviewed Mente's records and concludes that on July 19, 2007, no situation existed that had not existed historically for years at Mente.

GMAC's affirmative defenses rest largely on a Forbearance Agreement executed approximately 3 months after GMAC entered the Mente dealerships and shut them down. Mente contends the Forbearance Agreement is unenforceable due to: 1) duress, 2) lack of consideration, 3) fraud, 4) the inability to waive future claims, and 5) the doctrine of "unclean hands."

**Duress**

Plaintiffs assert that the Forbearance Agreement is the product of duress for the following reasons:

* GMAC seized all proceeds when it entered the dealerships on July 19, 2007, including monies that were owed to unrelated third parties for such products as service contracts and for state sales tax, license, and registration fees.

* Because plaintiffs (and Donald Mente and Donna Johnson individually) were subject to criminal prosecution for failure to remit these monies (*see, e.g.,* 18 Pa.C.S.A. §§ 3927, 3921, 4113;*see also, Commonwealth v. Coley,* CR-0000340-09 (Chester Co. Ct. Common Pleas), Mente's attorney took the extraordinary step of a self-reporting that seizure of funds to the Pennsylvania Attorney General's Office .

* Upon receipt of Mente's self-reporting, the Attorney General's Office instituted proceedings (*Commonwealth v. Mente Chevrolet Oldsmobile, Inc., Mente Chrysler Dodge, Inc. and Mente Chrysler Dodge Jeep, Inc.*), subpoenaing records from Mente and notifying both Mente and GMAC that the Attorney General's Office would pursue whatever actions it deemed necessary to protect affected consumers.

* GMAC offered to release some of the funds seized from Mente (Donna Johnson having cashed in life insurance policies to pay a portion of the monies owed) only if the Forbearance Agreement was signed.

* The Forbearance Agreement was presented on a "take or leave" basis.

* Both Donald Mente and Donna Johnson have steadfastly maintained that the only reason they signed the Agreement was because of the real and substantial threat of criminal prosecution if the third party monies were not properly and timely remitted as required by law.

GMAC, however, claims that the only "duress" was caused by Mente's attorney for self-reporting this confiscation of third party monies to the Attorney General's Office ,and that the Forbearance Agreement is the product of months of negotiations that involved legal counsel.

**Lack of Consideration for the Forbearance Agreement**

Significantly, the Forbearance Agreement here was signed on September 30, 2007—three months *after* GMAC already had acted against the Mente's dealerships. Mente contends that, as with GMAC's so-called right to "self help" in the first place, the validity of that agreement must be tested against whether there was any "default" at all. If

there was no default on July 19, 2007, then the Forbearance Agreement must fail as a matter of fact and law, since the existence *vel non* of a "default" is the core disputed factual issue in this case that impacts everything else.

In this regard, Mente contends that there can be no consideration for the Forbearance Agreement if all GMAC did was return to Mente funds owed to third parties that GMAC had no right to seize in the first place. Nor can there be any "forbearance" on GMAC's alleged "right" to "repossess" the vehicles (which already had occurred in any event on July 19th by seizing their keys, titles and MCOs) if there was no "default" and no right to repossession at all. So the validity and enforceability of the Forbearance Agreement, like GMAC's alleged rights under its security agreements and the UCC, depend entirely on whether a "default" had occurred—the ultimate factual issue in this case. No "default"? No right to "self help" and certainly no right to compel Mente to accept "forbearance" of anything.

GMAC contends the Forbearance Agreement is a "settlement agreement." Mente contends that the Forbearance Agreement "settled" nothing. All it did was return to Mente its own money (actually, not Mente's, but funds owed to third parties, including the Commonwealth) to keep the principals of Mente out of jail. To the extent that the Agreement purported to confer additional "rights" on GMAC, it is Mente's position that those alleged "rights" are invalid and unenforceable.

### No "Free" and "Voluntary" Waiver of Plaintiffs' Rights

As the UCC (GMAC's own source of authority for its *ex parte* seizure) makes clear, post-default waivers of a debtor's rights are particularly disfavored under the law:

> "[I]n the context of rights and duties after default, our legal system traditionally has looked with suspicion on agreements that limit the debtor's rights and free the secured party of its duties."

Comment 2 to 13 Pa.C.S.A. § 9602. Continuing, the Comment states:

> "The context of default offers greater opportunity for overreaching. The suspicious attitude of the courts have been grounded in common sense."

*Id.* Due to this well-grounded "suspicion" of creditors with superior bargaining power and leverage after they have unilaterally declared a debtor in default and put the debtor in

a financial stranglehold (as GMAC did to Mente here), the UCC expressly prohibits the waiver of many of a debtor's rights under the UCC. *See* 13 Pa.C.S.A. §§ 9602, 9624. Addressing specifically "post-default" waivers, the Comments state that any agreement embodying any such waivers must memorialize "the bargain of the parties in fact," and must be "carefully scrutinized" by the courts. *Id.*, Comment 5. Post-default waivers, like the ones purportedly contained in the Forbearance Agreement here, also are suspect if they are included in agreements which "address many additional or unrelated matters." *Id.*

Mente contends that GMAC's Forbearance Agreement, presented to Mente on a "take it or leave it basis" without any opportunity for revision or modification, fails under the UCC. The purported waivers and releases of Mente's rights are interspersed among 32 paragraphs, spread over 14 pages that "address many additional or unrelated matters." The confession of judgment provisions alone, the first time that *any* such provision appeared in *any* agreement with Mente, are nine pages deep into the Forbearance Agreement and violate the strict and prominent disclosure requirements under law.

Mente specifically contends that it is oppressive and coercive circumstances surrounding the execution of the Forbearance Agreement which, in particular, render it invalid and unenforceable as a legitimate waiver and release of their rights. Mente's contention is that presentment of an Agreement to a party on a "take it or leave it basis" under a threat of criminal prosecution before GMAC would release funds that were not GMAC's to seize in the first place, doom both its validity and enforceability because a release of claims or waiver of rights like the ones here must be "freely," "intelligently" and "voluntarily" made. A wrongful act or threat which prevented a party from exercising his free will and judgment constitutes duress sufficient to void a waiver of rights or a release of that party's claims in a contract. In assessing the "totality of the circumstances" surrounding the execution of a release and waiver to determine if they were "free from duress," the courts look to a variety of factors, most of which are fact-sensitive

GMAC argues that economic pressure alone is insufficient to establish a claim of duress that would void an otherwise valid release and waiver.

## Mente's Claim of Fraud in Inducement

Pennsylvania law is clear: a contract is voidable for fraudulent inducement where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud. Fraud consists of "anything calculated to deceive," and is proven by showing that a false statement which is material to a contract was made "knowingly, in conscious ignorance of the truth, or recklessly without caring whether it be true or false."

Here, GMAC knew that Mente was not "out of trust" on July 19th when it unilaterally seized the dealerships and confiscated their assets. And GMAC similarly knew on September 30, 2007 when it pressed the Forbearance Agreement on Mente, that Mente was never "out of trust" on July 19th. Having created the situation—unilaterally, unlawfully and through rank deceit and subterfuge—which led to Mente's complete downfall in July 2007 after 40 years in business, GMAC's false representations that Mente was "out of trust" which underlie the Forbearance Agreement (and are explicitly recited by GMAC in that document) render that Agreement void.

## The Forbearance Agreement Did Not And Could Not Release Future Claims

Mente asserts that pursuant to binding precedent, "a release covers only those matters which may be fairly said to have been within the contemplation of the parties when the release was given." "Releases are strictly construed 'so as to avoid the ever present possibility that the releaser may be overreaching.'" The Third Circuit has held that "the general words of a release will not be construed so as to bar the enforcement of a claim **which has not accrued** at the date of release." Mente claims that the Forbearance Agreement here, on its face, purported to release only those claims "heretofore or now existing" on September 30, 2007 at the time of its execution. There is no mention at all of any release of any "future" claims which may "accrue" to Mente by virtue of GMAC's conduct. Mente claims that despite the unlawful seizure of Mente's property on July 19th (which certainly gave rise to immediate causes of action), other claims did not "accrue" until later when GMAC actually disposed of the property that it had unlawfully confiscated. It is undisputed that GMAC did not "liquidate" all of the vehicles that it has seized until January 2008—four months *after* the Forbearance Agreement was signed.

Among Mente's specific claims in this case are that GMAC sold those vehicles at auction in a "fire sale" in a commercially unreasonable manner in violation of state law—a claim supported by the extensive analysis and reports of Mente's experts. Clearly, those claims did not and could not have "accrued" on September 30, 2007, because they arose and are based entirely on GMAC's conduct long after that date.

In a similar vein, GMAC's belated filing of its state court replevin action on February 12, 2008 and its even more untimely filing of a confession of judgment action against Mente two months later in April 2008, perpetuated the unlawful seizure of Mente's property which had occurred on July 19th and reaffirmed the "state action" aspect of that unconstitutional deprivation of Mente's property rights. Those claims, too, did not fully "accrue" until six months *after* the Forbearance Agreement was signed, and were neither released nor affected in any manner by that document.

Similarly, Chrysler did not terminate its dealer franchise with Mente until October 16, 2007—weeks *after* the Forbearance Agreement was signed—and the effective date of that termination was January 7, 2008 under the requisite notice provisions and a brief extension. So Mente's claims against GMAC for tortious interference with that agreement between Mente and Chrysler could not possible have "accrued" on September 30th. GM's final termination letter, extended while Mente scrambled to pursue what few options he had, was sent even later on January 14, 2008 with a retroactive termination date to January 11, 2008, so that similar interference claim did not "accrue" until then.

GMAC contends the Agreement is a total bar to all claims, including any un-accrued at the time of its execution.

### Mente's Claim that GMAC's "Unclean Hands" Bars the Court From Enforcing the Forbearance Agreement

Mente claims that GMAC's "unclean hands" in declaring a "bogus" default on July 25th (the first such written notice, sent six days *after* its seizures) and systematically looting the dealership properties throughout 2007 also bars enforcement of the Forbearance Agreement. The overarching concern in the application of the "unclean hands" doctrine is the integrity of the court and its desire not to assist those who engaged in unconscionable conduct:

> "Courts are concerned primarily with their own integrity,…and
> with avoiding becoming the abettor of iniquity."

Accordingly, the doctrine has been applied where a party concealed or misrepresented evidence, or advanced a theory or argument in a case which would allow that it to benefit from prohibited conduct. To guard against abuse of the doctrine, the "the primary principle guiding application of the unclean hands doctrine is that the alleged inequitable conduct must be connected, *i.e.*, have a relationship, to the matters before the court for resolution."

Mente asserts herein that the Forbearance Agreement, signed with a "boot on Mente's neck," unquestionably relates directly to "matters before the court for resolution," since GMAC advocates that agreement as grounds for dismissing plaintiffs' claims in their entirety. But GMAC's "unclean hands" in its dealings with Mente bars its reliance on that coerced agreement.

GMAC asserts it acted lawfully at all times.

Ultimately, these are the "core issues" that will be decided by the jury in this case.

## 4.    LIST OF MONETARY DAMAGES

Mente seeks damages from GMAC for the harm that it caused, including the termination of his dealer contract with GM and Chrysler and the loss of the real estate for those stores, which was directly caused by GMAC's unilateral seizure of Mente's stores and assets. Mente seeks statutory, compensatory, and punitive damages. (*See* Complaint ¶¶ 138-151; 153-157; 166-170; 172-176; 178-184; 186-189 and the Demands for Relief).

Plaintiffs' compensatory damages are in the amount of $7,547,616.00, and include the following:

| | |
|---|---|
| Loss of Dealership "Blue Sky" | $1,150,000.00 |
| Mishandled Liquidation | $ 707,616.00[9] |
| Loss of Real Estate[10] | $5,690,000.00 |

---

[9] For purposes of these calculations, plaintiffs have used the higher-end of damages calculated by plaintiffs' expert Roesner in his report. Roesner notes that the low-end of these damages would be $508,719.00.

Against these damages, GMAC has tendered an Offer of Judgment for $7,422.87--1/1000[th] of Mente's damages.  Mente also seeks punitive damages, attorney's fees, and costs.

## 5.    WITNESSES ANTICIPATED TO BE CALLED AT TRIAL

A complete list of plaintiffs anticipated witnesses is attached hereto as Exhibit A.

## 6.    SCHEDULE OF EXHIBITS

A complete Schedule of Exhibits which plaintiffs anticipate using at trial is attached hereto as Exhibit B.

## 7.    ESTIMATED LENGTH OF TRIAL

Plaintiffs anticipate that the trial in this matter can be completed within 5 days.

## 8.    OUTSTANDING LEGAL ISSUES AND MATTERS FOR TRIAL

### A.    Plaintiffs' Motions *In Limine*

Plaintiffs currently have two Motions *in Limine* outstanding.  The first (Document # 90), pursuant to Rules 26(g)(1)(B) and (3) and 37(b)(2)(A)(i) and (ii) of the Federal Rules of Civil Procedure and the Court's August 21, 2009 Amended Scheduling Order (Document No. 44),[11] seeks to have matters deemed admitted at trial and to prohibit defendant GMAC from opposing plaintiffs' claims of agency as a result of GMAC's willful and repeated violations of discovery Orders entered by the Court, which conduct has severely and irreparably prejudice plaintiffs in their trial preparation.[12] Plaintiffs' second motion *in limine* (Document # 96, filed under seal), pursuant to Rules 26(a)(1)(A)(i), 26(a)(2)(D), 26(e)(1), 26(g) and 37(c) of the Federal Rules of Civil

---

[10] Because of GMAC's actions, Mente's franchise agreements with General Motors and Chrysler were terminated, and Mente was precluded from obtaining real estate assistance to which they otherwise would have been entitled to and lost the properties to foreclosure.

[11] Plaintiffs' requested relief is also available under and authorized by Fed.R,Civ,P. 16(f)(1)(C).

[12] See also Document ## 41, 53 and 68. After twice being Ordered to produce the subject materials (and having represented to the Court that they are "irrelevant"), GMAC unilaterally sent the materials to the Court for an In Camera review.  Dkt. No. 68 was the Court's third Order mandating that GMAC timely turn over the subject materials.  GMAC turned over selective portions of the materials some days later but has yet to fully comply with any of these three Orders.

Procedure and the Court's August 21, 2009 Amended Scheduling Order (Document No. 44),[13] seeks an Order prohibiting defendant GMAC from offering the testimony of witnesses that it failed to disclose to plaintiffs, or any testimony from other witnesses or documentary exhibits which relate to the same facts or subject matter as the withheld information and discovery.

The facts and bases for Plaintiffs' Motions are contained therein and, rather than repeating those matters here, plaintiffs incorporate by reference both Documents ## 90 and 96 and all exhibits attached thereto. The outcome of those Motions will have a material effect on the trial.

**B.     GMAC's Belated Self-Styled "Notice of Expert Testimony"**

On the evening of October 27, 2009, without notice or prior warning,[14] GMAC sent plaintiffs a self-styled "Disclosure of Expert Testimony Pursuant To Federal Rule Of Civil Procedure 26(a)(2)(C)(ii)."[15]  Rule 26(a)(2)(C)(ii) reads as follows:

> C) Time to Disclose Expert Testimony. **A party must make these disclosures at the times and in the sequence that the court orders.** *__Absent a stipulation or a court order__*, the disclosures must be made:
>         (i) at least 90 days before the date set for trial or for the case to be ready for trial; or
>         (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure.

(Emphasis added). This Court issued an "Order" relative to the disclosure experts, two of them actually.  First on June 15, 2009, the Court Ordered the parties to produce expert reports no later than September 18, 2009 (Document # 33).  Then, at GMAC's own request, the Court modified its June 19th Order on August 21, 2009, to allow GMAC until September 25, 2009 to produce their expert reports (Document # 44).  Plaintiffs produced

---

[13] Again, such relief also is available under Fed.R.Civ.P. 16(f)(1)(C).

[14] During the Court's conference held on September 25th, GMAC's counsel raised receipt of Plaintiffs' expert reports and simply asked for the courtesy of deposing them outside of the discovery period.  Plaintiffs concurred and GMAC has deposed or is scheduled to depose each of them.  Not once did GMAC indicate it needed additional time to obtain "rebuttal" experts. Instead, more than a month later, and less than two weeks before trial, it blindsided plaintiffs with self-styled "Disclosures" that contain very little information and  almost nothing mandated by Rule 26 itself.

[15] See Exhibit C hereto.

their expert reports by hand delivering them to the Court and GMAC's counsel on September 24, 2009, so that the Court and GMAC would have them for the settlement conference scheduled the next day. Therefore, not only did the Court's Orders render Rule 26(a)(2)(C)(ii) completely inapplicable, GMAC failed to timely serve their "Disclosure of Expert Testimony" anyway within the 30 day deadline of that inapplicable rule.

Even more fatal to these "Disclosures", GMAC has not served plaintiffs with any information that comes anywhere even close to the *mandatory* disclosures required by Rule 26(a)(2)(B). GMAC has not produced any written reports which must accompany those Disclosures let alone:

*     any statement of any opinions the witnesses will express or any basis for them
*     any data or information considered by them in forming whatever opinions they hold
*     any exhibits
*     any list of publications authored in the past 10 years
*     any list of any cases in which they testified as an expert at trial or by deposition, or
*     any statement of compensation.[16]

The 1993 Commentary to the 1993 Amendments makes it clear that these *mandatory* disclosures require a party to produce this information "at an appropriate time during the discovery period" (such as when the Court Ordered it) so that the parties can "prepare for trial." What are plaintiffs to do with GMAC's "Disclosures"? They say very little, contain nothing that is mandated by the Rules, and are prejudicially untimely by any standard.

Respectfully, the Court must strike these "Disclosures" and bar any testimony by these purported experts at trial. Anything less casts the Court's authority and Orders, and the Federal Rules of Civil Procedure themselves asunder, rewards GMAC for, again, playing by its own rules, and will severely prejudice plaintiffs who have yet to receive anything close to any expert opinion, yet alone any mandatory written report.

---

[16] See Exhibit C.

Conversely, GMAC will suffer no prejudice. In its "Disclosures," GMAC simply states that these individuals were brought in to "rebut[] expert testimony concerning methodology, analysis, qualifications, underlying data, bases, and supporting facts and documentation for the opinions and conclusions set forth by plaintiffs' experts, Carl Woodward and Joseph Roesner..." Respectfully, that is *voir dire* and cross-examination of plaintiffs' experts at trial, for which GMAC has had ample time and opportunity to prepare (in consultation with their belatedly proffered experts, if necessary), GMAC has had detailed, compliant reports from plaintiffs' experts for more than a month, and also have (or will be) conducting the depositions of Messrs. Roesner and Woodward themselves to obtain whatever "rebuttal" they need for cross-examination at trial (experts whom, ironically, GMAC seek to bar at trial through its own pending motion *in limine*).

If plaintiffs' experts and their reports are so deficient as to warrant GMAC's October 27th ambush, it will be readily apparent to the Court during *voir dire* or to the jury after GMAC has finished cross-examination of Messrs. Roesner and Woodward. Thus, there is no need for any "rebuttal" experts. Nor is there any prejudice to GMAC from the exclusion of these proffered experts identified in clear violation of numerous Federal Rules and in an untimely manner patently prejudicial to plaintiffs.

### C.    GMAC's Refusal to Produce Subpoenaed GMAC Witnesses for Trial

On July 24, 2009, plaintiffs served their Third Request for Production of Documents on GMAC which, in Request No. 6, sought production of various agreements between General Motors Corporation ("GM") and GMAC which "memorialize" the extensive "business, financial and operating agreements between the parties." GMAC's suppression of that material until long after the close of discovery (and the filing of dispositive motions) is the subject of one of plaintiffs' pending motions *in limine*. Plaintiffs did not have the benefit of these documents during discovery and, thus, were not able to conduct any depositions about them. Nor are any of the GMAC witnesses involved in this case knowledgeable about them, because they are "high level," "corporate-"type documents of the company. In the event this Court did not grant the relief which plaintiffs' seek in our motion *in limine* (and, respectfully, the Court should),

13

plaintiffs subpoenaed GMAC employees whose names appear on the documents or who otherwise would have knowledge about them, to testify at trial substantively about their contents. GMAC refuses to produce those witnesses as well, rendering the merits of plaintiffs' motion *in limine* all the more compelling and the prejudice to plaintiffs even more substantial from GMAC's suppression of these GM-GMAC agreements.

### D. GMAC's Confession of Judgment in the Berks County State Action

GMAC filed a confession of judgment in Berks County state court based on the cognovit clause which appeared for the first time in the Forbearance Agreement. However, as noted above, the enforceability and outright validity of that Agreement will be presented to the jury here. More to the point, Mente has moved to Strike and/or Open that confessed judgment, a petition that is still pending in the state court and on which discovery has been conducted jointly—at GMAC's insistence--with this case.[17] The state court has deferred any action on Mente's petition until the conclusion of this case. Nor has GMAC pressed for any earlier determination there. Under these circumstances, it would be highly prejudicial to Mente to allow any evidence of the confessed judgment at trial, inasmuch as the jury may be mislead into believing that a judge or jury had rendered a decision on Mente's alleged default and GMAC's "out of trust" allegations—the precise issue which the jury will be called upon to decide here. The Court should exclude all such evidence and any reference to a confessed judgment obtained through the mere filing of a pleading, in a case which is still ongoing, and where the validity and enforceability of that judgment has yet to be adjudicated.

---

[17] That is why the captions of all deposition transcripts contain not just this case but also the state court replevin and confession of judgment actions.

14

Dated: October 30, 2009                    Respectfully submitted,

                                           /s/ Kenneth A. Jacobsen
                                           Kenneth A Jacobsen
                                           **JACOBSEN LAW OFFICES**
                                           Attorney I.D. No. 31208
                                           12 Orchard Lane
                                           Wallingford, PA 19086
                                           (610) 566-7930

                                           Joseph A. O'Keefe
                                           **O'KEEFE & SHER, P.C.**
                                           Attorney I.D. No. 77068
                                           15019 Kutztown Road
                                           Kutztown, PA 19530
                                           (610) 683-0771

                                           Attorneys for Plaintiffs

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MENTE CHEVROLET OLDSMOBILE, INC** | : | **CIVIL ACTION** |
| **F/K/A MENTE CHEVROLET, INC. t/a** | : | |
| **MENTE CHEVROLET** | : | **NO. 08-cv-2403** |
| | : | |
| and | : | |
| | : | |
| **MENTE CHRYSLER DODGE, INC.** | : | |
| | : | |
| and | : | **JURY TRIAL** |
| | : | **DEMANDED** |
| | : | |
| **DONALD M. MENTE** | : | |
| *Plaintiffs* | : | |
| v. | : | |
| | : | |
| **GMAC** | : | |
| *Defendant,* | : | |
| | : | |
| | : | |

*Plaintiffs' List of Anticipated Witnesses Pursuant to Local Rule 16.1 of the Eastern*
*District of Pennsylvania Federal Practice Rules*

**Fact Witnesses**

Donald M. Mente
406 Palmer Lane
Kutztown, PA., 19530

Donna Johnson
50 S. Baldy Street
Kutztown, PA 10530

Berrado (Bernie) Feretti
583 Wyatt Drive
Blandon PA 19510

Glenn P. Jackson
213 Amherst Ave.
West Lawn, PA 19609

Phillip Cavalcante
14165 Kutztown Road
Fleetwood, PA 19522

Joseph Galvin
1161 S. Bristol Drive
Apt. L78
Lititz, PA 17543

**Fact Witnesses (cont.)**

Paul O'Neill
GMAC
3104 Unionville Road,
Suite 200,
Cranberry Township, PA 16066

Matthew Clute
GMAC
3104 Unionville Road,
Suite 200,
Cranberry Township, PA 16066

Sanjiv Khattri[1]
Former Executive
V. P. & C.F.O.
GMAC
l/k/a Renaissance Center
Detroit, MI 48265-3000

Robert Hull[2]
Executive V.P. & C.F.O.
GMAC
Renaissance Center
Detroit, MI 48265-3000

Christopher Carey
1364 Brook Lane
Jamison, PA 18929

**Liability & Damage Experts**

Thomas Bellairs G.R.I., G.A.A., R.A.A.
Bellairs Real Estate
940 Penn Ave.
Wyomissing, PA 19610

Joseph F. Roesner, M.B.A., C.M.A.
The Fontana Group, Inc
3509 North Campbell Avenue
Tucson, AZ 85719

Carl S. Woodward, C.P.A.
Woodward & Associates, Inc.
1707 Clearwater Avenue ·
P.O. Box 1584 ·
Bloomington, IL 61702

---

[1] Mr. Khattri is the former Executive Vice President and Chief Financial Officer for GMAC. He is the signatory to the late-produced Agreements by and between GM and GMAC. Plaintiffs counsel has asked GMAC for his last known address (as they were required to provide in their Rule 26 disclosures) to no avail. Additionally, counsel for GMAC has declined acceptance of the Subpoena on Mr. Khattri's behalf.

[2] Mr. Hull replaced Mr. Khattri. In the absence of Mr. Khattri, Plaintiffs intend to call Mr. Hull to discuss the various Agreements by and between GM and GMAC.

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MENTE CHEVROLET OLDSMOBILE, INC** | : | **CIVIL ACTION** |
| **F/K/A MENTE CHEVROLET, INC. t/a** | : | |
| **MENTE CHEVROLET** | : | **NO. 08-cv-2403** |
| | : | |
| **and** | : | |
| | : | |
| **MENTE CHRYSLER DODGE, INC.** | : | |
| | : | |
| **and** | : | **JURY TRIAL** |
| | : | **DEMANDED** |
| | : | |
| **DONALD M. MENTE** | : | |
|                      *Plaintiffs* | : | |
|        v. | : | |
| | : | |
| **GMAC** | : | |
|              *Defendant,* | : | |
| | : | |
| | : | |

*Plaintiffs' List of Anticipated Exhibits to be Presented at Trial Pursuant to Local Rule 16.1 of the Eastern District of Pennsylvania Federal Practice Rules*

| **Exhibit Number** | **Bates Number** | **Description** |
|---|---|---|
| 1 | GMAC 5800 | Lovell Exhibit 5 from 9/15/09 deposition of GMAC operations manager Jeffrey J. Lovell, 8/8/07 dealer determination letter to Mente from GM |
| 2 | | 10/16/07 dealer determination letter to Mente Chevrolet from DaimlerChrysler |
| 3 | GMAC 3733-3734 | O'Neill exhibit 16 from deposition of GMAC portfolio manager Paul O'Neill, GMAC bulletin No. 42, Policy requiring 90 day notice before terminating lines of credit with dealers |
| 4 | GMAC 4210 | 7/19/07 e-mail from GMAC director of commercial lending William J. Tierney on day of GMAC's audit of Mente's acknowledgment of "90 day letter" |
| 5 | | Excerpts from 9/17/09 Tierney deposition where Tierney acknowledges "90 day letter" (pgs. 1, 18-19, 24-25) |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 6 | GMAC 0225 | 7/19/07 GMAC audit worksheet |
| 7 | GMAC 0903 – 0917 | Audit summary report attached to GMAC's answers to plaintiff's interrogatories |
| 8 | GMAC 7529 | GMAC audit worksheet for 7/19/07 audit – filed under seal |
| 9 | GMAC 6641 | Lovell exhibit 7 from the 9/15/09 Lovell deposition, 8/1/07 e-mail from Mente's counsel objecting to and challenging GMAC's declaration of default and reserving that determination "for another day" |
| 10 | GMAC 6642-6644 | Lovell exhibit 10 from the 9/15/09 Lovell deposition, 8/1/07 e-mail from Mente's counsel objecting to and challenging GMAC's declaration of default, contesting "GMAC's findings and all actions undertaken by GMAC," and confirming that "all cooperation by Mente is without waiver of rights and subject to its continuing objections to GMAC's findings and actions." |
| 11 | | Excerpts from 9/11/09 deposition of GMAC portfolio manager Christopher S. Carey. (pgs. 1, 63-34, 86-87) |
| 12 | | Criminal docket sheets in *Commonwealth of Pennsylvania v. Gerald Coley*, Docket Nos. CR-0000340 and 341-09 (Chester County) |
| 13 | | Traffic citation docket sheets (guilty plea, lower counts) in *Commonwealth of Pennsylvania v. Earl L. Schorpp II*, Docket Nos. TR-0001504-08 and 0000726-08 |
| 14 | | 8/17/07 letter from Mente's counsel to the Commonwealth of Pennsylvania Attorney General's Office self-reporting reasons for Mente's failure to remit refund payments to consumers, sales tax payments to the Commonwealth and other funds owed to third parties<br>    Exhibit A –8/14/07 e-mail message from Joseph O'Keefe to GMAC's counsel<br>    Exhibit B – Spreadsheet of affected consumers |
| 15 | GMAC 6496-6497 | Lovell exhibit 11 – 8/23/07 letter from the Pennsylvania Attorney General's Office to GMAC's counsel demanding responses to questions about GMAC's handling of third party funds at Mente dealerships |
| 16 | | 9/20/07 e-mail string between Mente's counsel and GMAC's counsel about criminal penalties for not remitting third party funds. |
| | | |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 17 | GMAC 6358-6359 | Lovell exhibit 12 – 9/11 through 9/14/07 e-mail communications between Mente's counsel and GMAC's counsel discussing seizure of funds by GMAC which was "not Mente's for GMAC to take" and having GMAC's "boot on [Mente's] neck." |
| 18 | | Lovell exhibit 13 - Cover letter dated 9/24/07 and attached subpoena from the Pennsylvania Attorney General's Office to the Mente dealerships in matter captioned *Commonwealth of Pennsylvania v. Mente Chevrolet Oldsmobile, Inc. Mente Chrysler Dodge, Inc. and Mente Chrysler Dodge Jeep, Inc.* |
| 19 | GMAC 5711 | Lovell exhibit 14 – 10/1/07 e-mail communication from GMAC's counsel to Mente's counsel acknowledging that both Mente and GMAC had "received copies of a subpoena issued by the Attorney General's [sic] requesting certain documentation…" |
| 20 | | Lovell exhibit 15 – 10/23/07 letter from Mente's counsel to the Attorney General's Office transmitting the documentary materials which had been subpoenaed from the Mente dealerships on 9/24/07 by the deadline set forth in that subpoena. |
| 21 | | Excerpts from the 9/21/07 deposition of plaintiff Donald. M. Mente (pgs. 1, 32-42) |
| 22 | | Excerpts from the 9/21/07 deposition of former Mente controller Donna Johnson. (pgs. 1, 108, 110-112) |
| 23 | | Order dated 11/5/08 in replevin action captioned GMAC v. Mente Chevrolet Oldsmobile, Inc., et al, No. 08-1769 (Berks County) directing the Prothonotary to issue a Writ of Seizure conditioned upon the posting of a bond by GMAC in the amount of $1,757,738.00, Collateral List |
| 24 | | 10/16/07 Chrysler termination letter to Mente Chrysler. |
| 25 | 061913-061915, 061908 | 1/14/08 and 2/4/08 final termination letters from GM to Mente Chevrolet terminating GM-Mente franchise agreement as of 1/11/08 |
| 26 | | Letter dated 9/23/09 from Kenneth Jacobsen, Esq., lead trial counsel for the plaintiffs, to the Honorable Juan R. Sanchez responding to the 9/22/09 request from GMAC's counsel to the court to submit discovery ordered by the court on 9/15/09 to be produced to plaintiffs to be submitted instead to the court for *in camera* review and objecting to that process and procedure. |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 27 | GMAC 3696 | Carey exhibit 5 from deposition of Carey on 9/11/09, the Wholesale Security Agreement between GMAC and Mente Chevrolet |
| 28 | GMAC 4209 | Carey Exhibit 1 – 7/19/07 e-mail from plaintiff Don Mente to GMAC operations manager Jeffrey Lovell |
| 29 | GMAC 5238 – 5240 | Carey exhibit 3 – email string 3/9 through 3/19/07, wherein GMAC specifically acknowledges coordinating audits and accepting payoffs by the Mente dealerships around the vacation schedule and other absences of Mente controller Donna M. Johnson |
| 30 | GMAC 5345 | Clute Exhibit 7 from the 9/29/09 deposition of Michael Clute, 8/24/05 e-mail exchange between GMAC analyst Tonia R. Lee and GMAC manager for commercial lending Martha E. Rader re: 8/23/05 audit, acknowledging that "there was not anyone available to payoff open units yesterday for the subject dealers" due to Johnson's absence |
| 31 | GMAC 5356-5357 | Clute exhibit 6 – GMAC audit report for 8/23/05 audit of Mente Chevrolet and Chrysler Jeep dealerships referenced in Ms. Lee's e-mails in exhibit 30. "Audit Results" show for Sold Vehicle Audits such as the one conducted by GMAC at Mente on 7/19/09, GMAC found 8 purported "payment delays" out of 10 vehicles audited at the Chevrolet store on 8/23/05, and 7 "payment delays" out of 10 vehicles audited at the Chrysler store that same day. For "Physical" audits, the "payment delays" purportedly were 11 of 26 and 4 of 9 for those same stores respectively. |
| 32 | | Excerpts from the verified responses of GMAC to plaintiff's first set of interrogatories dated 7/17/09; Document Request dated 7/17/09, Verification, Certificate of Service |
| 33 | GMAC 3748 | Lovell exhibit 1 from the 9/15/09 Lovell deposition, a 7/19/07 e-mail from Lovell to GMAC managers and employees at GMAC's Philadelphia Metropolitan Regional Office in Horsham, PA immediately terminating all releases of any funds owed by GMAC to the Mente dealerships. |
| 34 | | Accounting and reconciliation as of 2/4/08 produced by GMAC's counsel which traces the disbursement of funds at the Mente Chevrolet store from 7/20/07 – the day after the GMAC audit. |
| 35 | GMAC 3670-3673 | Lovell exhibit 3 - Demand for payment change to Mente from GMAC dated 7/19/07 |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 36 | | Accounting and reconciliation as of 2/4/08 produced by GMAC's counsel which traces the disbursement of funds at the Mente Chrysler store from 7/20/07 – the day after the GMAC audit |
| 37 | GMAC 3749 | Lovell exhibit 2 – 7/19/07 correspondence from GMAC to Mente re: suspension of wholesale credit lines |
| 38 | GMAC 3778 | Letter dated 7/20/07 telecopied by GMAC operations manager carrier to DaimlerChrysler Motors Company LLC alerting Chrysler of GMAC's immediate suspension of GMAC's wholesale floor-planning to Mente Chrysler. |
| 39 | GMAC 6305-6308 | O'Neill exhibit 11, 8/30/07 Potential Loss report generated by O'Neill re: Mente dealerships *Filed under seal* |
| 40 | GMAC 6295 | O'Neill exhibit 2, 7/20/07 GMAC ERO Default notification report prepared by O'Neill regarding alleged "out of trust" situation at Mente Chevrolet. |
| 41 | GMAC 5148 | O'Neill exhibit 5 – Demand for immediate payment and surrender of collateral dated 7/25/07 from William Tierney to Mente. |
| 42 | GMAC 5149 | 7/25/07 default and demand letter from Tierney to Mente Chrysler |
| 43 | GMAC 5147 | 7/25/07 default and demand letter from Tierney to Mente Chevrolet, Mente Chrysler and Mr. Mente personally |
| 44 | GMAC 6650-6651 | O'Neill exhibit 15 – 8/1/07 letter from GMAC's outside counsel James Weiner, Esq. |
| 45 | GMAC 5157 | O'Neill exhibit 6, 4/3 through 4/4/07 e-mail string among GMAC managers and employees Carey, Kristin Olson, Seam Sullivan, Robert J. Gerardin and Matthew Knoster about Mente's refinancing with Citizen's bank. |
| 46 | GMAC 3775-3776 | Declaration of Joseph Galvin dated 9/20/09 with attached Citizen's Bank commitment letter to Mr. Mente and Mente Chevrolet for $2.5 million commercial real estate loan and $1.5 million used car floor-plan. (O'Neill exhibit 7) |
| 47 | GMAC 3810-3813 | Real estate appraisal as of 7/16/07 for Citizen's Bank loan to Mr. Mente and Mente Chevrolet |
| 48 | GMAC 3774 | 7/24/07 telecopy cover sheet from Mr. Mente to Tierney, forwarded to O'Neill the same day, attaching 7/20/07 Citizens Bank commitment letter |
| | | |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 49 | GMAC 6113-6114 | O'Neill exhibit 14. 7/27-28/07 e-mail string between and among GMAC managers and employees Tierney, Carrier, Lovell, O'Neill and others. |
| 50 | GMAC 6111 | Lovell exhibit 4 -8/8/07 e-mail from Lovell to Tierney, O'Neill and other GMAC managers and employees. |
| 51 | | Accounting and reconciliation as of 2/4/08 produced by GMAC's counsel with records "keeper" fees and fees for "security services" at the Mente dealerships charged by GMAC to Mente between 7/19/07 and 2/4/08 |
| 52 | | Motion of Plaintiff GMAC for Issuance of Writ of Seizure filed by GMAC on 9/15/08 in the Berks' County state court replevin action (No. 08-1760) w/ appended copy of underlying complaint filed 2/12/08 and attached Uniform Commercial Code financing statements (Exhibits L and M) filed with the Secretary of State of the Commonwealth of Pennsylvania which underlie and formed the basis of GMAC's Complaint in replevin and Motion for Issuance of Writ of Seizure.<br>-Writ of Seizure<br>-Memorandum of law in support of writ of seizure<br>-Exhibit 1 – Plaintiff's notice to defend, complaint<br>-Verification<br>-exhibit a – 6/11/82 Wholesale Security Agreement<br>-exhibit b – 12/6/02 Amendment to wholesale security agreement<br>-exhibit c – 12/6/02 Agreement Amending wholesale security agreement to permit use of floor planned vehicles as demonstrators<br>-exhibit d – March 07 General Security Agreement<br>-exhibit e – 12/6/02 Mente Chevrolet Name Change Amendment<br>-exhibit f – 3/7/02 Mente Chrysler Wholesale security agreement<br>-exhibit g – 3/7/00 Mente Chrysler GM auction vehicle amendment<br>-exhibit h – 3/7/00 Mente Chrysler other vehicles amendment<br>-exhibit i – 1/7/02 Mente Chrysler permitted use amendment<br>-exhibit j – 3/7/00 Mente Chrysler Security Agreement<br>-exhibit k – 10/29/99 Revolving line of credit agreement<br>-exhibit l – Mente Chevrolet financing statements<br>-exhibit m – Mente Chrysler financing statements<br>-exhibit n – 9/30/07 Forbearance Agreement<br>-exhibit o – 1/28/08 Demand for possession<br>-Certificate of Address<br>-Order granting GMAC's motion<br>-Collateral list<br>-Notice of Hearing for seizure of property dated 9/15/08 |
| | | |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 53 | | Excerpts from the transcript of 9/17/09 Tierney deposition (pgs. 1, 6-13, 26-29, 38-41, 66-105, 114-121, 138-147) |
| 54 | | Excerpts from the transcript of 9/15/09 Lovell deposition (pgs. 1, 10-13, 62-65, 70-77, 98-109, 114-125, 158-165) |
| 55 | | Excerpts from the transcript of 9/11/09 Carey deposition (pgs. 1, 34-41, 46-7, 102-105) |
| 56 | | Excerpts from the transcript of 9/11/09 O'Neill deposition (pgs. 1, 10-13, 18-21, 30-33, 38-45, 50-61, 74-77, 86-89. 90-97, 102-109, 118-121, 134-141) |
| 57 | | Excerpts from the transcript of 9/9/09 deposition of Glenn Jackson (pgs. 1, 12, 23, 35) |
| 58 | | Mente exhibit 1 – agreement amending the wholesale security agreement to permit use of floor planned vehicles as demonstrators dated 1/7/02 |
| 59 | | Mente exhibit 2 – General security agreement dated March of 2007 |
| 60 | | Mente exhibit 3 – Wholesale security agreement dated 3/7/00 |
| 61 | | Mente exhibit 4 – Security Agreement dated 3/7/00 |
| 62 | | Mente exhibit 5 – Cross Collateralization and Cross Default Agreement dated 3/7/00 |
| 63 | GMAC 5245-5246 | Nattress exhibit 1 – Notice of deposition of Donald Mente and Subpoena to testify at a deposition to produce documents in a civil action and Certificate of Service |
| 64 | | Johnson exhibit 1 – 1/31/07 audit results |
| 65 | | Johnson exhibit 2 – Wholesale security agreement dated 9/11/82 |
| 66 | | Johnson exhibit 3 – Revolving Line of Credit Agreement dated 10/29/99 |
| 67 | | Johnson exhibit 4 – Guaranty dated 5/14/07 |
| 68 | GMAC 0349-0362 | Johnson exhibit 5 – Wholesale Audit |
| 69 | GMAC 6295, 6577, 5148 | Johnson exhibit 6 – GMAC ERO default notification report |
| 70 | | Johnson exhibit 7 – Forbearance agreement |
| 71 | | Casper exhibit 1 – Subpoena to testify at a deposition or to product documents in a civil action dated 9/22/09 |
| 72 | | Hart exhibit 1 - Subpoena to testify at a deposition or to product documents in a civil action dated 10/1/09 |
| | | |
| | | |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 73 | | Cavalcante exhibit 1 - Subpoena to testify at a deposition or to product documents in a civil action dated 9/22/09; Amendment to Agreement of purchase and sale |
| | | |
| 74 | | Cavalcante exhibit 2 – Agreement of purchase and sale |
| 75 | | Cavalcante exhibit 3 – GM 2005 Annual report – key factors affecting future results |
| 76 | | Cavalcante exhibit 4 – GM Corp Form 10K Filed 3/15/07 |
| 77 | | Cavalcante exhibit 5 – GM Corp Form 10K Filed 2/28/08 |
| 78 | | Cavalcante exhibit 6 – GM Corp Management discussion and analysis of financial condition and results of operation |
| 79 | | Cavalcante exhibit 7 – Auto Dealers predict more consolidation article |
| 80 | | Cavalcante exhibit 8 – Board's dramatic '06 vote gave support to Wagoner's repair plan article |
| 81 | | Cavalcante exhibit 9 – GM store count down for 226 so far this year article |
| 82 | | Cavalcante exhibit 10 –Besieged car dealers on their own article |
| 83 | | Cavalcante exhibit 11  -GM's store-cutting plan: work with the weak article |
| 84 | | Cavalcante exhibit 12- GM plans to cut 400 stores a year until 2012 article |
| 85 | | Cavalcante exhibit 13 - Henderson's GM speeds up dealer cuts article |
| 86 | | Cavalcante exhibit 14 - Fritz Henderson oral testimony as prepared for delivery on: June 12, 2009 press release |
| 87 | | Cavalcante exhibit 15 – US SEC Form 10-K for GMAC LLC |
| 88 | | Cavalcante exhibit 16 - US SEC Form 10-K for GMAC LLC |
| 89 | GMAC 5802-5815 | Original draft of the Forbearance Agreement among Mente and GMAC |
| 90 | GMAC 3682-3695 | Signed/Final Forbearance Agreement among Mente and GMAC |
| 91 | GMAC 5837-5839 | Original draft of the Assignment of Sale Proceeds Agreement between Mente and GMAC |
| | | |

Case 5:08-cv-02403-JS    Document 113    Filed 10/30/2009    Page 28 of 49

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 92 | GMAC 7707-7709 | Signed/final Assignment of Sale Proceeds Agreement between Mente and GMAC |
| 93 | GMAC 6399-6401 | 9/4/07 – 9/6/07 e-mail string between James Weiner, Paul O'Neill, Jeff Lovell and Jim Suske re: hiring an outside security company for after hours monitoring. |
| 94 | GMAC 6649-6651 | 8/1/07 e-mail from James Weiner to Joseph O'Keefe re: letters demanding immediate payment to the Mente dealerships. CC'd to Lovell. |
| 95 | GMAC 7714-7716 | 2/11/08 real estate value estimate sent to Mike Keeler of GMAC from Bruce Mangrum, Valuation Specialist Retail Real Estate re: inspection of former Mente dealership properties that occurred on 1/22/08. |
| 96 | | Deal Jackets for alleged Sold Out of Trust Vehicles<br>    Exhibit A – 014043-014123 – William C. Sheppard<br>    Exhibit B – 014583 – 014614 – Andrew M. Logsdon<br>    Exhibit C – 014468 – 014534 – Paul Richard Long<br>    Exhibit D – 014330-014355 – Donna Lee Delong<br>    Exhibit E – 014535-014582 – Louis Rodriquez<br>    Exhibit F – 013916-013967 – James Lee Yerger<br>    Exhibit G – 013968-014042 – Wayne W/ Steffey<br>    Exhibit H – 014833-014894 – Leroy F. Brown<br>    Exhibit I – 014662-014704 – Linda M. Lee<br>    Exhibit J – 014356-014406 – Karen Jane Epting<br>    Exhibit K – 014235-014285 – Teresa Eileen Adams<br>    Exhibit L – 014896-014926, 060317 – Thomas P. Heckman<br>    Exhibit M – 014407-014466 – Sheldon William Thomas<br>    Exhibit N – 014705-014775 – Amber Lynn Yeagley<br>    Exhibit O – 014615-014661 – Paul W. Geiger<br>    Exhibit P – 014286-014327 – Luther L. Bartholomew<br>    Exhibit Q – 014124-014182 – Travis E. Sunday<br>    Exhibit R – 014777-014832 –David William Wheeler<br>    Exhibit S – 014183-014234 – Colleen Fay O'Neil |
| 97 | | Woodward Expert Report |
| 98 | | Fontana (Roesner) Expert Report |
| | | |

- 9 -

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 99 | Includes (but not limited to) 062174-062363, 013239-013407, 062137-062173, 013167-013108, 062450-062453 | Bellairs Expert Report |
| 100 | | Manheim documents |
| 101 | GMAC 6782-6784 | 7/30/07 Notice to all GMAC employees informing them they are all "excluded from all Real Property owned by Mente and shall immediately return possession and control of all Personal Property & Equipment owned by Mente which [they had] confiscated[…]" |
| 102 | | 10/20/09 MSNBC article "Perks keep rolling at rescued banks" |
| 103 | GMAC 4021-4022 | 7/27/07 Kutztown Auto Memo from Bonnie Jablonski to Jeff Lovell |
| 104 | 000999-001010 | 10-10-2008 GMAC's Responses to Defendants' First Request for Production of Documents (State Court Action) |
| 105 | 003579-003607 | 10-17-08 GMAC's Response to Defendants' Petition for Sanctions (State Court) |
| 106 | 000247-000257 | 12-17-08 GMAC'S Revised Responses to Defendants' Discovery (state court) |
| 107 | 000364-000365 | 12/29/08 letter from Mente's counsel to GMAC's counsel demanding a Privilege Log pursuant to Rule 4009.12, noting that the review of their responses clearly indicated that they were withholding documents |
| 108 | 000110-000112 | 1/13/09 letter from GMAC's counsel to Hon. Scott E. Lash and asserts that GMAC's identification of dealerships deemed out of trust within the past five years, training procedures and identification of steps taken to "minimize exposure" on the part of GMAC "have no factual basis" in that action. |
| 109 | 003554-003564 | 1/16/09 GMAC responses to defendant's first set of interrogatories and accompanying requests for production of documents directed to GMAC |
| 110 | 000025-000033 | 1/26/09 GMAC'S motion for a protective order |
| 111 | 000002-000008 | 2/12/09 GMAC'S Response to Defendant's List of Documents that are Responsive to Mente's Request for POD |

- 10 -

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 112 | | 2/12/09 GMAC'S Motion to Dismiss Plaintiff's First Amended Complaint |
| 113 | | 7/17/09 Responses of GMAC to Plaintiff's First Set of Interrogatories and Accompanying Requests for POD |
| 114 | | 7/17/09 Responses of GMAC to Plaintiff's Second Set of Interrogatories and Accompanying Requests for POD |
| 115 | | 8/6/09 Opposition of GMAC to Plaintiffs' Combined Motion and Memorandum to Compel Discovery and Request for Expedited Consideration of Motion |
| 116 | | 8/18/09 Court Grants Plaintiffs Motion and Orders GMAC to "promptly produce" a wide range of documents, entirely those that Plaintiffs have been seeking from GMAC from the on-set of their litigation against Mente |
| 117 | | 8/27/09 Responses of GMAC to Plaintiff's Third Set of Interrogatories and Accompanying Requests for POD |
| 118 | | 9/1/09 GMAC files a Motion for Reconsideration of this Court's 8-18-09 Order |
| 119 | | 9/14/09 GMAC Files a Response to Plaintiffs' Motion in Opposition to GMAC's Motion for Reconsideration |
| 120 | | 9/15/09 The Court DENIES GMAC's Motion for Reconsideration and Orders GMAC to produce "the documents to which Plaintiffs are entitled without further delay." |
| 121 | Includes GMAC 7893-7897 | 9/22/09 Supplemental Responses of GMAC to Plaintiff's Second Request for POD |
| 122 | | GMAC *ex partite* sends the Court a letter asking that it review the materials it was twice Ordered to produce *in camera* |
| 123 | | 9/24/09 Responses of GMAC to Plaintiff's Fourth Request for POD |
| 124 | | 10/6/09 GMAC ex partite sends the Court a select sample of the documents it was twice Ordered to produce, again asking for an in camera review Late Production of Documents |
| 125 | | 10/9/09 The Court issues an Order denying GMAC's request for in camera review and, again, Orders GMAC to turn the documents over to Plaintiffs. Late Production of Documents |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 126 | | 10/12/09 GMAC notifies Plaintiffs it is sending documents subject of the Court's 10-9-09 Order to KAJ (and not what it was Ordered twice to produce) Late Production of Documents |
| 127 | GMAC 7901-7915 | 10/13/09 KAJ receives certain responsive documents but not what GMAC was twice Ordered to produce. – Master Services Agreement Late Production of Documents |
| 128 | GMAC 7944-7971 | 10/13/09 KAJ receives certain responsive documents but not what GMAC was twice Ordered to produce – Dealer Financing Service Agreement Late Production of Documents |
| 129 | | Final transcript of GMAC Q4 2006 Earnings Conference call on Mar. 13, 2007 |
| 130 | | Final transcript of GMAC Q1 2008 Earnings Conference call on Apr. 29, 2008 |
| 131 | | Final transcript of GMAC Q3 2008 Earnings Conference call on Nov. 5, 2008 |
| 132 | | GMAC fixed income investor presentation on 12/1/06 |
| 133 | | GMAC Credit Conference presentation on 12/3/07 by David Walker, GVP of Global Borrowings |
| 134 | | GM Restructuring Plan for Long-term Viability presentation, given 12/3/08 |
| 135 | | GM Auto Analysts Conference presentation given 1/15/09 by Ray Young, Executive Vice President and CFO |
| 136 | | GM Auto Analysts Conference presentation given 1/15/09 by Fritz Henderson, President and COO |
| 137 | | GM 2007 Annual Report |
| 138 | | GMAC LLC Form 8K filed 12/17/08 for period 12/16/08 |
| 139 | | GMAC LLC Form 424B3 filed 12/22/08 |
| 140 | On disc | GMAC LLC Form 10-K filed 3/8/06 for period 12/31/05 |
| 141 | On disc | GMAC LLC Form 10-Q filed 11/10/08 for period 9/30/08 |
| 142 | On disc | GMAC LLC Form 10-K filed 2/27/08 for period 12/31/07 |
| 143 | On disc | GMAC LLC from 10-K for January 2007 |
| 144 | On disc | GM 2009-2014 Restructuring Plan  2/17/09 |
| 145 | | Affidavit of Frederick A. Henderson |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 146 | | Supplemental Affidavit of Frederick A. Henderson |
| 147 | GMAC 3966 | 3/29/07 e-mail from GMAC to Don Mente re: review of 10/31/06 operating report |
| 148 | GMAC 4109-4111 | 7/17/07 e-mail from Christopher Carey to Jeff Lovell re: Don Mente's refuting the ERLC reduction and reductions on demos aged and used |
| 149 | GMAC 4189-4203 | Report to the Eastern Regional Credit Committee for the Mente Dealer Group. |
| 150 | GMAC 3768-3769 | 12/19/06 letter to Don Mente from Bob Gerardin re: meeting w/ Gerardin and Sean Sullivan |
| 151 | GMAC 3958-3959 | 6/29/07 letter to Don Mente from Jeff Lovell re: 6/13/07 meeting w/ Lovell, Sullivan and Tierney. |
| 152 | GMAC 3961-3962 | Don Mente's meeting notes |
| 153 | GMAC 3964-3965 | 4/4/07 e-mail and subsequent reply on 4/27/07 from Kristin Olsen and Sullivan to Gerardin re: imminent sale of Chrysler store and follow up from Gerardin w/ Don Mente for his Personal Guaranty and GSA. |
| 154 | GMAC 5245-5248 | 1/31/07 Audit Results letter to Don Mente and follow up e-mails from Olsen to Gerardin about the Chrysler store not yet being sold. |
| 155 | GMAC 5321 | 11/20/06 e-mail from Knoster to Gerardin re: Mente's monthly sales |
| 156 | GMAC 5343-5345 | 8/26/05 interview report for Don Mente re: dealership profitability and audit, inc. meeting notes and prior e-mail string on 8/24/05 between Martha Rader and Tonia R. Lee re: units paid through the audit |
| 157 | GMAC 5349-5350 | 8/9/05 memo from Lee to A.V. Beery re: Mente Chevrolet and Chrysler audits on 3/16/05 re: audit delays |
| 158 | GMAC 5374 | 6/12/03 memo from Clute re: an April 30th audit in which a number of delivered units were discovered unpaid and GMAC's recommended corrective action plan |
| 159 | GMAC 5595 | Agreement concerning voluntary surrender of collateral |
| 160 | | 9/12/09 Congressional Report |
| 161 | On Disc | GM Metadata<br>    Daily Log Mente 3/20/08 – 0604163<br>    Daily Log Mente Updated 2/4/08 – 060417 |
| 162 | GMAC 3402 | Letter dated 6/12/03 from Clute to Mente large number of delivered units unpaid outside of the 3-day release privilege and recommended plan of action. |
| | | |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 163 | GMAC 3403-3404 | 2/1/07 letter from Carey to Don Mente re: audit results including reference to excessive "payment delays" observed at both dealerships. |
| 164 | GMAC 3458 | Correspondence from T.R. Lee re: Mente Chevrolet and Chrysler Audit on 3/16/05 stating there was improvement in the dealerships' delay ratios from the previous audit |
| 165 | GMAC 3460 | 3/15/05 audit results including summary of irregularities and sold vehicle analysis. |
| 166 | GMAC 3512 | Certification that inventory was cleared as of 6/25/04 |
| 167 | GMAC 3541 | Audit worksheet dated 11/18/03 for Mente Chevrolet |
| 168 | GMAC 3623-363 | Wholesale audit of Mente Chevrolet dated 5/2/03 |
| 169 | GMAC 3721-3730 | GMAC policy 3810 1-3 loss management report |
| 170 | GMAC 3731-3732 | GMAC policy 3820 1-2 losses and repossession |
| 171 | GMAC 3733-3734 | GMAC memo sent from C.J. Rutkowski to all GMAC field executives re: termination of vehicle credit lines and noncompliance fee |
| 172 | GMAC 3751 | Letter dated 6/25/07 from Lovell to Mr. Mente requesting updated financial statements. |
| 173 | GMAC 3951 | 12/15/05 e-mail from Tonia Lee to Martha Rader and GMAC employees with the results of that day's audits of Mente Chevrolet and Chrysler stores. |
| 174 | GMAC 4107 | 7/20/07 e-mail from Don Mente and forwarded to Carey, Lovell and O'Neill re: transfer of funds delayed by Donna Johnson's vacation |
| 175 | GMAC 4108 | 7/19/07 e-mail from Tierney to Lovell, Carey and O'Neill employees about "90 day letter" |
| 176 | GMAC 5158 | 3/29/07 letter to Don Mente approving wholesale credit lines for new vehicle floor plan |
| 177 | GMAC 6101 | 7/19-26/07 chronological summary of events and recommendations |
| 178 | GMAC 6120 | GMAC's recommended process to follow when potential loss (conversion) is discovered |
| 179 | GMAC 6126 | Assignment of retail installment sale contract or lease agreement proceeds |
| 180 | GMAC 6127-55 | GMAC policy 3600-3630 w/ subparts for Monitoring Commercial Accounts |
| 181 | GMAC 6156-6176 | GMAC policy 3640-3650 w/subparts for risk and opportunities meetings |
| 182 | GMAC 6180-6184 | GMAC policy 3660 for CARRS |
| 183 | GMAC 6185-6187 | Revisions to commercial lending policies and procedures |
| 184 | GMAC 6188-6192 | CARRS – revised rating requirements |
| 185 | GMAC 6193-6200 | Using CARRS rating to determine approval authority |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 186 | GMAC 6204-6226 | GMAC policy 3710-3730 for auditing overview |
| 187 | GMAC 6433-6434 | Excerpt from 8/28/07 letter from Lavin to John Abel |
| 188 | GMAC 6663-6679 | Mente Chevrolet, Chrysler and Harley Davidson inventory |
| 189 | GMAC 6680-6689 | Wholesale billing statements |
| 190 | GMAC 6690-6707 | Mente car titles |
| 191 | GMAC 6715 | Report to the executive vice president re: wholesale and loan loss/charge-off. |
| 192 | GMAC 6763 | 7/19-25/07 chronological summary of events and recommendations |
| 193 | GMAC 6432-6433 | 8/28/07 letter to John Abel from Lavin re: Mente Chevrolet and Chrysler Dodge stores in response to 8/24/07 phone conference. |
| 194 | 062106-062117 | Mente Chrysler Dodge checking account activity for statement period 7/1/07 to 7/31/07 |
| 195 | 062118-062136 | Mente Chevrolet checking account activity for statement period 7/1/07 to 7/31/07 |
| 196 | 061933-062010 | Mente Chevrolet and Chrysler Sales records |
| 197 | | 9/21/09 Deposition transcripts for Donald M. Mente |
| 198 | | 9/21/09 Deposition transcripts for Donna Johnson |
| 199 | | 9/22/09 Deposition transcripts for Phillip Cavalcante |
| 200 | | 10/1/09 Deposition transcripts for Michael Hart |
| 201 | | 9/22/09 Deposition transcripts for Robert Casper |
| 202 | | 9/21/09 Deposition transcripts for Mark R. Nattress |
| 203 | | 9/15/09 Deposition transcripts for Jeff Lovell |
| 204 | | 9/21/09 Deposition transcripts for Matthew Clute |
| 205 | | 9/11/09 Deposition transcripts for Christopher Carey |
| 206 | | 9/11/09 Deposition transcripts for Paul O'Neill |
| 207 | | 9/10/09 Deposition transcripts for Matthew E. Weber |
| 208 | | 9/9/09 Deposition transcripts for Thomas Smith |
| 209 | | 9/17/09 Deposition transcripts for William Tierney |
| 210 | | 9/9/09 Deposition transcripts for Glenn Jackson |
| 211 | | 9/9/09 Deposition transcripts for Berrardo Ferretti |
| 212 | | 10/26/09 Subpoena of Phillip Cavalcante to appear and testify on 11/9/09. |
| 213 | | 10/26/09 Subpoena of Chris Carey to appear and testify on 11/9/09. |
| 214 | GMAC 7916-7917 | First Amendment to Master Services Agreement |
| 215 | GMAC 7918-7917 | Second Amendment to Master Services Agreement |
| 216 | GMAC 7920-7940 | 11/30/06 Agreement on Indemnification and Certain Matters Relating to Separation by and between GM and GMAC. |
| | | |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 217 | GMAC 7941-7943 | 11/30/06 List Sharing Agreement between GM and GMAC |
| 218 | GMAC 7972-7987 | 3/31/08 Amendment of the U.S. Consumer Financing Services Agreement between GM and GMAC |
| 219 | GMAC 7988-8000 | 11/27/06 Opt-in letter to GMAC from GM Acceptance Corp. of Canada |
| 220 | GMAC 8001-8006 | Revised March 2006 Wholesale Payment Procedures for Finance Companies and Banks |
| 221 | GMAC 8007-8029 | 11/30/06 Remarketing Service Agreement between GM and GMAC, pgs. 1-23. |
| 222 | GMAC 8030-8037 | 11/30/06 Remarketing Service Agreement pgs. 29-36 |
| 223 | GMAC 8038-8084 | GM North American Operations Wholesale Payment Procedures including Marketing Service Agreement and Opt –in letter, Amended and Restated Agreement for Advance Payment of Wholesale Vehicle Obligations with Exhibits A-F, and In-transit Vehicle Agreement |
| 224 | GMAC 8085-8108 | U.S. Nonprime Consumer Financing Services Agreement pgs. 1-23, then pg. 50. Gap from pgs. 24-49; missing exhibit B The Intellectual Property License Agreement between GM and GMAC as of 11/30/06. |
| 225 | GMAC 8109-8123 | Implementation Procedure for Rate Support Pricing for GMCL Special Programs pgs. 37-48, then pgs. 34-36, a previous opt-in agreement |
| 226 | GMAC 8124-8157 | Canada Consumer Financing Services Agreement, with a gap from pgs. 33-50 |
| 227 | GMAC 8158-8188 | European Co-operation Agreement as of 11/30/06 |
| 228 | GMAC 8189-8215 | Intellectual Property License Agreement |
| 229 | GMAC 8216-8234 | 11/30/06 Insurance Services Agreement |
| 230 | GMAC 8235-8236 | Competitiveness Requirements |
| 231 | GMAC 8237-8239 | General opt-in letter w/ no attached agreements |
| 232 | GMAC 8240-8262 | 11/30/06 International Consumer Financing Services Agreement pgs. 1-20, 26-28.Gap from pg. 21-25 |
| 233 | | 10/28/09 Subpoena of Robert Hull to appear and testify on 11/9/09. |
| 234 | | 10/27/09 Subpoena of Sanjiv Khattri to appear and testify on 11/9/09. |
| 235 | | 10/26/09 Subpoena of Glen Jackson to appear and testify on 11/9/09. |
| 236 | | 10/26/09 Subpoena of Berrardo Ferretti to appear and testify on 11/9/09 |
| 237 | | 10/28/09 Subpoena of Joseph Galvin to appear and testify on 11/9/09. |

| Exhibit Number | Bates Number | Description |
|---|---|---|
| 238 | | 10/28/09 Subpoena of Paul O'Neill to appear and testify on 11/9/09. |
| 239 | | 10/28/09 Subpoena of Matthew Clute to appear and testify on 11/9/09. |

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MENTE CHEVROLET OLDSMOBILE, | : | |
| INC. F/K/A MENTE CHEVROLET, INC. | : | |
| t/a MENTE CHEVROLET | : | CIVIL ACTION |
| and | : | |
| MENTE CHRYSLER DODGE, INC. | : | |
| and | : | NO. 08-cv-2403 |
| DONALD M. MENTE | : | |
| Plaintiffs | : | |
| v. | : | |
| | : | |
| GMAC | : | |
| Defendant. | : | |

**GMAC's DISCLOSURE OF EXPERT TESTIMONY PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 26(a)(2)(C)(ii)**

GMAC, by and through its attorneys, Lavin, O'Neil, Ricci, Cedrone and DiSipio, hereby

sets forth its expert disclosure pursuant to Federal Rule of Civil Procedure 26(a)(2)(C)(ii) as

follows:

1.    Fred C. Caruso
      Development Specialists, Inc.
      70 W. Madison Street, Suite 2300
      Chicago, IL 60602

Mr. Caruso will offer rebuttal expert testimony concerning the methodology, analysis,

qualifications, underlined data, bases and supporting facts and documentation for the opinions

and conclusions set forth by plaintiffs' experts, Carl Woodward and Joseph Roesner, including

rebuttal expert testimony concerning the opinions and conclusions set forth by those experts. A

copy of Mr. Caruso's qualifications/CV are attached as Exhibit "A".

2.    Paul D. Quinn, MAI
       Lagreca & Quinn Real Estate Services, Inc.
       200 Pennsylvania Avenue
       Oreland, PA 19075

Mr. Quinn will offer rebuttal expert testimony concerning the methodology, analysis,

qualifications, underlined data, bases and supporting facts and documentation for the opinions

and conclusions set forth by plaintiffs' expert, Thomas Bellairs, including rebuttal expert

testimony concerning the opinions and conclusions set forth by Mr. Bellairs. A copy of Mr.

Quinn's CV is attached as Exhibit "B".

LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

BY: _____
MARY GRACE MALEY, ESQUIRE (PA 37610)
190 North Independence Mall West
Suite 500, 6th & Race Streets
Philadelphia, PA 19106
Phone: (215) 627-0303
Fax: (215) 627-2551
   Attorney for Defendant, GMAC

DATE: October 27, 2009

EXHIBIT A

# FRED C. CARUSO

## PROFESSIONAL QUALIFICATIONS

Fred Caruso, Vice-President and Chief Operating Officer of Development Specialists, Inc., is a Certified Public Accountant and a Certified Insolvency and Reorganization Accountant.

Mr. Caruso has 24 years of insolvency, restructuring and valuation experience. Prior to rejoining DSI in July, 2005, Mr. Caruso was the president for Hilco Appraisal Services, LLP ("Hilco"), which is the largest valuation firm in North America for inventory, equipment and business valuations used by the asset based lending community. During his tenure at Hilco, Mr. Caruso personally was involved in hundreds of engagements for manufacturers, forest products companies, distributors and retailers, including such notables as Goodyear Tire & Rubber, Mitsubishi Motors, Georgia Pacific, GM Locomotive, Meridian Automotive, Parmalat Dairy and Bakery, Citation Corporation, Revlon and US Steel. While at Hilco, Mr. Caruso was also involved in Hilco's distressed disposition practice, involving the sale of inventory, equipment and real estate for many of its clients.

Mr. Caruso originally joined DSI in 1982 as Chief Financial Officer. He has assumed day-to-day management control for 12 different companies where operations included sub-prime financial services, metal fabrication, injection molding, blow molding, residential construction, real estate management, government contracting, hospitality and food service, wholesale and retail oil distribution, and computer software. Mr. Caruso has also provided consulting services to both debtors and creditors for a variety of other businesses involving banking, OEM automotive supply, wholesale distributorships, aftermarket automotive supply, mortgage servicing, general contracting and retailing.

Mr. Caruso has testified as an expert witness in various bankruptcy, state, and federal court trials relating to business valuation and plan feasibility. Due to his skills in forensic accounting and fraud detection, Mr. Caruso was appointed both a Chapter 11 and a Chapter 7 Trustee for cases involving "Ponzi schemes" and misappropriation of funds.

Prior to joining DSI, Mr. Caruso worked for a "Big 8" accounting firm and was an audit manager for a smaller firm for five years. He graduated from the University of Wisconsin in 1977 with degrees in accounting and finance. He is a member of the American Bankruptcy Institute, the Association of Insolvency Accountants, and the American and Illinois Institutes of Certified Public Accountants.



# FRED C. CARUSO
### Development Specialist, Inc.
### Summary of Valuation, Insolvency and Reorganization Experience

**Oasis Corporation,** Columbus, OH
Hired as the financial consultant for this $150 million manufacturer of water coolers, with plants in the United States, Mexico, Ireland and Poland. Assisted Oasis in downsizing its operations, created cash availability under its' existing line of credit and completed a sale of the business thru an "article 9 friendly foreclosure".

**Valeo Electrical Systems of North America,** Auburn Hills, MI
Hired as the financial consultant for the parent of this $8 billion worldwide tier-one automotive supplier to renegotiate certain long-term labor contracts with the UAW and act as an advisor for the Company's Chapter 11 filing.

**Outboard Marine Corporation,** Waukegan, IL
Hired as a financial consultant to this $1.2 billion manufacturer of outboard engines and recreational boats. Assisted in the shutdown of all engine and boat manufacturing locations and the sale of all assets within 60 days from the filing of a Chapter 11 petition.

**A Michigan Tier-One Automotive Supplier**
Hired as a financial consultant to this $1.1 billion automotive supplier to assist it in restructuring $500 in secured debt and raise an additional $70 million in order to survive the then current automotive recession.

**Breed Technologies Inc.,** Lakeland, FL
Hired as the Chief Restructuring Officer for this $1.3 billion tier-one supplier that operates 32 plants in seven countries. Negotiated a $90 DIP agreement, renegotiated platform contracts and security and access agreements with key customers, refinanced the Company's Italian operations and managed a sale process for the Company as a whole. Due to the low valuations for the entire automotive supply chain, proposed and confirmed an internal plan of reorganization within 18 months of the filing of a Chapter 11 petition, which involved restructuring $1.0 billion in debt.

**Commercial Financial Services, Inc.,** Tulsa, OK
Hired as the President of this debt collection firm after allegations of fraud caused the bond rating agencies to withdraw their ratings on $1.5 billion of asset-backed securities. Within 60 days upon arrival, a downsizing was implemented to reduce the workforce by 50% (2000 employees) and lowered monthly operating expenses by $10 million without causing an impairment of collections. Efforts to sell the Company failed, and the Company's operations were closed in July 1999, during which I managed the transition of the collection servicing for eight "ABS Trusts" to the back up servicers.

**Wendy's Franchisees,** Nationwide
Managed and/or advised eight separate Wendy's franchisees totaling over 350 units in their Chapter 11 proceedings, including the preparation of financial projections, landlord negotiations, development of reorganization plans and provided expert testimony for plan confirmation.

**Restaurant Management Services, Inc.,** Macon, GA
Hired as the financial adviser to assist this 120 unit Shoney's and Captain D's franchisee in it's' out of court restructure, including preparation of financial projections and negotiations with landlords and senior lenders.

**Mercury Finance Company, Inc.,** Lake Forest, IL
Hired as the Chief Operating Officer for this 285-branch sub-prime auto lender after a fraud discovery caused a one-day $2.0 billion stock market drop. Through branch closing and the sale on non-core assets, outstanding indebtedness was paid down by $400 million. An internal plan of reorganization paying all creditors in full was confirmed in early 1999.

**Educational Loan Services, Inc.,** Boston, MA
Hired by Nellie Mae, the Company's parent, to assist in the orderly cessation and transition of all loan-servicing functions for ELSI's $3.0 billion student loan portfolio. Negotiated with the 20 owners of the portfolio (primarily northeastern banks) to fund their pro-rata share of the $20 million transition budget and successfully transferred all loan servicing to the new servicing agents within the 15 month budgeted time period.

**Benchmark Carpets, Inc.,** Carpentersville, GA
Assisted the Chapter 7 Trustee to orderly liquidate all equipment and inventory and collect outstanding receivables from the dealer network, who made substantial damage claims for the diminution of their inventory values caused by Benchmark's shutdown.

**Colfor, Inc. and Colmach, Inc.,** Canton, OH
Appointed the CEO and Debtor-in-Possession for these tier-one auto suppliers after discovery of a $15 million inventory overstatement. Negotiated a consensual cash collateral agreement with 28 lenders and turned a $1.0 million monthly operating loss into a $.25 monthly profit within four months without receiving any price concessions from customers. Sold the Debtors as a going concern in a "363" sale within five months of the bankruptcy petition.

**Brake Pro, Inc.,** Atlanta, GA
Consultant to this Company's major shareholder, Tenneco Automotive, involving the out-of-court sale of this brake lining manufacturer.



Development Specialists, Inc.

**Fort Wayne Foundries**, Fort Wayne, IN
Consultant to the creditors' committee in the Company's out-of-court TDR with GECC and General Motors.

**Tune-Up Masters, Inc.**, Los Angeles, CA
Hired as the CFO for this 250-store automotive repair chain, formerly owned by Andy Granatelli, in its Chapter 11 proceeding. Closed 70 locations prior to its bankruptcy petition in order to avoid post-petition environmental claims on these former gasoline station locations. Generated $6.0 million in cash profits and confirmed an internal plan of reorganization.

**Shape, Inc.**, Portland, MA
Hired as CFO for this domestic manufacturer of audio and video tapes, with facilities in 10 states and one foreign country. Sold two plants as going concerns and liquidated two others in order to maximize the operating results for the remaining core business. Obtained exit financing from Foothill Capital and paid creditors 100% in Shape's Chapter 11 plan of reorganization.

**Other Significant Cases**
Sudbury, Inc. ($800 million tier-one auto supplier)
Findlay Industries ($500 million tier-one auto supplier)
Diamond Mortgage/AJ Obey (sub-prime mortgage lender)
U.S. Lending (sub-prime automotive lender)
Madigan Brothers, Inc. (retail department stores)
Richman Gordman Department Stores
Half Price Department Stores
Swallen's, Inc. (electronics retail chain in Ohio)
Keller Oil Company (40 unit gasoline-convenient store chain)
Model Imperial (distributor of health and beauty aid products)
(provided expert valuation testimony)
United Wholesale, Inc. (consumer products distributor)
Pride Industries, Inc. (metal fabrication)
Western Sizzlin, Inc. (casual steakhouse franchisor)
Kobacker Company (350-unit shoe store chain)
Gentry (men's clothing stores)

## Other Relevant Employment Experience
For approximately two years, served as President for Hilco Appraisal Services, LLP, the country's largest provider of inventory, machinery and intangible valuations for the asset based lending community.

 **Development Specialists, Inc.**

**Education:**
University of Wisconsin-Madison (1977)
Bachelors in Accounting and Finance

**Licenses & Memberships:**
Certified Public Accountant in Illinois and Wisconsin
Certified Insolvency and Reorganization Accountant
American Institute of Certified Public Accountants
Illinois Society of Certified Public Accountants
Association of Insolvency and Reorganization Accountants
American Bankruptcy Institute


Development Specialists, Inc.

# EXHIBIT B

### *Qualifications of*
### *Paul D. Quinn, MAI*

**Professional Affiliations**

Member, Appraisal Institute (MAI Designation #11650)
2007-2009 Regional Representative – Philadelphia Metropolitan Chapter – AI
2008-2009 Education Chair – Philadelphia Metropolitan Chapter – AI
2007 – Chair – Grievance Committee – Appraisal Institute

**State Certifications**

Delaware Certified General Appraiser (Certificate #X1-0000290)
New Jersey Certified General Appraiser (Certificate #42RG0016720)
Pennsylvania Certified General Appraiser (Certificate #GA001010L)

**Real Estate Experience**

Partner, Lagreca & Quinn Real Estate Services, Inc, a full service real estate valuation and consulting firm providing appraisal and advisory services on commercial, industrial and residential properties.

Associate Director, Cushman & Wakefield Valuation Advisory Services, specializing in commercial and industrial real estate appraisal and investment counseling from August 1997 to March 2003.  Cushman & Wakefield is an international, full service real estate organization.

Associate, Vincent D. Quinn & Associates, Inc., specializing in commercial, industrial and special purpose real estate throughout the nation from December, 1993 to August, 1997.

Staff Appraiser, Cushman & Wakefield of Pennsylvania, Inc., specializing in commercial and industrial real estate appraisal and investment consulting throughout the nation from September, 1990 to December, 1993.

Coordinator, Cushman & Wakefield Market Research Division, responsible for the maintenance of a real estate database on the Philadelphia Metropolitan Area via primary and secondary research plus the production of statistical reports, market surveys and written analyses from April, 1989 to September, 1990.

**Formal Education**

Franklin & Marshall College, Lancaster, Pennsylvania
  Bachelor of Arts - 1988

Appraisal Institute, Chicago, Illinois
  Required Courses of Study Leading to MAI Designation.
  Various Lectures and Seminars for Continuing Education Credits.

## CERTIFICATE OF SERVICE

I, Kim N. Nguyen, Esquire, hereby certify that a true and correct copy of the within Expert Disclosure Pursuant to F.R.C.P. 26(a)(2)(C)(ii) of GMAC was forwarded to counsel identified below via E-mail on October 27, 2009.

**Via ECF and E-Mail**
Joseph A. O'Keefe, Esquire
O'Keefe & Sher, P.C.
15019 Kutztown Road
Kutztown, PA  19530
jokade@aol.com

**Via E-Mail**
Kenneth A. Jacobsen, Esquire
Jacobsen Law Offices LLC
12 Orchard Lane
Wallingford, PA  19086
jacobsenlaw@aol.com

LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

By: _____
Kim N. Nguyen, Esquire (PA 93568)
knguyen@lavin-law.com
190 North Independence Mall West
Suite 500, 6th & Race Streets
Philadelphia, PA  19106
Phone:  (215) 627-0303
Fax:  (215) 627-2551
Attorney for Defendant, GMAC

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused copies of the foregoing Plaintiffs'
Pretrial Memorandum to be served on counsel for defendant GMAC by electronic mail
and electronically through the Court's electronic filing and service system addressed as
follows:

Mary Grace Maley, Esquire
LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO
190 North Independence Mall West
Suite 500
Philadelphia, PA 19106

Dated: October 30, 2009                            /s/ Joseph A. O'Keefe
                                                   Joseph A. O'Keefe